**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

S. GREGORY HAYS, in capacity as   :
court-appointed Receiver           :
                             :
Plaintiff,                :    Action No. _____
v.                      :
JERRY K. WILLIAMS, URGENT   :
CARE 247, LLC, NO FREE, LLC,   :
and RIVERDAWG LLC,        :
     Defendants.         :

## ANCILLIARY COMPLAINT

S. Gregory Hays, not individually, but as Court-Appointed Receiver ("**Receiver**" or "**Plaintiff**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in Case No. 1:25-cv-3826-MLB (the "**Receivership**"), by and through counsel, hereby files this Ancillary Complaint (the "**Complaint**") against Jerry K. Williams ("**Williams**"), Urgent Care 247, LLC aka Urgent Care 24/7, LLC ("**UC**" and collectively with Williams, the "**Guarantors**" and each are individually a "**Guarantor**"), No Free, LLC ("**No Free**") and RIVERDAWG LLC ("**RiverDawg**" and collectively with No Free, the "**Williams Entities**") alleges upon knowledge, information, and belief as follows:

## NATURE OF THE ACTION

1.      This Complaint commences an action against the Defendants to recover the payment of contractual debt due by the Williams Entities and the Guarantors. The Williams Etiities are in default under the Loan Documents (as defined below), the Guarantors are in default under certain Guarantees (as defined below) entered incident to the Loan Documents, and the Defendants are indebted to First Liberty Capital Partners, LLC ("**First Liberty**" or "**Lender**").

2.      As of July 11, 2025, the Lender held security interests and liens on certain property pledged in conjunction with the obligations incurred by the Williams Entities to the Lender (collectively, the "**Collateral**"). Such security interests and liens are not detailed in this Complaint, but are expressly reserved with the Receiver reserving the right to seek to enforce these security interests contemporaneously with the filing of this Complaint.

3.      The Plaintiff reserves the right to amend or supplement this Complaint to include: a) further information; b) modifications of and/or revision to the name of the Defendants; c) additional defendants; and/or d) additional causes of action that may become known to Plaintiff at any time during this proceeding, through formal discovery or otherwise. Any amendments to this Complaint shall relate back to the original Complaint.

4.      The filing of this Complaint against Defendants is not, and should not be construed as, an election of remedies on the part of the Receiver. The Receiver reserves all rights and remedies granted in the Loan Documents, as defined below, including the right to foreclose upon and take possession of all collateral securing such Loan Obligations and to pursue all other rights and remedies granted therein.

## **PARTIES, JURISDICTION, AND VENUE**

5.      Plaintiff is the receiver for the estate of First Liberty and other Receivership Entities (as defined in the Appointment Order) pursuant to the Appointment Order and has standing to assert the claims set forth herein on behalf of the best interests of the Receivership Entities. A copy of the Appointment Order is attached hereto as **Exhibit A** and incorporated herein by reference.

6.      The Loan Documents and Guarantees are governed by the laws of the State of Georgia and provide that the Williams Entities submit to the jurisdiction in the State of Georgia.

7.      Defendant Williams, who owns and controls and serves as the Manager of the Williams Entities and UC, guaranteed the Obligations (as defined below) due under the Loan Documents.

8. Defendant Williams is subject to the jurisdiction of this Court and may be served with process by serving Jerry K. Williams at 394 Penrose DR W, Savannah, GA 31410-1234 or as otherwise provided by law.

9. Defendant UC guaranteed the Obligations due under the Loan Documents.

10. Defendant UC is Georgia Limited Liability Company that is subject to the jurisdiction of this Court and may be served with process by serving its registered agent Jerry Williams at 1004 Memorial Lane, Suite 200, Savannah, GA, 31410, or as otherwise provided by law.

11. Defendant No Free is Georgia Limited Liability Company that is subject to the jurisdiction of this Court and may be served with process by serving its registered agent Jerry Williams at 1004 Memorial Lane, Suite 200, Savannah, GA, 31410, or as otherwise provided by law.

12. Defendant RiverDawg is Georgia Limited Liability Company that is subject to the jurisdiction of this Court and may be served with process by serving its registered agent Jerry Williams at 1004 Memorial Lane, Suite 200, Savannah, GA, 31410, or as otherwise provided by law.

13. This Court has jurisdiction of this case, the Defendants, and the matters in this action. Venue properly rests in this Court.

## FACTUAL ALLEGATIONS

14. Lender extended certain loans to the Williams Entities that were guaranteed by the Defendants and documented by the Loan Documents.

15. Williams caused No Free, an entity owned and controlled by Williams, to enter into a loan dated December 28, 2023, in the amount of $250,000.00 that was funded by the Receivership Entities and guaranteed by Williams. Williams subsequently caused No Free to renew such loan with the balance rolled into a loan in the amount of $500,000.00 dated June 11, 2024 ("**Williams Loan 1**") that was funded by the Receivership Parties and guaranteed by Williams. Paragraph 6 of the Modification to Promissory Note ("**Note 1**") that was executed by Williams on behalf of No Free in conjunction with Williams Loan 1 is a cross-default and cross-collateralization provision for obligations of all entities related to the No Free by common ownership and/or control.

16. The Closing Statement, Note 1, and Guaranty Agreement executed by Williams (the "**Williams Loan 1 Guaranty**") related to the Williams Loan 1 are attached as **Exhibit B** hereto (collectively, the "**Williams Loan 1 Documents**").

17. Williams personally guaranteed the payment and performance of Williams Loan No. 1 as more particularly set forth in the Williams Guarantees (as defined below).

18.     Williams also caused RiverDawg, another entity owned and controlled by Williams and an entity related to the No Free by common ownership and/or control, to enter a loan dated September 17, 2024 ("**Williams Loan 2**") in the amount of $700,000.00 that was funded by the Receivership Entities and guaranteed by Williams and UC, another entity owned and controlled by Williams.

19.     Paragraph 6 of the Promissory Note ("**Note 2**") that was executed by Williams on behalf of RiverDawg in conjunction with Williams Loan 2 is a cross-default and cross-collateralization provision for obligations of all entities related to RiverDawg by common ownership and/or control.

20.     The Closing Statement, Note 2, Guaranty Agreement executed by Williams (the "**Williams Loan 2 Guaranty**"), and Guaranty Agreement executed by UC (the "**UC Loan 2 Guaranty**") related to the Williams Loan 2 are attached as **Exhibit C** hereto (collectively, the "**Williams Loan 2 Documents**").

21.     Paragraph 1 of the Williams Loan 2 Guaranty expressly provides that Guarantor "absolutely, and irrevocably guarantees full payment and performance of, and promises to pay to Lender, or to order, without demand, in lawful money of the United States, when due (whether at stated maturity, by acceleration or otherwise), any and all indebtedness, liabilities, obligations and covenants of Borrower [defined in this case as RiverDawg] to Lender (whether any such

6

indebtedness, liability, obligation or covenant now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several." Paragraph 1 of the Williams Loan 2 Guaranty further provides that Obligations under the Williams Loan 2 Guaranty shall include "all such indebtedness liabilities, obligations and covenants."

22. Paragraph 1 of the UC Loan 2 Guaranty expressly provides that Guarantor "absolutely, and irrevocably guarantees full payment and performance of, and promises to pay to Lender, or to order, without demand, in lawful money of the United States, when due (whether at stated maturity, by acceleration or otherwise), any and all indebtedness, liabilities, obligations and covenants of Borrower [defined in this case as RiverDawg] to Lender (whether any such indebtedness, liability, obligation or covenant now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several." Paragraph 1 of the UC Loan 2 Guaranty further provides that Obligations under the UC Loan 2 Guaranty shall include "all such indebtedness liabilities, obligations and covenants."

23. The Guarantors have personally guaranteed the payment and performance of Williams Loan No. 2 as more particularly set forth in the Williams Guarantees and UC Guarantees (as defined below and collectively, the Williams Guarantees and UC Guarantees are the "**Guarantees**").

24. Williams caused RiverDawg to enter into another loan dated December 9, 2024 ("**Williams Loan 3**") in the amount of $355,000.00 that was funded by the Receivership Entities and guaranteed by Williams and UC. Paragraph 6 of the Promissory Note ("**Note 3**") related to the Williams Loan 3 is a cross-default and cross-collateralization provision for obligations of all entities related to RiverDawg by common ownership and/or control.

25. The indebtedness, liability, and obligation incurred by RiverDawg after the entry of the Williams Loan 2 incident to the Williams Loan 3 is part of the Obligations of the Guarantors under the Williams Loan 2 Guaranty and UC Loan 2 Guaranty.

26. The Closing Statement, Note 3, Guaranty Agreement of Williams (the "**Williams Loan 3 Guaranty**"), and Guaranty Agreement of UC (the "**UC Loan 3 Guaranty**") related to the Williams Loan 3 are attached as **Exhibit D** hereto (collectively, the "**Williams Loan 3 Documents**").

27. The Defendants have personally guaranteed the payment and performance of Williams Loan No. 3 as more particularly set forth in the Guarantees.

28. Williams caused No Free to enter into another loan dated December 19, 2024 ("**Willaims Loan 4**" and collectively with Williams Loan 1, Williams Loan 2, and Williams Loan 3, the "**Williams Loans**") in the amount of $3,500,000.00 that was funded by the Receivership Entities and guaranteed by Williams and UC.

29. Williams Loan 4 was for the purpose of constructing a home in Highlands, North Carolina.

30. Paragraph 6 of the Promissory Note ("**Note 4**" and collectively with Note 1, Note 2, and Note 3, the "**Notes**") that was executed by Williams on behalf of No Free in conjunction with Williams Loan 4 is a cross-default and cross-collateralization provision for obligations of all entities related to the No Free by common ownership and/or control.

31. The Closing Statement, Note 4, Guaranty Agreement executed by Williams (the "**Williams Loan 4 Guaranty**"), and Guaranty Agreement executed by Williams on behalf of UC (the "**UC Loan 4 Guaranty**") related to the Williams Loan 4 are attached as **Exhibit E** hereto (collectively, the "**Williams Loan 4**

**Documents**" and collectively with the Williams Loan 1 Documents, Williams Loan 2 Documents, and Williams Loan 3 Documents, the "**Loan Documents**").

32. Williams and UC have personally guaranteed the payment and performance of Williams Loan No. 4 as more particularly set forth in the Guarantees.

33. It is undisputed that each of the Williams Entities and UC are owned or controlled by Williams.

34. No Free and RiverDawg are in default under the Loan Documents.

35. A default under any loan to the Williams Entities results in a default under the loans to the Williams Entities.

36. Pursuant to paragraph 1 of the Williams Loan 1 Guaranty, Williams Loan 2 Guaranty, Williams Loan 3 Guaranty, and Williams Loan 4 Guaranty (collectively, the "**Williams Guarantees**"), Williams absolutely and unconditionally guaranteed the full payment to Lender of all Obligations (as defined in each of the Williams Guarantees), including, without limitation, any indebtedness, liability, obligation to Lender in connection with the Williams Loans.

37. Pursuant to paragraph 1 of UC Loan 2 Guaranty, UC Loan 3 Guaranty, and UC Loan 4 Guaranty (collectively, the "**UC Guarantees**" and with the Williams Guarantees, the "**Guarantees**"), UC absolutely and unconditionally

guaranteed the full payment to Lender of all Obligations (as defined in each of the UC Guarantees), including, without limitation, any indebtedness, liability, obligation to Lender in connection with the Williams Loans.

38.    Paragraph 11 of Note 1 and Note 4 provide that No Free shall pay attorney's fees in the amount of 15% of the outstanding principal balance due, together with costs and other expenses.

39.    Paragraph 15 of Note 2 and Paragraph 11 of Note 3 provide that RiverDawg shall pay attorney's fees in the amount of 15% of the outstanding principal balance due, together with costs and other expenses.

40.    Paragraph 15 of the Williams Loan 1 Guaranty, Williams Loan 3 Guaranty, and Williams Loan 4 Guaranty and Paragraph 16 of the Williams Loan 2 Guaranty expressly provide that all costs of collection, including attorney's fees, together with court costs and other expenses paid or incurred by Lender, shall be due by Williams.

41.    Paragraph 15 of the UC Loan 3 Guaranty and UC Loan 4 Guaranty and Paragraph 16 of the UC Loan 2 Guaranty expressly provide that all costs of collection, including attorney's fees, together with court costs and other expenses paid or incurred by Lender, shall be due by UC.

42.    Plaintiff has the right to collect on behalf of the Lender pursuant to the Appointment Order.

43.    The Obligations due under the Williams Loans are now past due and the Notes, Loan Documents, and Guarantees are in default.

44.    On or about October 17, 2025, the Receiver issued a payoff and notice of default regarding the Williams Loans. Such notice provided an opportunity for the Defendants to avoid the assessment of attorney's fees.

45.    The Williams Entities and the Defendants have failed and refused to pay the full amount due to Lender under the Loan Documents.

46.    The Receiver is advised and informed that at the time First Liberty made loans to Williams and the Williams Entities that Defendant Williams represented and warranted to First Liberty that he and the Williams Entities had sufficient assets and financial wherewithal to satisfy and pay the Williams Loans.

47.    Williams knew, or should have known, that whatever representations or statements he made to First Liberty regarding his financial wherewithal would be provided to and relied upon by investors who invested in First Liberty.

48.    The Williams Entities and the Defendants have also failed and refused to provide information as requested by the Receiver, including, but not limited to,

12

financial information related to the Williams Entities and the Defendants and regarding the Collateral.

49.    Notwithstanding the extensive efforts by the Receiver to obtain an amicable resolution of the Williams Loans, the Defendants have declined to satisfy the outstanding obligations arising from the Williams Loans.

50.    The failure to pay the outstanding balance constitutes an event of default under the Loan Documents and the Guarantees. Such default is continuing and has not been cured and entitles Plaintiff to exercise its rights and other remedies.

51.    The amount outstanding under the Loan Documents and Guarantees as of March 10, 2026, exclusive of expenses of collection, attorneys' fees, and the costs of this action, was not less than $4,635,495.48 with interest accruing daily at a per diem of $2,093.24 and attorneys' fees and other costs of collection also continuing to accrue (collectively, the "**Outstanding Indebtedness**") from that date.

## COUNT ONE: BREACH OF WILLIAMS GUARANTEES
### (as to Williams)

52.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set forth herein.

53.    Williams is in default under the Williams Guarantees by virtue of failing to perform the obligations of Williams under the Williams Guarantees owed

to Lender, including, without limitation, the failure to pay all amounts owing under the Williams Guarantees as and when due.

54. Williams is liable to Plaintiff for at least the Outstanding Indebtedness, with additional interest to accrue until the date of judgment and attorneys' fees pursuant to the Williams Guarantees, together with post-judgment interest at the highest rate allowed by law.

**WHEREFORE,** Plaintiff demands judgment against Williams for the Outstanding Indebtedness owing under the Williams Guarantees, as well as such other, further, and different relief to which Plaintiff may be entitled and is just and proper in this action.

### COUNT TWO: BREACH OF UC GUARANTEES
### (as to UC)

55. Plaintiff incorporates and realleges the preceding paragraphs as if fully set forth herein.

56. UC is in default under the UC Guarantees by virtue of failing to perform the obligations of UC under the UC Guarantees owed to Lender, including, without limitation, the failure to pay all amounts owing under the UC Guarantees as and when due.

57. UC is liable to Plaintiff for at least the Outstanding Indebtedness, with additional interest to accrue until the date of judgment and attorneys' fees pursuant

to the UC Guarantees, together with post-judgment interest at the highest rate allowed by law.

**WHEREFORE,** Plaintiff demands judgment against UC for the Outstanding Indebtedness owing under the UC Guarantees, as well as such other, further, and different relief to which Plaintiff may be entitled and is just and proper in this action.

## COUNT THREE: BREACH OF CONTRACT
### (as to No Free)

58.     Plaintiff incorporates and realleges the preceding paragraphs as if fully set forth herein.

59.     No Free is in default under the Loan Documents by virtue of failing to perform the obligations of No Free under the Loan Documents owed to Lender, including, without limitation, the failure to pay all amounts owing by No Free under the Loan Documents as and when due.

60.     No Free is liable to Plaintiff for the amount due by No Free under the Loan Documents, with additional interest to accrue until the date of judgment and attorneys' fees pursuant to the Loan Documents, together with post-judgment interest at the highest rate allowed by law.

**WHEREFORE,** Plaintiff demands judgment against No Free for the amount due by No Free under the Loan Documents, as well as such other, further, and different relief to which Plaintiff may be entitled and is just and proper in this action.

## COUNT FOUR: BREACH OF CONTRACT
### (as to RiverDawg)

61.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set forth herein.

62.    RiverDawg is in default under the Loan Documents by virtue of failing to perform the obligations of RiverDawg under the Loan Documents owed to Lender, including, without limitation, the failure to pay all amounts owing by RiverDawg under the Loan Documents as and when due.

63.    RiverDawg is liable to Plaintiff for the amount due by RiverDawg under the Loan Documents, with additional interest to accrue until the date of judgment and attorneys' fees pursuant to the Loan Documents, together with post-judgment interest at the highest rate allowed by law.

**WHEREFORE,** Plaintiff demands judgment against RiverDawg for the amount due by RiverDawg under the Loan Documents, as well as such other, further, and different relief to which Plaintiff may be entitled and is just and proper in this action.

## COUNT FIVE: ATTORNEYS' FEES AND EXPENSES
### (as to all Defendants)

64.    Plaintiff incorporates and realleges the preceding paragraphs as if fully set forth herein.

65. The Loan Documents require the payment of amounts for costs, expenses, and attorneys' fees incurred as a result of any breach or default thereunder.

66. The Loan Documents require the Defendants to pay collection costs and expenses, including attorneys' fees, incurred by the Lender. This includes costs of collection, including court costs and attorneys' fees, under the Loan Documents and/or Guarantees. This also includes the costs of collection, including court costs and statutory attorneys' fees under O.C.G.A. § 13-1-11.

67. Pursuant to O.C.G.A. §13-1-11, Defendants were given proper notice that they had an opportunity to pay the entire principal balance outstanding, together with all accrued and unpaid interest and late fees thereon to the date of payment by them, without the payment of such attorneys' fees. Defendants failed to pay such outstanding amounts within ten (10) days from receipt of the notice and Plaintiff is now entitled to recover fifteen percent of the first $500 of outstanding principal plus accrued interest and 10 percent of remaining outstanding principal and accrued interest as attorneys' fees. O.C.G.A. §13-1-11.

68. In addition, as described herein, Defendants have been stubborn and litigious and caused Plaintiff unnecessary trouble and expense entitling Plaintiff to

recover its attorneys' fees and expenses actually incurred pursuant to O.C.G.A. § 13-6-11.

**WHEREFORE,** Plaintiff demands judgment against Defendants for all costs and expenses of collection, including attorneys' fees and expenses actually incurred under the Loan Documents, the Guarantees, and/or pursuant to O.C.G.A. § 13-6-11 or O.C.G.A. § 13-6-11, as well as such other, further, and different relief to which Plaintiff may be entitled and is just and proper in this action.

### COUNT SIX: GENERAL EQUITABLE RELIEF AND DEMAND FOR ACCOUNTING OF FUNDS
### (as to Williams Entities and Williams)

69. Plaintiff incorporates and realleges the preceding paragraphs as if fully set forth herein.

70. Pursuant to Paragraph 5 of Note 1 and Note 4, No Free is required to provide financials and other information as Lender may request regarding the application of loan proceeds and performance under the loan documents.

71. Notwithstanding the obligation of No Free to disclose information, No Free has failed to provide to the Receiver financials and other information requested by the Receiver.

72. Pursuant to Paragraph 5 of Note 2 and Note 3, RiverDawg is required to provide monthly financials and other information as Lender may request

regarding the application of loan proceeds and performance under the loan documents.

73.    Notwithstanding the obligation of RiverDawg, RiverDawg has failed to provide to the Receiver monthly financials and other information requested by the Receiver.

74.    Williams personally negotiated with and made representations to First Liberty in order to obtain the loans referenced herein.

75.    The representations made by the Willaims included representations as to how the funds to be loaned were to be used by the Willaims and the Williams Entities.

76.    Williams knew or should have known that the First Liberty and its principal were raising funds from investors to be loaned to or for the benefit of Williams and the Williams Entities.

77.    Williams knew or should have known that investors were investing in First Liberty based on the representations made by Williams to First Liberty as to the proposed uses of funds to be used.

78.    The Williams Enttiies and Williams have failed to repay the amount due under the Loan Documents and the Guarantees.

79.    The Williams Enttiies and Williams have failed to account to the Receiver for the uses of the funds received from First Liberty.

80.    The Receiver hereby demands and is entitled to an accounting from the Williams Enttiies and Williams as to: a) the financials of the Williams Enttiies; b) the use of all monies received by Williams or the Williams Entities; c) all records, including bank statements, checks, wire transfer receipts and similar documents relating to the uses of funds received from First Liberty; and d) all contacts or communications by Williams or any of the Williams Entities with investors in First Liberty.

**WHEREFORE,** Plaintiff, in addition to the monetary relief sought herein, demands the disclosure of financial information of the Williams Enttiies and Willaims and an accounting from the Williams Enttiies and Williams for all funds advanced to the Williams Entities under the Loan Documents, all contacts and dealings between Williams and investors in First Liberty as well as such other, further, and different relief to which Plaintiff may be entitled and is just and proper in this action.

Respectfully submitted this 11th day of March, 2026.

Respectfully submitted,

LAW OFFICES OF HENRY F. SEWELL JR., LLC

***/s/ Henry F. Sewell, Jr.***
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com
*Counsel for the Plaintiff*

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>**Plaintiff,**<br><br>v.<br><br><br>EDWIN BRANT FROST IV and FIRST LIBERTY BUILDING & LOAN, LLC<br><br>**Defendants, and**<br><br>FIRST LIBERTY CAPITAL PARTNERS LLC, FIRST NATIONAL INVESTMENTS LLC, MYHEALTHAI CAPITAL LLC, THE LEGACY ADVISORY GROUP INC., and THE LIBERTY GROUP LLC,<br><br>**Relief Defendants.** | **Civil Action File No. 1:25-cv-3826-MLB** |

## <u>ORDER APPOINTING RECEIVER</u>

**WHEREAS** this matter has come before this Court upon Plaintiff Securities and Exchange Commission's unopposed motion to appoint a receiver in the above-captioned action; and,

**WHEREAS** the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of First Liberty Building & Loan, LLC, First Liberty Capital Partners LLC, First National Investments LLC,

MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC ("Receivership Assets") and the assets of Defendant Frost that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; and/or (c) may otherwise be includable as assets of the estates of the Defendants (collectively, the "Recoverable Assets"); and,

**WHEREAS** this Court has subject matter jurisdiction over this action and personal jurisdiction over the Defendants and Relief Defendants, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following Defendant and Relief Defendants:  First Liberty Building & Loan, LLC, First Liberty Capital Partners LLC, First National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC (the "Receivership Entities").

2.      Until further Order of this Court, S. Gregory Hays is hereby appointed to serve without bond as receiver (the "Receiver") for the estate of the Receivership Parties.

2

3. Except as otherwise specified herein, all Receivership Assets and Recoverable Assets are frozen until further order of this Court. Accordingly, all persons and entities with direct or indirect control over any Receivership Assets and/or any Recoverable Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets. This freeze shall include, but not be limited to, Receivership Assets and/or Recoverable Assets that are on deposit with financial institutions such as banks, brokerage firms, mutual funds, and hedge funds.

### I. **General Powers and Duties of Receiver**

4. The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the Receivership Entities under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Federal Rule of Civil Procedure 66.

5. The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Entities are hereby dismissed and the powers of any general partners, directors and/or managers

3

are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Entities' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operation of the Receivership Entities and shall pursue and preserve all of their claims. No person holding or claiming any position of any sort with any of the Receivership Defendant shall possess any authority to act by or on behalf of any of the Receivership Defendant.

6.      Subject to the specific provisions in Sections II through XIII, below, the Receiver shall have the following general powers and duties:

A.      To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estate");

B.      To take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership Entities; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;

C.      To manage, control, operate and maintain the Receivership Estate and hold in his possession, custody and control all Receivership Property, pending further Order of this Court;

D.      To use Receivership Property for the benefit of the Receivership Estate, making payments and disbursements and

4

incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E.   To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees and agents of the Receivership Entities;

F.   To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

G.   To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H.   The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I.   To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J.   To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate; and,

K.   To take such other action as may be approved by this Court.

## II. Access to Information

7.      The Receivership Entities and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, accountants and employees of the Receivership Entities, as well as those acting in their place, are

5

hereby ordered and directed to preserve and turn over or provide access to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

8.     Within ten (10) days of the entry of this Order, the Receivership Entities shall file with the Court and serve upon the Receiver and the Commission a sworn statement, listing: (a) the identity, location and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of the Receivership Entities; and, (c) the names, addresses and amounts of claims of all known creditors of the Receivership Entities, except to the extent this information was previously provided to the Commission.

9.     Within ninety (90) days of the entry of this Order, or at a date set by the Court, the Receiver shall file with the Court and serve upon the parties a sworn statement and accounting, with complete documentation, covering the period from January 1, 2014 to the present:

> A.     Of all Receivership Property, wherever located, held by or in the name of the Receivership Entities, or in which it, directly or indirectly, has or had any beneficial interest, or over which it maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry and other assets, stating

the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage or other financial institution held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which it maintained or maintains and/or exercised or exercises any direct or indirect control, or in which it had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage or other financial institution;

B. Identifying every account at every bank, brokerage or other financial institution: (a) over which Receivership Entities have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Entities;

C. Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by the Receivership Entities, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

D. Of all assets received by the Receivership Entities from any person or entity, including the value, location, and disposition of any assets so received;

E. Of all funds received by the Receivership Entities, in any way related, directly or indirectly, to the conduct alleged in the Commission's Complaint. The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

G. Of all expenditures exceeding $1,000 made by the Receivership Entities, including those made on their behalf by any person or entity; and

H. Of all transfers of assets made by the Receivership Entities.

10. Within thirty (30) days of the entry of this Order, the Receivership

7

Entities shall provide to the Receiver and the Commission copies of the Receivership Defendant's federal income tax returns for 2013-2024 with all relevant and necessary underlying documentation.

11. The Receivership Entities and the Receivership Entities' past and/or present officers, directors, agents, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Entities, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Entities. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure. Nothing in this paragraph, however, shall preclude a witness, including Defendant Frost, from asserting his or her Fifth Amendment right against self-incrimination or from claiming any other legal privilege against providing such information.

12. The Receiver shall have the authority to issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of Federal

Rule of Civil Procedure 26(d)(1), concerning any subject matter within the powers and duties granted by this Order.

13.     The Receivership Entities are required to assist the Receiver in fulfilling his duties and obligations.  As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver. Nothing in this paragraph, however, shall preclude a witness, including Defendant Frost, from asserting his or her Fifth Amendment right against self-incrimination or from claiming any other legal privilege against providing such information.

### III.  Access to Books, Records and Accounts

14.     The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to the Receivership Entities.  All persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

15.     The Receivership Entities, as well as their agents, servants, employees, any persons acting for or on behalf of the Receivership Entities, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts or assets of the Receivership Entities are hereby directed to deliver the same to the Receiver, his agents and/or employees.

16.    All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, and of the Receivership Entities that receive actual notice of this Order by personal service, facsimile transmission or otherwise shall:

A.    Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Entities except upon instructions from the Receiver;

B.    Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

C.    Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver, counsel for the Commission, and Defendants a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

D.    Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

**IV.    Access to Real and Personal Property**

17.    The Receiver is authorized to take immediate possession of all personal property of the Receivership Entities, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage

devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

19      The Receiver is authorized to take immediate possession of all real property of the Receivership Entities, wherever located, including but not limited to all ownership and leasehold interests and fixtures.  Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

20.      In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above.  The Receiver shall have exclusive control of the keys.  The Receivership Entities, or any other person acting or purporting to act on their behalf, is ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

21.      The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all

mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

22.     Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

## V.     Notice to Third Parties

23.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of the Receivership Entities, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

24.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Entities shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Entities had received such payment.

25.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this

matter and/or the financial condition of the Receivership Estate. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

26. The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of the Receivership Entities (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Entities. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individual Defendant, and/or any mail appearing to contain privileged information belonging to any of the Receivership Entities' officers, directors, agents, managers, shareholders, employees, managers and general and limited partners, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Entities.

13

The Receivership Entities shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

27.    Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Receivership Entities shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

28.    The Receiver is authorized to assert, prosecute and/or negotiate any claim under any insurance policy held by or issued on behalf of the Receivership Entities, or their officers, directors, agents, employees or trustees, and to take any and all appropriate steps in connection with such policies.

### VI.    Injunction Against Interference with Receiver

29.    The Receivership Entities and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

> A.    Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

14

B.  Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

C.  Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Entity, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Entity or which otherwise affects any Receivership Property; or,

D.  Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

30.  The Receivership Entities shall cooperate with and assist the Receiver in the performance of his duties.

31.  The Receiver shall promptly notify the Court and Commission counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## VII.  Stay of Litigation

32.  As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until

15

further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) the Receivership Entities, including subsidiaries and partnerships; or, (d) the Receivership Entities' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

33.    The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

34.    All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of the Receivership Entities against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## VIII.  <u>Managing Assets</u>

35.    For the Receivership Estate, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash

equivalent Receivership Property (the "Receivership Funds").

36. The Receiver's deposit account shall be entitled "Receiver's Account, Estate of First Liberty, LLC," together with the name of the action.

37. The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

38. Subject to Paragraph 39, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

39. Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estate.

40. The Receiver is authorized to take all actions to manage, maintain,

17

and/or wind-down business operations of the Receivership Estate, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

41.     The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable, whether proposed, temporary or final, or pronouncements thereunder, including the filing of the elections and statements contemplated by those provisions. The Receiver shall be designated the administrator of the Settlement Fund, pursuant to Treas. Reg. § 1.468B-2(k)(3)(i), and shall satisfy the administrative requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to (a) obtaining a taxpayer identification number, (b) timely filing applicable federal, state, and local tax returns and paying taxes reported thereon, and (c) satisfying any information, reporting or withholding requirements imposed on distributions from the Settlement Fund. The Receiver shall cause the Settlement Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as a "Qualified Settlement Fund." The Receivership Entities shall cooperate with the Receiver in fulfilling the Settlement Funds' obligations under Treas. Reg. § 1.468B-2.

## IX.    Investigate and Prosecute Claims

42.    Subject to the requirement, in Section VII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Property.

43.    Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to counsel for the Commission before commencing investigations and/or actions.

19

44.     The Receiver may file a motion with the Court to waive all privileges, including the attorney-client privilege, held by the Receivership Entities.  The Receiver must confer with counsel for Defendant Frost before filing any such motion and explain the reason(s) for seeking the waiver.  If the Receiver and Defendant Frost are unable to reach an agreement, the Receiver may file his motion and Defendant Frost shall have the opportunity to respond to any such motion.

45.     The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## X.      Bankruptcy Filing

46.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for any Receivership Entity.  If a Receivership Entity is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession.  In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity, except that the Receiver shall not be empowered to waive all privileges, including the attorney client privilege, unless granted permission to do so by the Court.  Pursuant to Paragraph 4 above, the Receiver is vested with management

20

authority for all Receivership Entities and may therefore file and manage a Chapter 11 petition.

47.     The provisions of Section VII above bar any person or entity, other than the Receiver, from placing any of the Receivership Entities in bankruptcy proceedings.

## XI.     Liability of Receiver

48.     Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

49.     The Receiver and his agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree.  In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

50.     This Court shall retain jurisdiction over any action filed against the

Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

51.    In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor.  The Receiver shall then follow such instructions as the Court may provide.

### XII.    Recommendations and Reports

52.    The Receiver is authorized, empowered and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

53.    Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

54.    Within thirty (30) days after the end of each calendar quarter, the Receiver shall file with the Court and serve on the parties a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of

22

liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

55.    The Quarterly Status Report shall contain the following:

A.    A summary of the operations of the Receiver;

B.    The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.    A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.    A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.    A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.    A list of all known creditors with their addresses and the amounts of their claims;

G.    The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H.    The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

56.    On the request of the Commission, the Receiver shall provide the

Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

### XIII.  Fees, Expenses and Accountings

57.     Subject to Paragraphs 58–64 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

58.     Subject to Paragraph 59 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order.  The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

59.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court.

24

60. Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the Commission a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by Commission staff.

61. All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

62. Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

63. Each Quarterly Fee Application shall:

    A. Comply with the terms of the Billing Instructions agreed to by the Receiver; and

    B. Contain representations (in addition to the Certification

required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

64. At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by Commission staff, as well as the Receiver's final application for compensation and expense reimbursement.

**SO ORDERED this 11th day of July, 2025.**

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

# FIRST LIBERTY CAPITAL PARTNERS

## LOAN CLOSING STATEMENT

**DATE OF TRANSACTION:** June 11, 2024

**BORROWER:**     No Free, LLC, a Georgia limited liability company

**LENDER:**     First Liberty Capital Partners LLC

---

## SCHEDULE OF LOAN ADVANCES

| | |
|---|---|
| **TOTAL LOAN MODIFIED LOAN AMOUNT** | **$500,000.00** |
| **TOTAL LOAN ADVANCE AT CLOSING** | **$250,000.00** |

## DISBURSEMENTS PAID BY BORROWER

| | |
|---|---|
| Loan Fee to Lender | $12,500.00 |
| Short Interest for June 2024 | $2,750.00 |
| Six Month Interest Reserve ($45,000.00 less credit for $22,500.00 Reserve on original Note) | $22,500.00 |
| Sign-up fee to Pamela Kendall Floyd, PC | $175.00 |
| Recording Fees to Spencer Gandy LLC | $29.00 |
| Attorney Fees to Spencer Gandy LLC | $1,500.00 |
| Document fee to First Liberty Capital Partners, LLC | $500.00 |
| **TOTAL LOAN CHARGE DISBURSEMENTS** | **$39,942.00** |
| **NET LOAN PROCEEDS TO BORROWER** | **$210,058.00** |
| **TOTAL LOAN DISBURSEMENTS** | **$250,000.00** |

"BORROWER"

NO FREE, LLC

By:_____
     Jerry K. Williams, Jr., M.D.

"LENDER"

First Liberty Capital Partners LLC

By:_____
     Brant Frost IV, its Manager

## MODIFICATION TO PROMISSORY NOTE

**$500,000.00, as Modified**                                      **June 11, 2024**

**NO FREE, LLC, a Georgia limited liability company** ("**Borrower**") whose address is 1004 Memorial Lane, Suite 200, Savannah, GA 31410, and **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (hereinafter, together with any subsequent holder hereof, sometimes called "**Lender**" or "**Holder**"), whose address is P. O. Box 2567, Newnan, GA 30264, agree as follows:

A.    Borrower has requested that Lender modify a loan in the original principal amount of **Two Hundred Fifty Thousand Dollars ($250,000.00)** (the "**Loan**"), by increasing the principal amount to **Five Hundred Thousand Dollars ($500,000.00)** and Lender hereby agrees to so modify the Loan to Borrower upon the terms and conditions contained herein.

B.    The principal amount of the Loan shall be allocated by Lender to an account established for Borrower, and Loan proceeds shall be disbursed from time to time on terms and conditions as established by Lender as to timing, amount and other conditions of disbursements.

**THEREFORE, FOR VALUE RECEIVED**, Borrower hereby promises to pay to the order of Lender or Holder, the principal sum of **Five Hundred Thousand Dollars ($500,000.00)** together with interest from the date hereof until paid in full, on the unpaid principal balance from time to time outstanding at the rate hereinafter set out, payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. Said principal and interest shall accrue and be payable as follows:

1.    **Interest**.      Interest shall accrue at the rate of eighteen percent (18%) per annum computed on the basis of a 30 day month and 360 day year. Interest shall be computed on the entire principal amount of the Loan from the date of the Loan, notwithstanding that a portion of the Loan proceeds may be held by Lender for future disbursement to or on behalf of Borrower.

2.    **Payments**.

a.    Monthly Payments.    Borrower shall make monthly payments of interest only on the outstanding principal balance with the first payment due at closing in the amount of **$2,750.00** for the short month of June, 2024. Thereafter, Borrower shall make monthly payments in the amount of **$7,500.00** commencing on **July 1, 2024,** and continuing thereafter on the 1st day of each successive month until **June 10, 2025** (the "**Maturity Date**"), at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges due hereunder shall be due and payable for all purposes in full in a single **BALLOON PAYMENT**. All such payments shall be made at the office of Lender by federal wire transfer or electronic funds transfer, or such other place and to such other person as the Lender or any subsequent holder hereof may from time to time designate in writing.

b.    Minimum Interest. Borrower may prepay this Note at any time, provided however, that Borrower agrees to pay a minimum of six month's interest, as calculated above, plus outstanding principal and any other unpaid charges hereunder, if prepaid prior to the seventh month.

c.    Interest Reserve. A six month evergreen interest reserve in the amount of **$45,000.00** (the "**Evergreen Reserve**") and shall be held by Lender as additional security for

Borrower's obligations under the Note. The Evergreen Reserve shall not be used for the benefit of Borrower except in case of an Event of Default. Any unused portion of the Reserve Accounts established hereunder shall be applied to the amount due upon repayment of this Note.

3.    **Late Charge/Post Default Interest**.    Borrower further agrees to pay a "late charge" of five percent (5%) of any amount due hereunder (but not in excess of the maximum amount allowed by any applicable law, rule or regulation) if paid more than ten (10) days after the due date thereof..    These provisions shall not be deemed to excuse a late payment or be deemed a waiver of any other rights Lender may have including the right to declare the entire unpaid principal and interest immediately due and payable. Notwithstanding any provision to the contrary herein, from and after the maturity of this Note (whether by acceleration or otherwise) or an Event of Default, interest on principal (but not on unpaid interest) shall be computed at the rate of 24.0% (the "**Default Rate**"). If a monthly interest payment if received late, then Borrower agrees to allow Lender to collect all future payments via ACH from the operating bank account of Borrower's choice.

4.    **Loan Documents and Collateral**. Borrower represents, warrants, covenants and agrees that this Note is and shall at all times be secured and supported by documents as required by Lender which may include (i)  deed to secure debt or mortgage  (ii) guaranty agreements of Jerry K. Williams, Jr., M.D. and  and (iii) other agreements, documents  and instruments executed by or on behalf of the Borrower in connection herewith (the "Loan Documents").

5.    **Loan Oversight**.    Borrower agrees that the principal purpose of the Loan is to finance legal fees for litigation with the State of Georgia and for general business purposes at the discretion of Borrower.    Borrower shall provide Lender with quarterly financials and such information as Lender may request from time to time regarding application of loan proceeds and performance under the Loan documents.

6.    **Cross-Default and Cross-Collateralization.**

(a)    Lender has made or may make other loans to Borrower (as used herein the term "Borrower" shall include any and all entities related to Borrower by common ownership and/or control) evidenced by various Notes, and Deeds to Secure Debt (Deed to Secure Debt as used herein to include Mortgages, Security Agreements, Pledges and other documents securing the Loan). Any event of default as defined in any Deed to Secure Debt from Borrower to Lender given to secure any loan from Lender to Borrower or any breach of terms, provisions, conditions or covenants contained in the Note or Notes, Deed to Secure Debt or Deeds to Secure Debt, or any other loan documents executed in connection with any other loan or loans from Lender or Borrower shall be an event of default under the terms, provisions, conditions, and covenants of any and all other loans from the Lender to Borrower. Further, an event of default hereunder shall also constitute an event of default under any and all Deeds to Secure Debt, Notes, and any other loan document executed in connection with any other loan from Lender to Borrower.

(b)    Lender has made or may make other loans to Borrower evidenced by various Notes and Deeds to Secure Debt. The real property and any other property described in said other Deeds to Secure Debt is and shall be security for each and every other Note, executed by Borrower in favor of Lender, or any advance made thereunder, or any renewal or extension thereof; further, the real property described herein is and shall be further security for each and every Note executed by the Borrower in favor of the Lender. This paragraph shall apply notwithstanding the fact that the outstanding balance of any one or more of said loans exceeds the original face amount of the Note or Notes evidencing said loans.

2

(c)    Nothing contained in the within paragraphs, shall in any way impair the rights of the Lender granted in any Deed to Secure Debt. Further, each and every Note and Deed to Secure Debt executed in connection with any loan made from Lender to Borrower is and shall remain a separate obligation of Borrower, and each and every Note and Deed to Secure Debt is and shall be separately enforceable according to its terms until all outstanding indebtedness owing from Borrower to Lender has been paid in full; further, Lender may, at its election, institute separate or collective proceedings with respect to each Note and Deed to Secure Debt simultaneously or in such order and at such times as Lender may elect. The pendency of any proceeding with respect to any Note or Deed to Secure Debt shall not be grounds for abatement of or hindering, delaying or preventing any proceeding in respect to any other Note or Deed to Secure Debt. Default under each Note and Deed to Secure Debt shall constitute a separate cause of action.

7.    **Events of Default**. The principal sum evidenced by this Note, together with all accrued but unpaid interest thereon and all other agreed charges owing by Borrower hereunder, shall become immediately due and payable at the option of Lender upon the occurrence of any "Event of Default", as used and defined in any Loan Document, each of which shall constitute an "Event of Default" hereunder, *provided however*, that Borrower shall have five (5) days following notice of a monetary default in which to cure, and thirty (30) days following notice of a non-monetary in which to cure. Not in limitation of the foregoing but in addition thereto, the following shall constitute events of default under this Note:    failure of Borrower (Borrower and each other person primarily or secondarily liable to Lender for the indebtedness evidenced by this Note hereinafter collectively referred to as "Obligors") to make any payment of principal or interest or any other amount under this Note when due or failure of Borrower to perform or observe any promise or agreement contained in this Note; the death of (if an individual), death of a general partner (if a partnership), or dissolution of (if a partnership or corporation), insolvency of, general assignment for the benefit of creditors by, any Obligor; the commencement of a voluntary proceeding under any law relating to bankruptcy, insolvency, reorganization, arrangement, composition or readjustment of debt, dissolution, liquidation or debtor relief law or statute of any jurisdiction, whether now or hereafter in effect, including without limitation the filing of a petition under any chapter of the federal bankruptcy code by or against, or acquiescence in writing to same by, or failure to timely and diligently controvert any such involuntary proceeding by, any Obligor; the filing of a proceeding for the appointment of a receiver, custodian, trustee, liquidator or similar official for Obligor or Obligor's property or consenting to the appointment of same; the failure of an involuntary petition for relief under the Federal Bankruptcy Code, as amended, to be dismissed within thirty (30) days after the commencement thereof or in which an order for relief is entered; the making by any Obligor of a conveyance fraudulent as to creditors under any state or federal law; entry of any judgment against, or issuance of a levy or writ of execution, attachment or garnishment against any of the property of, any Obligor; the inability of any Obligor to pay debts as they become due or admit in writing to such effect; the transfer by any Obligor of all or substantially all of his, her or its assets outside the ordinary course of business, or the waste, loss or dissipation of a substantial part of such person's assets; if any Obligor is a partnership, the withdrawal or removal of any general partner of such partnership; if any Obligor is a corporation, the transfer, directly or indirectly (including through any voting trust, irrevocable proxy, or the like), of the ownership or power to vote more than thirty percent (30%) of the voting stock of such corporation; the suspension of the operation of any Obligor's present business; the occurrence of any default or event authorizing acceleration as provided under any promissory note or other evidence of debt, loan agreement, security agreement, pledge agreement, assignment, mortgage, deed to secure debt, deed of trust, lease agreement or other agreement or contract between any Obligor and Lender or any third party; any statement, representation or warranty of any Obligor made orally or in writing in any document evidencing, securing or otherwise relating to the indebtedness evidenced by this Note or in any other writing or statement at any time furnished or made by any Obligor to Lender is false or misleading in a material respect as of the date furnished or made; revocation or termination of any guaranty executed in favor of Lender guaranteeing the indebtedness evidenced by this Note; the financial responsibility of any

3

Obligor becomes impaired at any time in the sole opinion of Lender; or, the determination by Lender that it otherwise deems itself to be insecure.

8.    **Remedies.** If this Note is payable on demand, all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall be due and payable in full upon demand by Lender, whether or not any event of default has occurred and whether or not Lender reasonably deems itself to be insecure. If any event of default under this Note should occur, all unpaid amounts of any or all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall, at the option of Lender and without notice or demand, become immediately due and payable and Lender shall have and be entitled to exercise, from time to time, all the rights and remedies available to it as provided elsewhere in this Note, in any other agreement or contract between Borrower and Lender and under applicable law. All of Lender's rights and remedies shall be cumulative, and any failure of Lender to exercise any such right or remedy shall not be construed as a waiver of the right to exercise the same or any other right or remedy at any time and from time to time thereafter.

9.    **Notices**. Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Note shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or three (3) days after being deposited in the United States mail, postage prepaid, certified with return receipt requested, if mailed to the addresses set forth in the beginning of this Note or at such other address within the continental United States for either party as such party may designate by notice to the other given in accordance with the provisions of this paragraph; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice has been received shall also constitute receipt.

10.    **Acceleration**. Time is of the essence in the performance of all obligations under this Note. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at its option and as often as it may desire, may declare all liabilities, obligations and indebtedness due Lender, including without limitation this Note to be immediately due and payable without demand, notice or presentment, and may exercise any other remedy available to Lender hereunder, at law or in equity.

11.    **Costs of Collection**. Borrower agrees that if, and as often as, this Note is given to an attorney for collection or to defend or enforce any of Lender's rights arising from or relating to this Note, Borrower will pay to Lender attorney's fees in the amount of 15% of the principal balance due, together with all court costs and other expenses paid or incurred by Lender; provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

12.    **Maximum Legal Rate** Borrower and Lender agree that no payment of interest or other consideration made or agreed to be made by Borrower to Lender pursuant to this Note shall, at any time, be in excess of the maximum rate of interest permissible by law. In the event such payments of interest or other consideration provided for in this Note shall result in an effective rate of interest which, for any period of time, is in excess of the limit of the usury or any other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied to principal immediately upon receipt of such monies by Lender hereof with the same force and effect as though the payer had specifically designated such and Lender had agreed to accept such extra payments as a principal payment,

4

without premium. This provision shall control every other obligation of the Borrower and Lender under this Note.

13.    **Miscellaneous.**

(a)    With respect to any and all obligations, to the extent permitted by applicable laws Borrower waives the following: (1) all rights or exemption of property from levy or sale under execution or other process for the collection of debts under the constitution or laws of the United States or any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold Borrower on any obligation; (3) all statutory provisions and requirements for the benefit of the Borrower now or hereafter in force (to the extent that same may be waived); (4) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Lender and Borrower shall be adverse parties. Borrower agrees to pay all filing fees and taxes and all costs of collecting or securing or attempting to collect or secure any obligations, including but not limited to attorney's fees.

(b)    The obligations and liabilities of Borrower under this Note are continuing, absolute, and unconditional, and shall remain in full force and effect until all amounts due hereunder have been paid in full and all obligations of Borrower have been discharged without regard to and without being released, discharged, impaired, modified or in any way affected by, the occurrence from time to time of any event, circumstance or condition, including without limitation any one or more of the following, whether or not with notice to or consent of Borrower: (1) any assignment or transfer this Note or of any interest hereunder; (2) any consent, extension, indulgence or other action or inaction (including without limitation any lack of diligence or failure to mitigate damages) under, or in respect of, this Note or other agreement, or any exercise or non-exercise of any right, remedy, power or privilege under, or in respect of, this Note or agreement; or (5) the failure, omission, delay or lack of diligence on the part of the Holder or any assignee or successor thereto, to enforce, assert or exercise any right, power, privilege or remedy conferred upon the Lender by this Note or other agreement.

(c)    The Lender, may, but shall not be required to, apply to the payment of the debt evidenced hereby, on or after the maturity of said debt, whether by acceleration or otherwise, any money or credit held by the Lender on deposit, in trust or otherwise, for the account of the Borrower or any of them.

(d)    Lender shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid, unless in writing and signed by the Holder. All rights and remedies of the Lender under the terms of this Note and under any statutes or rules of law shall be cumulative and may be exercised successively or concurrently. Borrower agrees that the Lender shall be entitled to all the rights of a holder in due course of negotiable instruments. Any provision of this Note which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof.

(e)    The liabilities and obligations of each person or entity who or which is a Borrower are joint and several.

(f)    Borrower warrants and agrees that the proceeds of this Note will be used for business purposes (other than agricultural purposes) only, and not for personal, family or household purposes.

(g)    Borrower and Lender intend and believe that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions. However, if any

5

provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of Borrower and Lender that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender hereof under the remainder of this Note shall continue in full force and effect.

14.    **Governing Law**.  This Note shall be governed by and construed in accordance with the laws of the State of Georgia.  Borrower acknowledges that the negotiation of the provisions of this Note and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give Borrower, nor shall any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Note or said Loan Documents to become effective and valid and binding obligations of the Borrower. Borrower acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan.  Borrower acknowledges further that the negotiation, execution, and delivery of this Note and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Borrower hereby submits itself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with the Loan or any of the Loan Documents. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction.  Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a waiver by Lender of any of the foregoing.

15.    **Waiver of Jury Trial.**  TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER  HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION WITH THIS NOTE OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION  HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF EITHER PARTY'S RIGHTS AND REMEDIES THEREUNDER,  IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.   BORROWER AGREES THAT LENDER MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT OF BORROWER TO IRREVOCABLY WAIVE BORROWER'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN BORROWER AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

16.    Venue. Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Note or any agreements or transactions contemplated hereby may be brought in the courts of the State of Georgia or of the United States of America for the Northern District of Georgia and hereby expressly submits to the personal jurisdiction and venue of such courts for the purposes thereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum. Borrower hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the address of Borrower last provided to Holder in connection with the Loan, such service to become effective ten (10) days after such mailing.

IN WITNESS WHEREOF, Borrower has caused this Note to be executed, sealed, and delivered as of the date first set forth above.

BORROWER

NO FREE, LLC, a Georgia limited liability company

By: _____(Seal)
Jerry K. Williams, Jr., M.D.
Managing Member

## GUARANTY AGREEMENT

**THIS GUARANTY AGREEMENT** (hereinafter referred to for convenience as the "Guaranty") is entered as of the ___//___ day of June, 2024, by **JERRY K. WILLIAMS, JR., M.D.** (hereinafter referred to for convenience as the "Guarantor"), in favor of **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (the "Lender").

**WHEREAS,** Lender has agreed to modify a loan in the amount of **Two Hundred Fifty Thousand Dollars ($250,000.00) to NO FREE, LLC,** a Georgia limited liability company, by increasing the amount to **Five Hundred Thousand Dollars ($500,000.00)**;

**WHEREAS,** in connection with the making and closing of the Loan, and in order to evidence and secure the Loan, the Borrower will execute a Modification to Promissory Note (hereinafter referred to for convenience as the "Note"), and various other documents evidencing, securing, or otherwise relating to the Loan (for convenience, the Note, and any other documents are referred to for convenience as the "Loan Documents"); and

**WHEREAS,** Lender is willing to make the Loan only if the Guarantor executes and delivers this Guaranty reflecting increase in the Loan amount;

**NOW, THEREFORE,** in consideration of the premises and to induce Lender to extend the credit referred to above, the Guarantor hereby agrees as follows:

### B. REPRESENTATIONS AND WARRANTIES

The Guarantor hereby represents and warrants that:

1.    The execution, delivery and performance of this Guaranty, and the agreements, documents, and instruments to be given by the Guarantor as security for the Loan and any other documents or instruments executed and delivered by the Guarantor pursuant hereto or thereto, or in connection herewith or therewith (collectively, the "Guarantor Documents"), are within the Guarantor's powers, have been duly authorized, do not violate any law, rule, or regulation, and will not conflict with, result in a breach of, or constitute a default under, any contractual obligations of the Guarantor;

2.    There is no judgment, decree, or order of any court or other governmental authority binding on the Guarantor which would be contravened by the execution, delivery, performance or enforcement of the Guarantor Documents; and

3.    Each of the Guarantor Documents is a legal, valid, and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its respective terms.

4.    That he understands that Lender would not modify the Loan to Borrower without Guarantor entering into this Guaranty, and there is substantial consideration flowing to Guarantor if the Loan is made equivalent to the potential burden to Guarantor of the obligations assumed hereunder.

The Guarantor agrees that for so long as this Guaranty remains in effect, each of the above representations and warranties and each other representation or warranty of the Guarantor contained herein or in the other Guarantor Documents shall be deemed to be continuing.

### C.  GUARANTY

1.     The Guarantor hereby unconditionally, absolutely, and irrevocably guarantees full payment and performance of, and promises to pay to Lender, or to order, without demand, in lawful money of the United States, when due (whether at stated maturity, by acceleration or otherwise), any and all indebtedness, liabilities, obligations and covenants of Borrower to Lender (whether any such indebtedness, liability, obligation or covenant now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such indebtedness, liabilities, obligations and covenants being hereinafter called, collectively, the "Obligations"),  arising out of or relating to the Loan, the Note, the Security Agreement, the Pledge and Security Agreement, or any of the other Loan Documents and any and all renewals, re-financings, extensions, amendments, modifications, and consolidations thereof.   The word "Obligations" is used in its most comprehensive sense and includes all principal, interest, and other amounts payable under the Note, the Security Agreement, or any of the other Loan Documents and all obligations for fees, indemnities, costs, and expenses under the Note, the Mortgage, or any of the other Loan Documents.

2.     The Guarantor's obligations hereunder are those of a primary obligor, and not merely as a surety or guarantor of collection, and are independent of the Obligations.  If there is more than one Guarantor herein, each Guarantor's obligations hereunder are joint and several.  In addition, Guarantor agrees that the Guarantor's obligations hereunder are joint and several with the obligations of any and all other obligors (which for purposes of this Agreement includes, without limitation, other guarantors pursuant to separate agreements or instruments) in respect of the Obligations.  A separate action or actions may be brought against the Guarantor (or any one Guarantor herein) whether an action is brought against Borrower, another Guarantor herein, or any other obligor in respect of the Obligations or whether Borrower, another Guarantor herein, or any other obligor in respect of the Obligations be joined in any such action or actions; and the Guarantor waives the benefit of any statute of limitations affecting his or her liability hereunder or the enforcement hereof.

3.     The obligations of the Guarantor under this Guaranty are continuing, absolute, and unconditional, and the Guarantor guarantees that the Obligations will be paid in full when due (whether at stated maturity, by acceleration or otherwise) in accordance with the terms of the Note, the Mortgage,  and the other  Loan Documents regardless of any law, regulation, or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto or any other circumstance which might otherwise constitute a defense available to, or a legal or equitable discharge of, a borrower or guarantor.

4.     This Guaranty is irrevocable with respect to all Obligations which arise out of or relate to the Loan, the Note, the Security Agreement, the Pledge and Security Agreement or any of the other Loan Documents. All of the liabilities of the Guarantor under this Guaranty shall remain in full force and effect until all Obligations (including any amendments, modifications,

2

extensions, renewals, restructurings, re-financings, and re-fundings of any thereof) shall have been finally paid in full in cash.

This Guaranty shall in all respects continue in full force and effect or shall be reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Obligations is rescinded or must otherwise be restored or returned for any reason, including without limitation, because of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower or any other obligor in respect to the Obligations (including without limitation, the Guarantor) or upon or as a result of the appointment of a custodian, receiver, trustee or other officer with similar power with respect to Borrower or any such other obligor or any material part of his or its assets, or otherwise, all as though such payment had not been made. If an event permitting the acceleration of the Obligations shall at any time have occurred and be continuing and such acceleration shall at such time be prevented by reason of the pendency against Borrower of a case or proceeding under any bankruptcy or insolvency law, the Guarantor agrees that, for purposes of this Guaranty and his obligations hereunder, the Obligations shall be deemed to have been accelerated, and the Guarantor shall forthwith pay such Obligations, and the other obligations hereunder, without any further notice or demand.

Without limiting the foregoing, the Guarantor authorizes Lender, without notice or demand, and without affecting the Guarantor's liability hereunder, from time to time to (a) renew, extend, accelerate, compromise, settle, restructure, refinance, refund, or otherwise change the amount and time for payment of any of the Obligations, or otherwise change the terms of the Obligations or any part thereof, including, without limitation, amend, modify, supplement, waive, or consent to a departure from the terms and conditions of the Note and the other Loan Documents; (b) take and hold security for the payment of this Guaranty or the Obligations or the obligations of other obligors in respect of the Obligations, and enforce any such security; (c) apply such security and direct the order or manner of sale thereof or sell, exchange, release, compromise, settle, waive or surrender any such security; and (d) take, hold, exchange, release, compromise, settle, amend, or waive, or consent to the departure from any of the terms of, any guaranty or other agreement relating to the obligations of any other obligor in respect to the Obligations. Lender shall have no obligation to perfect, secure, protect, or insure any collateral, and the Guarantor's liability hereunder shall not be affected by the non-perfection, invalidity, or unenforceability of any agreement, instrument, or document securing or purporting to secure the Note or the other Loan Documents.

5.    Guarantor hereby unconditionally and irrevocably: (a) waives and relinquishes any right of subrogation or other right of reimbursement from the Borrower or the Borrower's estate, and any other right to payment from the Borrower or the Borrower's estate, arising out of or on account of any sums paid or agreed to be paid by Guarantor under this Guaranty, whether any such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; (b) agrees that if at any time all or any part of any payment previously applied by Lender to any of the Obligations must be returned by Lender for any reason, whether upon the claim of a preference, fraudulent transfer, or other claim of a debtor-in-possession, trustee in bankruptcy, or other representative of creditors of Borrower, or otherwise, and whether by court order, administrative order, or non-judicial settlement, this Guaranty shall continue in effect or shall be reinstated, as the case may be, and Guarantor shall remain liable for the full amount returned as if such amount had never been received by Lender,

3

notwithstanding any termination of this Guaranty or cancellation of any promissory note or other instrument or agreement evidencing or securing any of the Obligations; (c) agrees that the liability of the Guarantor under this Guaranty shall not be affected or impaired by, and this Guaranty shall remain fully enforceable against Guarantor for the full amount of the Obligations less only payments thereon actually received and retained by Lender irrespective of and without reduction on account of: (i) any defenses which Borrower may have or assert with respect to any of the Obligations, including, but without limitation, filing of a petition in bankruptcy, discharge in bankruptcy, confirmation of a plan of reorganization (whether Lender voted for or against such plan), composition with creditors (whether or not including Lender), failure of consideration, breach of warranty, statute of frauds, statute of limitations, accord and satisfaction, waiver, estoppel, release, usury, or fraud or misrepresentation; or (ii) dissolution or insolvency of Borrower.

6.      The Guarantor unconditionally and irrevocably waives any right to require Lender to (a) proceed against Borrower or any other obligor in respect to the Obligations; (b) proceed against or exhaust any security held directly or indirectly on account of the Obligations; (c) pursue any other remedy of Lender whatsoever; (d) give the Guarantor prior or subsequent notice of the disposition of any security; or (e) give the Guarantor notice of any information concerning Borrower's business, operations, or condition (financial or otherwise) known to Lender. The Guarantor unconditionally waives any defense arising by reason of any disability or other legal or equitable defense of Borrower by reason of the cessation from any cause whatsoever of the liability of Borrower other than final payment in full in cash of the Obligations. The Guarantor waives all diligence, presentments, protests, notices of protest, notices of dishonor, notices of non-payment, acceptance and notices of acceptance of this Guaranty.

7.      Any debt of Borrower now or hereafter held by or owed to the Guarantor is hereby absolutely and totally subordinated in right of payment and in all other respects to the Obligations and all other obligations of the Borrower to Lender in any way relating to the Note or the other Loan Documents, and in the event an event of default under the Note or the other Loan Documents shall have occurred, and there is a default in the debt of Borrower to the Guarantor, if Lender so requests, such debt shall be collected, enforced and received by the Guarantor as trustee for Lender and shall be paid over to Lender on account of the Obligations and any such other obligations.

8.      Upon the occurrence of any Event of Default, as defined in the Note, Security Agreement or any other Loan Document, in the payment or performance of the Note or any of the other Loan Documents, the Lender is hereby authorized at any time and from time to time to set-off and apply all deposits (general or special, time or demand, provisional or final) at any time held and other obligations at any time owing by the Lender to or for the credit or the account of the Guarantor against any and all of the obligations of the Guarantor now or hereafter existing under this Guaranty, irrespective of whether or not, the Lender shall have made any demand under this Guaranty and although such obligations may be contingent and unmatured. The rights of the Lender under this Section  are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Lender may have.

9.      The Guarantor will keep at all times full, true and accurate books and records of account of the financial affairs of the Guarantor sufficient to reflect accurately and correctly the

4

results of all income and expense activities and to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles (or another method approved by Lender). The Guarantor will deliver to the Lender, upon such times as may be requested by the Lender, and in no event more than three (3) months after the end of every calendar year from date hereof, whether or not requested by the Lender, financial statements reflecting the foregoing information, including, but not limited to, balance sheets, profit-and-loss statements and all schedules and exhibits thereto as are customarily required by generally accepted accounting principles or as may be requested by Lender. Unless otherwise consented or agreed to by Lender in writing with respect to any particular year, such statements and information shall be prepared by a certified public accountant approved by the Lender in advance of delivery of such statements and information. The Guarantor further covenants and agrees to furnish to Lender, within 10 days after the date of any request by Lender, such other information and documents (financial or otherwise, including without limitation income tax returns) concerning or relating to the Guarantor or any collateral securing this Guaranty as the Lender may request at any time or from time to time.

10.    The Guarantor assumes full responsibility for keeping fully informed of the financial condition of the Borrower and all other circumstances affecting the Borrower's ability to perform its obligations to the Lender, and agrees that the Lender will have no duty to report to Guarantor any information which the Lender receives about the Borrower's financial condition or any circumstances bearing on Borrower's ability to perform.

11.    No amendment or wavier of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom, shall in any event be effective unless the same is signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose given. No failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any provided by law or at equity.

12.    Any provision of this Guaranty which may be prohibited by law or otherwise held invalid shall be ineffective only to the extent of such prohibition or invalidity and shall not invalidate or otherwise affect the remaining provisions of this Guaranty.

13.    The Lender may, without notice to or consent from the Guarantor, assign or otherwise transfer, or grant a participation in, the Note or the other Loan Documents, the Obligations, or any interest therein, or the collateral, in whole or in part, without affecting in any manner whatsoever the Guarantor's liability hereunder. Any assignee or other transferee, or participant in, any of the Note or the other Loan Documents or the Obligations shall thereupon become vested with all rights in respect thereof granted to Lender herein to the same extent as if such assignee or transferee was the original guaranteed party hereto, and all Obligations shall be and remain Obligations for purposes of this Guaranty. This Guaranty shall be binding upon the Guarantor and Guarantor's heirs, executors, personal representatives, successors and assigns and inure to the benefit of Lender and its respective heirs, executors, personal representatives, successors, assigns and other transferees; provided, however, that the Guarantor shall not assign

5

or transfer any of Guarantor's rights or obligations hereunder without the express written consent of Lender.

14.    Guarantor agrees that this Guaranty, the Note, and the other Loan Documents, and the rights and obligations of the parties hereunder and thereunder shall be governed by and be construed in accordance with the laws of the State of Georgia, unless otherwise provided therein or except where required to be governed by the laws of another jurisdiction to be enforceable. Guarantor acknowledges that the negotiation of the provisions of this Guaranty, the Note and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give, nor shall Guarantor, Borrower or any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Guaranty or said Loan Documents to become effective and valid and binding obligations of the Borrower, the Guarantor or any other obligor. Guarantor acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Guarantor acknowledges further that the negotiation, execution, and delivery of this Guaranty, the Note and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Guarantor hereby submits himself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with this Guaranty, the Loan or any of the Loan Documents, agrees that venue for any such action shall be in the state or federal courts in Georgia, and waives any and all rights under the laws of the United States or any state to object to jurisdiction or venue within the state or federal courts in Georgia. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a wavier by Lender of any of the foregoing.

15.    Guarantor hereby waives all rights of exemption under the constitution and laws of the United States and all states therein, including, but not limited to, the State of Georgia. Guarantor agrees to pay all cost of collection, including a reasonable attorney's fee, if the services of an attorney are utilized whether or not suit is filed. In that connection, Guarantor agrees that if, and as often as, this Guaranty Agreement is given to an attorney for collection or to defend or enforce any of Lender's rights hereunder, Guarantor will pay to Lender its reasonable attorney's fees, which shall be defined as 15% of the Obligations, together with all court costs and other expenses paid or incurred by Lender. Provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

16.    The undersigned hereby waives the right to require the holder of the obligations guaranteed to take any action against the principal as provided for in O.C.G.A. § 10-7-24. At the option of the Bank, this may be treated as a guaranty or as a suretyship, with the right to proceed against the guarantor without first proceeding against the Borrower.

17.    TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY, THE LOAN OR THE LOAN DOCUMENTS OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR BORROWER AND GUARANTOR WITH RESPECT TO THE LOAN DOCUMENTS OR IN CONNECTION WITH THIS GUARANTY OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS GUARANTY OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. GUARANTOR AGREES THAT LENDER MAY FILE A COPY OF THIS GUARANTY WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED-FOR AGREEMENT OF GUARANTOR IRREVOCABLY TO WAIVE GUARANTOR'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN GUARANTOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty effective as of the date first written above.

_____ (Seal)
Jerry K. Williams, Jr., M.D.

Signed, sealed and delivered in my presence by **Jerry K. Williams, Jr., M.D.** known to me or who produced satisfactory official identification, this 11th day of June, 2024.

_____
Notary Public

(Notary Seal)

7

# EXHIBIT C

FIRST LIBERTY CAPITAL PARTNERS, LLC
PO Box 2567
Newnan, GA 30264

## LOAN CLOSING STATEMENT

DATE OF TRANSACTION:  September 18, 2024

BORROWER: RIVERDAWG, LLC, a Georgia limited liability company

LENDER:     FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company

---

## SCHEDULE OF LOAN ADVANCES

| | |
|---|---|
| **TOTAL LOAN AMOUNT** | **$700,000.00** |

### DISBURSEMENTS

| | |
|---|---|
| Loan Fee to First Liberty Capital Partners, LLC | $35,000.00 |
| Six Month Interest Reserve to First Liberty Capital Partners, LLC | $56,000.00 |
| Partial Month's Interest (September) | $4,044.43 |
| Legal Fees, incl. Title   (to Pamela Kendell Floyd) | $3,279.00 |
| Document Fees | $700.00 |
| **DISBURSEMENTS** | **$99,023.43** |
| **BALANCE AVAILABLE BORROWER** | **$600,976.57** |

SIGNATURE PAGE FOLLOWS:

"BORROWER"

RIVERDAWG, LLC, a Georgia limited liability company

By:_____(Seal)
    Dr. Jerry Willaims


"LENDER"

FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company

By:_____(Seal)
    Brant Frost IV, Manager

FIRST LIBERTY CAPITAL PARTNERS, LLC
PO Box 2567
Newnan, GA 30264

LOAN CLOSING STATEMENT ADDENDUM

DATE OF TRANSACTION:    September 17, 2024

BORROWER:  RIVERDAWG, LLC, a Georgia Limited Liability Company

LENDER:    FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability
company

PROPERTY ADDRESS:        7934 Hiawassee Wilderness Trail
Hiawassee, Georgia 30546
Map and Parcel: 0064 011

Lot B-5, Hiawassee Wilderness
Hiawassee, Georgia 30546
Map and Parcel:  0064 012

5.693 acres, Hiawassee Wilderness Trial
Hiawassee, Georgia 30546
Map and Parcel:  0064 010

## PROMISSORY NOTE

$700,000.00                                                September 17, 2024

**RIVERDAWG, LLC**, a Georgia limited liability company ("**Borrower**") whose address is 1004 Memorial Lane, Suite 200, Savannah, GA 31410 and **FIRST LIBERTY CAPITAL PARTNERS, LLC**, a Georgia limited liability company (hereinafter, together with any subsequent holder hereof, sometimes called "**Lender**" or "**Holder**"), whose address is P. O. Box 2567, Newnan, GA 30264, agree as follows:

A.      Borrower has requested that Lender make a loan in the original principal amount of **Seven Hundred Thousand Dollars ($700,000.00)** (the "**Loan**"), and Lender hereby agrees to make the Loan to Borrower upon the terms and conditions contained herein.

B.      The principal amount of the Loan shall be allocated by Lender to an account established for Borrower, and Loan proceeds shall be disbursed from time to time on terms and conditions as established by Lender as to timing, amount and other conditions of disbursements.

**THEREFORE, FOR VALUE RECEIVED**, Borrower hereby promises to pay to the order of Lender or Holder, the principal sum of **Seven Hundred Thousand Dollars ($700,000.00)** together with interest from the date hereof until paid in full, on the unpaid principal balance from time to time outstanding at the rate hereinafter set out, payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. Said principal and interest shall accrue and be payable as follows:

1.      **Interest.**      Interest shall accrue at the rate of sixteen percent (16%) per annum computed on the basis of a 360 day year. Interest shall be computed on the entire principal amount of the Loan from the date of the Loan, notwithstanding that a portion of the Loan proceeds may be held by Lender for future disbursement to or on behalf of Borrower.

2.      **Payments.**

a.      Monthly Payments.      Borrower shall make monthly payments of interest only on the outstanding principal balance with the first payment due at closing in the amount of $4,044.43. Thereafter, Borrower shall make monthly payments in the amount of $9,333.33 commencing on November 1, 2024, and continuing thereafter on the 1st day of each successive month until September 18, 2025 (the "**Maturity Date**"),   at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges and accruals due hereunder shall be due and payable for all purposes in full in a single **BALLOON PAYMENT**. All such payments shall be made at the office of Lender by federal wire transfer or electronic funds transfer, or such other place and to such other person as the Lender or any subsequent holder hereof may from time to time designate in writing.

b.      Minimum Interest. Borrower may prepay this Loan at any time, provided however, that Borrower agrees to pay the full amount of all Interest that would have been due under this Loan, plus outstanding principal and any other unpaid charges and accruals hereunder, which shall be deposited as an Interest Reserve at closing and deducted from Loan proceeds. During and after the seventh month, prepayment shall require payment of outstanding principal plus accrued interest and any other unpaid charges and accruals due hereunder.

c.      Interest Reserve. A six month evergreen interest reserve in the amount of $55,999.98 (the "**Evergreen Reserve**") and shall be held by Lender as additional security for Borrower's obligations under the Loan.  Lender, in its sole discretion, may use the Evergreen Reserve to pay

1

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



Principal, Interest, fees, charges, or other accruals as provided for under this Loan, fund legal fees and costs, pay or satisfy any indemnity liability or obligating, or satisfy any other condition or even increasing the credit risk to the Borrower. If there is no Event of Default, any unused portion of the Reserve Accounts established hereunder shall be applied to the amount due upon repayment of this Loan.

        d.      Loan Extension. Borrower shall have the right to extend the Maturity Date of the Loan for an additional six (6) months upon notice to Lender prior to maturity and payment to Lender of an extension fee of 2.5% of the Loan principal amount, but only in the event the Loan has been paid as agreed to date.

        **3.**      **Late Charge/Post Default Interest.**      Borrower further agrees to pay a "late charge" of five percent (5%) of any amount due hereunder (but not in excess of the maximum amount allowed by any applicable law, rule or regulation) if paid more than three (3) days after the due date thereof, to cover the extra expense involved in handling delinquent payments. These provisions shall not be deemed to excuse a late payment or be deemed a waiver of any other rights Lender may have including the right to declare the entire unpaid principal and interest immediately due and payable. Notwithstanding any provision to the contrary herein, from and after the maturity of this Loan (whether by acceleration or otherwise) or an Event of Default, interest on principal (but not on unpaid interest) shall be computed at the rate of twenty-four percent (24.0%) (the "**Default Rate**").

        **4.**      **Loan Documents and Collateral.**

        (a)      Grant of Security Interest. Borrower hereby grants to Lender a continuing security interest in all of its right, title, and interest in, to, and under the collateral described below to secure the payment and performance of the obligations set forth in this Loan, and authorizes and approves the filing of security instruments, including – but not limited to -- UCC Financing Statements (the "**Security Interest**"). "*Collateral*" shall mean the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Lender is giving to Borrower a security interest for the payment of this Loan and performance of all other obligations under the Loan:

> All assets of Borrower, now owned or hereafter acquired, including, without limitations, all of Borrower's presently owned and hereafter acquired personal and fixture property wherever located, including, without limitation, all accounts, chattel paper, inventory, instruments, investment property, equipment, documents, deposit accounts, commercial tort claims, letters-of-credit rights, general intangibles including payment intangibles, patents, software, trademarks, tradenames, customer lists, supporting obligations, all proceeds and products of all the foregoing, including without limitation, insurance proceeds, lock box contents and proceeds.

        (b) Security and Perfection. The Parties acknowledge and agree that this will be secured and perfected by: (1) the Deed to Secure Debt granted in favor of Lender for the real property and improvements located at 7934 Hiawassee Wilderness Trials, Hiawassee, GA 30456, (2) the Unconditional Guarantees of Dr. Jerry Williams and Urgent Care 247 LLC, (3) the Evergreen Reserve, (4) the UCC-1 Financing Statement, and (5) all other transactional documents providing security to Lender for this Loan and all other obligations pursuant to the cross-collateral provisions set forth below (collectively, the "**Security Documents**" and together with this Loan and related transactional documents, the "**Loan Documents**").

        **5.**      **Loan Oversight.** Borrower agrees that the principal purpose of the Loan is to purchase and expand an existing Urology Clinic. Borrower shall provide Lender with monthly financials and



such information as Lender may request from time to time regarding application of loan proceeds and performance under the Loan documents.

6.    **Cross-Default and Cross-Collateralization.**

(a)    Lender or its affiliates has made or may make other loans to Borrower or its affiliates (as used herein the term "*affiliates*" shall include any and all entities related to Lender and Borrower by common ownership and/or control) evidenced by various notes, leases, and deeds to secure debt (a "deed" to secure debt as used herein to include mortgages, security agreements, fixture filings, pledges and other documents securing the Loan or other obligations). Any event of default or default as defined in this Loan, any, any note, any lease, any deed to secure debt or other obligation from Borrower or its affiliates to Lender or its affiliates shall be an event of default or default under this Loan and all of the notes, leases, or deeds to secure debt from Borrower or its affiliates to Lender or its affiliates.

(b)    Lender has made or may make other loans to Borrower evidenced by various notes, leases or deeds to secure debt. The real property and any other property described in said other deeds to secure debt is and shall be security for each and every other note, lease or other obligation executed by Borrower and its affiliates in favor of Lender and its affiliates, or any advance made thereunder, or any renewal or extension thereof. Further, the real property described herein is and shall be further security for each and every note, lease or other obligation executed by the Borrower and its affiliates in favor of the Lender and its affiliates. This paragraph shall apply notwithstanding the fact that the outstanding balance of any one or more of said loans exceeds the original face amount of the notes, leases or other obligations evidencing said debt.

(c)    Nothing contained within this section, shall in any way impair the rights of the Lender granted in any note, any lease, any deed to secure debt or other obligation. Further, each and every note, lease, deed to secure debt or other obligation executed between Lender and its affiliates to Borrower and its affiliates is and shall remain a separate obligation of Borrower, and each and every note, lease, deed to secure debt or other obligation is and shall be separately enforceable according to its terms until all outstanding indebtedness owing from Borrower and its affiliates to Lender and its affiliates has been paid in full. Further, Lender or its affiliates may, at its sole discretion, institute separate or collective proceedings with respect to each note, lease, deed to secure debt or other obligation simultaneously or in such order and at such times as Lender or its affiliates may elect. The pendency of any proceeding with respect to any  any note, any lease, any deeds to secure debt or other obligation shall not be grounds for abatement of or hindering, delaying or preventing any proceeding in respect to any other note, lease, deed to secure debt or other obligation. Event of default or default under each note, any lease, any deed to secure debt or other obligation shall constitute a separate cause of action.

7.    **Representations and Warranties.** Borrower makes the following representations and warranties, all of which shall survive the execution and delivery of this Loan. Unless otherwise specified, such representations and warranties shall be deemed made as of the date hereof.

(a)    Valid Existence and Power. Borrower is a legal entity, duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and is duly qualified or licensed to transact business in all places where the failure to be so qualified would have a material adverse effect on the Borrower. Borrower has the power to make and perform its obligations under this Loan and Loan Documents, instruments or other documents executed by it in connection therewith or relating thereto including, but not limited to, the Security Documents, written resolution of the Borrower, and other documents contemplated thereby (such agreements, instruments and documents executed by Borrower and any other party in connection with this Loan or relating thereto, collectively, the "Transaction Documents" and each, a "Transaction Document") and all such Transaction Documents will constitute the legal, valid and binding obligations of the Borrower, enforceable in accordance with their

3



respective terms. Borrower has not changed the jurisdiction of its organization within the five (5) years preceding the date hereof.

(b)    Authority. The execution, delivery and performance of this Loan, and any Transaction Documents, have been duly authorized by all necessary actions of the Borrower, and do not and will not violate any provision of law or regulation, or any writ, order or decree of any court or governmental or regulatory authority or agency or any provision of the governing instruments of Borrower, and do not and will not, with the passage of time or the giving of notice, result in a breach of, or constitute a default or require any consent under, or result in the creation of any lien or other encumbrance upon any property or assets of Borrower pursuant to, any law, regulation, instrument or agreement to which Borrower is a party, or by which Borrower or its properties may be subject, bound or affected.

(c)    Financial Condition. The Borrower is Solvent, and after consummation of the transactions set forth in this Agreement and the other documents, Borrower will be Solvent. "Solvent" means that Borrower has cash flow and/or capital sufficient to carry on its business and transactions in which it is currently engaged and all business and transactions in which it is about to engage, is able to pay its debts as they mature, and has assets having a fair value greater than its liabilities, at fair valuation.

(d)    Authorizations. All authorizations, consents, approvals and licenses required under applicable law or regulation for the ownership or operation of the property owned or operated by the Borrower, or for the conduct of any business in which it is engaged have been duly issued and are in full force and effect, and it is not in default, nor has any event occurred which with the passage of time or the giving of notice, or both, would constitute a default, under any of the terms or provisions of any part thereof, or under any order, decree, ruling, regulation, closing agreement or other decision or instrument of any governmental commission, bureau or other administrative agency or public regulatory body having jurisdiction over the Borrower, which default would have a material adverse effect on Borrower. Except as noted herein, no approval, consent, or authorization of, or filing or registration with, any governmental commission, bureau or other regulatory authority or agency is required with respect to the execution, delivery or performance of any Transaction Document or this Loan.

(e)    Full Disclosure. There is no material fact which is known, or which should be known by Borrower that Borrower not disclosed to Lender which could have a material adverse effect on Borrower. No agreement, document, Transaction Document, certificate, or statement delivered by Borrower to Lender contains any untrue statement of a material fact or omits to state any material fact which is known, or which should be known by Borrower necessary to keep the other statements from being misleading.

(f)    Sophistication. The Borrower is sophisticated in financial matters, the terms of this Loan were negotiated between sophisticated parties. Moreover, the Borrower represents and warrants that the funds received shall only be used for business and commercial purposes and not for personal, family, consumer or household purposes. Borrower acknowledges and agrees that this Loan does not constitute a consumer transaction, and as such, Borrower hereby releases, waives and forfeits any claim, cause of action or lawsuit on the basis that the transactions contemplated by this Loan constitute a consumer transaction under the law or statute of any jurisdiction, including – but not limited to – Georgia or the laws of the state in which the Borrower or any Collateral is located.

8.    **Affirmative Covenants.**

(a)    Prohibition on Additional Debts. Borrower will not incur any additional debts without the prior written approval of the Lender.

(b)    Reporting and Access. Before the tenth (10th) day of the following month, the Borrower agrees to provide to the Lender a monthly profit and loss, balance sheet and cash flow statements, accounts receivable aging report for the accounts, accounts payable aging reports, inventory

4

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



reports for finished goods, inventory reports for non-finished goods, bank statements and other financial information reasonably requested by Lender. Once completed, Borrower agrees to provide reviewed or audited annual and/or quarterly financial statements, if applicable, and income tax returns, payroll tax returns, and proof of payment of its tax liabilities to Internal Revenue Service or other state or local revenue agency, whether paid with the returns. Lender shall also provide unlimited online viewing access to Borrower's bank accounts and will not cutoff online access to Lender at any time.

(c) Insurance. Borrower, at Borrower's sole expense, shall carry reasonable insurance in such coverages and amounts for the protection of credit exposure and its Collateral that the Borrower deems adequate. At a minimum, Lender shall carry a comprehensive commercial general liability insurance policy with minimum limits of at least $1,000,000.00 for bodily injury for each person and $2,000,000.00 per occurrence and property and casualty damage of $1,000,000.00 each occurrence. Any insurance policies shall name Lender as an additional insured, a loss payee, a certificate holder and/or a mortgagee, and a certification of insurance shall be provided to the Lender evidencing that Lender is an additional insured, a loss payee, a certificate holder and/or a mortgagee. The Borrower agrees that none of the insurance policies required under this Paragraph shall be cancelable without the insurance company giving notice to the Lender. If Borrower fails to acquire any insurance required by this Paragraph, Lender may, at its option, cause such insurance to be issued, and in such event, Borrower agrees to pay the premium for such insurance as a chargeable cost or through the any Evergreen Reserve.

(d) Existence; Conduct of Business. Borrower will do or will cause to be done all things necessary to preserve, renew and maintain in full force and effect its legal existence and its respective rights, licenses, permits, privileges, franchises, patents, copyrights, trademarks, and trade names material to the conduct of its business and will continue to engage in the same business as presently conducted or such other businesses that are reasonably related thereto.

(e) Compliance with Laws, Etc. Borrower will comply with all laws, rules, regulations and requirements of any governmental authority applicable to its business and properties, including without limitation, all laws, rules, regulations, codes, ordinances, orders, decrees, judgments, injunctions, notices or binding agreements issued, promulgated or entered into by or with any governmental authority, relating in any way to the environment, preservation or reclamation of natural resources, as well as the Employee Retirement Income Security Act of 1974 and the Occupational Safety and Health Act of 1970, both as amended from time to time and any respective successor statute thereof.

(f) Taxes. Borrower will file all federal and state income and other tax returns which are required to be filed and will pay all taxes as shown on said returns and all taxes, including, without limitation, withholding, FICA and ad valorem taxes, shown on all assessments received by it to the extent that such taxes have become due. Except for as otherwise disclosed to Lender, Borrower is not subject to any federal, state or local tax Liens, nor has the Borrower received any notice of deficiency or other official notice to pay any taxes which have not been disclosed by the Borrower to Lender prior to entering into this Loan. Borrower shall pay all sales and excise taxes payable by it.

(g) Further Assurances and Cooperation. Borrower shall take such further action and provide to Lender such further assurances as may be reasonably requested to ensure compliance with the intent of this Loan and any affiliated agreements. Borrower agrees to cooperate in executing any amendments to this Loan deemed necessary to confirm the intent of the Parties, including – but not limited to – correcting any clerical mistakes such as page numbers, typos, missing initials, etc., and Borrower agrees to execute and deliver such other and further instruments as may be necessary to implement fully the terms of this Loan. The Borrower further acknowledges and agrees that the presence of clerical mistakes in the Loan is not material and do not affect the enforceability of this Loan.

(h) Additional Collateral. In the event that Lender believes, in its sole discretion, to be under-collateralized of insecure, Obligors, now existing or future acquired, shall immediately provide

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



and deliver to Lender additional collateral, and Obligors and/or the new debtors will execute all documentation necessary to obligate the new debtor and/or to perfect a security interest in the collateral.

9.   **Negative Covenants.**

(a)   Indebtedness. The Borrower will not create, incur, assume or suffer to exist any additional indebtedness (other than business credit card debt and trade payables, each in the ordinary course of business consistent with past practice), except the indebtedness created pursuant to this Loan.

(b)   Fundamental Changes. The Borrower shall not merge, reorganize, consolidate, or amalgamate with any other person or entity without the prior written consent of the Lender.

(c)   Sale of Assets. The Borrower will not convey, sell, lease, assign, transfer or otherwise dispose of any of its assets, business, or property, whether now owned or hereafter acquired, except (i) for the sale or other disposition for fair market value of obsolete or worn-out property or other property not necessary for operations disposed of in the ordinary course of business, and (ii) the sale of inventory in the ordinary course of business.

10.   **Events of Default.** The principal sum evidenced by this Loan, together with all accrued but unpaid interest thereon and all other agreed charges owing by Borrower hereunder, shall become immediately due and payable at the option of Lender upon the occurrence of any "Event of Default", as used and defined in any Loan Document, each of which shall constitute an "Event of Default" hereunder, *provided however*, that Borrower shall have five (5) days following notice of a monetary default in which to cure, and thirty (30) days following notice of a non-monetary in which to cure. Not in limitation of the foregoing but in addition thereto, the following shall constitute events of default under this Loan:   (a) failure of Borrower (Borrower and each other person primarily or secondarily liable to Lender for the indebtedness evidenced by this Loan hereinafter collectively referred to as "Obligors") to make any payment of principal or interest or any other amount under this Loan when due or failure of Borrower to perform or observe any promise or agreement contained in this Loan; (b) the death of (if an individual), death of a general partner (if a partnership), or dissolution of (if a partnership or corporation), insolvency of, general assignment for the benefit of creditors by, any Obligor; (c) the commencement of a voluntary proceeding under any law relating to bankruptcy, insolvency, reorganization, arrangement, composition or readjustment of debt, dissolution, liquidation or debtor relief law or statute of any jurisdiction, whether now or hereafter in effect, including without limitation the filing of a petition under any chapter of the federal bankruptcy code by or against, or acquiescence in writing to same by, or failure to timely and diligently controvert any such involuntary proceeding by, any Obligor; (d) the filing of a proceeding for the appointment of a receiver, custodian, trustee, liquidator or similar official for Obligor or Obligor's property or consenting to the appointment of same; the failure of an involuntary petition for relief under the Federal Bankruptcy Code, as amended, to be dismissed within thirty (30) days after the commencement thereof or in which an order for relief is entered; (e) the making by any Obligor of a conveyance fraudulent as to creditors under any state or federal law; (f) entry of any judgment against, or issuance of a levy or writ of execution, attachment or garnishment against any of the property of, any Obligor; (g) the inability of any Obligor to pay debts as they become due or admit in writing to such effect; (h) the transfer by any Obligor of all or substantially all of his, her or its assets outside the ordinary course of business, or the waste, loss or dissipation of a substantial part of such person's assets; (i) if any Obligor is a partnership, the withdrawal or removal of any general partner of such partnership; (j) if any Obligor is a corporation, the transfer, directly or indirectly (including through any voting trust, irrevocable proxy, or the like), of the ownership or power to vote more than thirty percent (30%) of the voting stock of such corporation; (k) the suspension of the operation of any Obligor's present business; (l) the occurrence of any default or event authorizing acceleration as provided under any Loan Documents or any other agreement by and between the Lender, Obligors, any affiliated entities of the Obligors or any third party; (m) any statement, representation or warranty of any Obligor made orally or in writing in any document evidencing, securing or otherwise relating to the indebtedness evidenced by this Loan or in any

6

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*

other writing or statement at any time furnished or made by any Obligor to Lender is false or misleading in a material respect as of the date furnished or made; (n) revocation or termination of any guaranty executed in favor of Lender guaranteeing the indebtedness evidenced by this Loan; (o) the financial responsibility of any Obligor becomes impaired at any time in the sole opinion of Lender;(p) the determination by Lender that it otherwise deems itself to be insecure; (q) all or any portion of this Loan or Loan Documents shall at any time and for any reason be declared to be null and void, or a proceeding shall be commenced by Borrower, or by any governmental authority having jurisdiction over Borrower, seeking to establish the invalidity or unenforceability thereof (exclusive of questions of interpretation of any provision thereof), or the Borrower shall deny that it has any liability or obligations for the payment of any obligation purported to be created under this Loan or any of the Loan Documents; or (r) any representation or warranty made or deemed made by or on behalf of the Borrower in or in connection with this Loan, Loan Documents or any other document executed in connection therewith and any amendments or modifications hereof or waivers hereunder, or in any certificate, report, financial statement or other document submitted to the Lender by the Borrower, or any representative of the Borrower pursuant to or in connection with this Loan or any other Loan Documents executed in connection herewith shall prove to be incorrect in any material respect when made or deemed made or submitted.

11.    **Remedies.**

(a)    Acceleration; Costs. Upon the occurrence and during the continuation of any Event of Default, Lender may at its option without notice or demand of any kind declare this Loan immediately due and payable for the entire unpaid principal hereof plus accrued interest hereon. Borrower agrees to pay Lender all costs of collection of this Loan incurred by Lender, including but not limited to legal expenses and reasonable attorney's fees, paid or incurred by Lender on account of such collection, whether or not suit is filed with respect thereto and whether such cost or expense is paid or incurred, or to be paid or incurred, prior to or after entry of judgment.

(b)    Cross-Collateralization Remedy. Upon the occurrence of an Event of Default or default under this Loan or any affiliated agreements, such event of default shall be deemed an event of default under any and all agreements between the Parties, and Lender or its affiliates, in their sole discretion, shall be entitled to assert any and all rights and remedies against the Obligors, and collect against any collateral, property or guarantee as provided for under any agreement as set forth in Paragraph 6. above.

(c)    Entry onto Real Property. Lender is authorized to enter onto the real property or leased premises of the Borrower to take control of the Collateral or other property secured by the Loan Documents.

(d)    ACH. Borrower authorized Lender to initiate electronic debit or credit entries through the ACH system to any deposit account of Borrower, and the Borrower agrees to be bound by the ACH rules set forth by the National Automated Clearing House Association.

(e)    Notice to Account Debtors. Lender may affix Borrower's signature and send notices of assignment under Section 9-406 of the UCC to all the account debtors of Borrower, and the Borrower agrees and acknowledges that all such notices of assignment are authenticated and approved. Lender may take and endorse for deposit in the name of Borrower all payments received for any of Borrower's accounts and to deposit same for benefit of Lender.

(f)    Receivership. Lender may, in its sole discretion, seek place the Borrower into receivership, or other applicable state or federal law process, and request a court to appoint a receiver or trustee over the Borrower, and Borrower will not contest and consent to the appointment thereof.

(g)    No Waiver. No remedy conferred hereunder is intended to be exclusive of any other remedy and each and every such remedy shall be cumulative and shall be in addition to every other



remedy given hereunder or hereafter existing at law or in equity or by statute or otherwise. No course of dealing between Borrower and Lender or any delay or omission on the part of Lender in exercising its rights hereunder shall operate as a waiver of any rights of such holder, nor shall any waiver by Lender of any such right or rights on any one occasion be deemed a bar to, or waiver of, the same right or rights on any future occasion.

(h)    Borrower's Waivers.  Borrower hereby (i) waives demand, presentment for payment, notice of nonpayment, protest, notice of protest and all other notice, filing of suit, and diligence in collection of this Loan; (ii) agrees to any substitution, addition or release of any party or person primarily or secondarily liable hereon; (iii) agrees that Lender shall not be required first to institute any suit, or to exhaust its remedies against Borrower or any other person or party to become liable hereunder, or against any collateral in order to enforce payment of this Loan; (iv) consents to any extension, rearrangement, renewal, or postponement of time of payment of this Loan and to any other indulgence with respect hereto without notice, consent, or consideration to any of them; (v) agrees that, notwithstanding the occurrence of any of the foregoing (except with the express written release by Payee or any such person), Borrower shall be and shall remain directly and primarily liable for all sums due under this Loan; and (vi) waives all statutory appraisal rights.

12.    ACH Provision. In order to recoup any unpaid Interest or any obligations owing under this Loan upon an Event of Default, Borrower authorizes Lender to initiate electronic debit or credit entries through the ACH system to any deposit account of Borrower, and Borrower agrees to execute any ACH forms required by any financial institution in order to effectuate an ACH. The Borrower agrees to be bound by the ACH rules set forth by the National Automated Clearing House Association (the "NACHA").

13.    Notices.  Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Loan shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or three (3) days after being deposited in the United States mail, postage prepaid, certified with return receipt requested, if mailed to the addresses set forth in the beginning of this Loan or at such other address within the continental United States for either party as such party may designate by notice to the other given in accordance with the provisions of this paragraph; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice has been received shall also constitute receipt.

14.    Acceleration.  Time is of the essence in the performance of all obligations under this Loan. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at its option and as often as it may desire, may declare all liabilities, obligations and indebtedness due Lender, including without limitation this Loan to be immediately due and payable without demand, notice or presentment, and may exercise any other remedy available to Lender hereunder, at law or in equity.

15.    Costs of Collection.  Borrower agrees that if, and as often as, this Loan is given to an attorney for collection or to defend or enforce any of Lender's arising from or relating to this Loan, Borrower will pay to Lender attorney's fees in the amount of 15% of the principal balance due, together with all court costs and other expenses paid or incurred by Lender; provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

16.    Maximum Legal Rate  Borrower and Lender agree that no payment of interest or other consideration made or agreed to be made by Borrower to Lender pursuant to this Loan shall, at any time,

8

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



be in excess of the maximum rate of interest permissible by law. In the event such payments of interest or other consideration provided for in this Loan shall result in an effective rate of interest which, for any period of time, is in excess of the limit of the usury or any other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied to principal immediately upon receipt of such monies by Lender hereof with the same force and effect as though the payer had specifically designated such and Lender had agreed to accept such extra payments as a principal payment, without premium. This provision shall control every other obligation of the Borrower and Lender under this Loan .

17.    **Miscellaneous.**

(a)    With respect to any and all obligations, to the extent permitted by applicable laws Borrower waives the following: (1) all rights or exemption of property from levy or sale under execution or other process for the collection of debts under the constitution or laws of the United States or any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold Borrower on any obligation; (3) all statutory provisions and requirements for the benefit of the Borrower now or hereafter in force (to the extent that same may be waived); (4) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Lender and Borrower shall be adverse parties. Borrower agrees to pay all filing fees and taxes and all costs of collecting or securing or attempting to collect or secure any obligations, including but not limited to attorney's fees.

(b)    The obligations and liabilities of Borrower under this Loan are continuing, absolute, and unconditional, and shall remain in full force and effect until all amounts due hereunder have been paid in full and all obligations of Borrower have been discharged without regard to and without being released, discharged, impaired, modified or in any way affected by, the occurrence from time to time of any event, circumstance or condition, including without limitation any one or more of the following, whether or not with notice to or consent of Borrower: (1) any assignment or transfer this Loan or of any interest hereunder; (2) any consent, extension, indulgence or other action or inaction (including without limitation any lack of diligence or failure to mitigate damages) under, or in respect of, this Loan or other agreement, or any exercise or non-exercise of any right, remedy, power or privilege under, or in respect of, this Loan or agreement; or (5) the failure, omission, delay or lack of diligence on the part of the Lender or any assignee or successor thereto, to enforce, assert or exercise any right, power, privilege or remedy conferred upon the Lender by this Loan or other agreement.

(c)    The Lender, may, but shall not be required to, apply to the payment of the debt evidenced hereby, on or after the maturity of said debt, whether by acceleration or otherwise, any money or credit held by the Lender on deposit, in trust or otherwise, for the account of the Borrower or any of them.

(d)    Lender shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid, unless in writing and signed by the Holder. All rights and remedies of the Lender under the terms of this Loan and under any statutes or rules of law shall be cumulative and may be exercised successively or concurrently. Borrower agrees that the Lender shall be entitled to all the rights of a holder in due course of negotiable instruments. Any provision of this Loan which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof.

(e)    The liabilities and obligations of each person or entity who or which is a Borrower are joint and several.

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



(f)     Borrower warrants and agrees that the proceeds of this Loan will be used for business purposes (other than agricultural purposes) only, and not for personal, family or household purposes.

(g)     Borrower and Lender intend and believe that each provision in this Loan comports with all applicable local, state and federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Loan is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Loan to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of Borrower and Lender that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Loan shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender hereof under the remainder of this Loan shall continue in full force and effect.

18.     **Governing Law.** This Loan, and any dispute related to or arising from this Loan, shall be governed by and construed in accordance with the laws of the State of Georgia. Borrower acknowledges that the negotiation of the provisions of this Loan and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give Borrower, nor shall any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Loan or said Loan Documents to become effective and valid and binding obligations of the Borrower. Borrower acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Borrower acknowledges further that the negotiation, execution, and delivery of this Loan and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Borrower hereby submits itself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with the Loan or any of the Loan Documents. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a waiver by Lender of any of the foregoing.

19.     **Waiver of Jury Trial.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS LOAN OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION WITH THIS LOAN OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS LOAN OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF EITHER PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. BORROWER AGREES THAT LENDER MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING,

10

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



VOLUNTARY AND BARGAINED AGREEMENT OF BORROWER TO IRREVOCABLY WAIVE BORROWER'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN BORROWER AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

20.    **Venue**. Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Loan or any agreements or transactions contemplated hereby may be brought in the courts of the State of Georgia or of the United States of America for the Northern District of Georgia and hereby expressly submits to the personal jurisdiction and venue of such courts for the purposes thereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum. Borrower hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the address of Borrower last provided to Holder in connection with the Loan, such service to become effective ten (10) days after such mailing.

21.    **Assignment**. Borrower may not assign any of its rights under this Loan without the prior written consent of the Lender, any such purported assignment without such consent being null and void. Lender shall be permitted to assign any of its rights under this Loan to a third party without providing notice to Borrower or Borrower's written consent.

22.    **Amendment**. This Loan contains the entire agreement of the Parties and supersedes, replaces and extinguishes any prior agreements between the Parties. This Loan may not be modified except by a written agreement executed by Lender and Borrower.

23.    **Severability**. If, in any action before any court or agency legally empowered to enforce any provision contained herein, any provision hereof is found to be unenforceable, then such provision shall be deemed modified to the extent necessary to make it enforceable by such court or agency. If any such provision is not enforceable as set forth in the preceding sentence, the unenforceability of such provision shall not affect the other provisions of this Loan, and this Loan shall be construed as if such unenforceable provision had never been contained herein.

24.    **Electronic Signatures**. The Parties agree that the use of any electronic signatures is the legally binding equivalent of a handwritten signature and has the same validity and binding effect of a handwritten signature. The Borrower further agrees that it will not, at any time, repudiate the validity of this Loan or argue that its electronic signature is not legally binding. Borrower will also not object to the admissibility of this Loan in the form of an electronic record, the admissibility of a paper copy of an electronic version of the Loan, or a paper copy of the Loan bearing an electronic signature on the grounds that it is an electronic record or has an electronic signature that is not an original or not in its original form.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]
[SIGNATURE PAGE TO FOLLOW]

11



*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*

IN WITNESS WHEREOF, Borrower has caused this Note to be executed, sealed, and delivered as of the date first set forth above.

BORROWER

RIVERDAWG LLC,
a Georgia limited liability company

By: _____ (Seal)
Name: Dr. Jerry K. Williams
Title:    Manager

STATE OF _Georgia_                    )
                                      )    ACKNOWLEDGEMENT
COUNTY OF _Towns_                     )

I, as a notary public for the state of _Georgia_, do hereby certify that Dr. Jerry Williams, in his capacity as Manager of RiverDawg LLC, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this 17th day of September, 2024.

Notary Public for _Towns Co. GA_
My commission expires: _7-20-2026_

12

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*

## GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (hereinafter referred to for convenience as the "Guaranty") is entered as of the 17th day of September, 2024, by **Urgent Care 247, LLC** (hereinafter referred to for convenience as the "Guarantor"), in favor of **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (the "Lender").

### A. RECITALS

WHEREAS, **RIVERDAWG, LLC, a Georgia limited liability company** (the "Borrower"), has obtained a loan from Lender in the amount of **Seven Hundred Thousand and 00/100 Dollars ($700,000.00)**;

WHEREAS, in connection with the making and closing of the Loan, and in order to evidence and secure the Loan, the Borrower will execute a Promissory Note (hereinafter referred to for convenience as the "Loan"), a Deed to Secure Debt, a Corporate Guaranty, and various other documents evidencing, securing, or otherwise relating to the Loan (for convenience, the Loan and any other documents are referred to for convenience as the "Loan Documents"); and

WHEREAS, Lender is willing to make the Loan only if the Guarantor executes and delivers this Guaranty.

NOW, THEREFORE, in consideration of the premises and to induce Lender to extend the credit referred to above, the Guarantor hereby agrees as follows:

### B. REPRESENTATIONS AND WARRANTIES

The Guarantor hereby represents and warrants that:

1. The execution, delivery and performance of this Guaranty, and the agreements, documents, and instruments to be given by the Guarantor as security for the Loan and any other documents or instruments executed and delivered by the Guarantor pursuant hereto or thereto, or in connection herewith or therewith (collectively, the "Guarantor Documents"), are within the Guarantor's powers, have been duly authorized, do not violate any law, rule, or regulation, and will not conflict with, result in a breach of, or constitute a default under, any contractual obligations of the Guarantor;

2. There is no judgment, decree, or order of any court or other governmental authority binding on the Guarantor which would be contravened by the execution, delivery, performance or enforcement of the Guarantor Documents; and

3. Each of the Guarantor Documents is a legal, valid, and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its respective terms.

4. That the Guarantor understands that Lender would not make the Loan to Borrower without Guarantor entering into this Guaranty, and there is substantial consideration flowing to

Guarantor if the Loan is made equivalent to the potential burden to Guarantor of the obligations assumed hereunder.

The Guarantor agrees that for so long as this Guaranty remains in effect, each of the above representations and warranties and each other representation or warranty of the Guarantor contained herein or in the other Guarantor Documents shall be deemed to be continuing.

## C. GUARANTY

1.      The Guarantor hereby unconditionally, absolutely, and irrevocably guarantees full payment and performance of, and promises to pay to Lender, or to order, without demand, in lawful money of the United States, when due (whether at stated maturity, by acceleration or otherwise), any and all indebtedness, liabilities, obligations and covenants of Borrower to Lender (whether any such indebtedness, liability, obligation or covenant now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such indebtedness, liabilities, obligations and covenants being hereinafter called, collectively, the "Obligations"),  arising out of or relating to the Loan, Deed to Secure Debt or any of the other Loan Documents, including any and all renewals, re-financings, extensions, amendments, modifications, and consolidations thereof, and any and all costs, attorneys' fees and expenses which may be suffered by Lender by reason of Borrower's default  under the Loan and Loan Documents.  The word "Obligations" is used in its most comprehensive sense and includes all principal, interest, and other amounts payable under the Loan or any of the other Loan Documents and all obligations for fees, indemnities, costs, and expenses under the Loan, the Deed to Secure Debt, or any of the other Loan Documents.

3.      Guarantor acknowledges and agrees that the indebtedness as of the Effective Date which this Guaranty unconditionally guarantees is in the principal amount of SEVEN HUNDRED THOUSAND AND 00/100 DOLLARS ($700,000.00), which is subject to change in accordance with the terms and conditions of the Loan Documents.

2.      The Guarantor's obligations hereunder are those of a primary obligor, and not merely as a surety or guarantor of collection, and are independent of the Obligations.  If there is more than one Guarantor herein, each Guarantor's obligations hereunder are joint and several.  In addition, Guarantor agrees that the Guarantor's obligations hereunder are joint and several with the obligations of any and all other obligors (which for purposes of this Guaranty includes, without limitation, other guarantors pursuant to separate agreements or instruments) in respect of the Obligations.  A separate action or actions may be brought against the Guarantor (or any one Guarantor herein) whether an action is brought against Borrower, another Guarantor herein, or any other obligor in respect of the Obligations or whether Borrower, another Guarantor herein, or any other obligor in respect of the Obligations be joined in any such action or actions; and the Guarantor waives the benefit of any statute of limitations affecting his or her liability hereunder or the enforcement hereof.

3.      The obligations of the Guarantor under this Guaranty are continuing, absolute, and unconditional, and the Guarantor guarantees that the Obligations will be paid in full when due (whether at stated maturity, by acceleration or otherwise) in accordance with the terms of the

2

*[Urgent Care 247, LLC – Guaranty Agreement]*



Loan, the Deed to Secure Debt, and the other Loan Documents regardless of any law, regulation, or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto or any other circumstance which might otherwise constitute a defense available to, or a legal or equitable discharge of, a borrower or guarantor.

4.      This Guaranty is irrevocable with respect to all Obligations which arise out of or relate to the Loan, Deed to Secure Debt or any of the other Loan Documents. All of the liabilities of the Guarantor under this Guaranty shall remain in full force and effect until all Obligations (including any amendments, modifications, extensions, renewals, restructurings, re-financings, and re-fundings of any thereof) shall have been finally paid in full in cash.

This Guaranty shall in all respects continue in full force and effect or shall be reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Obligations is rescinded or must otherwise be restored or returned for any reason, including without limitation, because of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower or any other obligor in respect to the Obligations (including without limitation, the Guarantor) or upon or as a result of the appointment of a custodian, receiver, trustee or other officer with similar power with respect to Borrower or any such other obligor or any material part of his or its assets, or otherwise, all as though such payment had not been made. If an event permitting the acceleration of the Obligations shall at any time have occurred and be continuing and such acceleration shall at such time be prevented by reason of the pendency against Borrower of a case or proceeding under any bankruptcy or insolvency law, the Guarantor agrees that, for purposes of this Guaranty and his obligations hereunder, the Obligations shall be deemed to have been accelerated, and the Guarantor shall forthwith pay such Obligations, and the other obligations hereunder, without any further notice or demand.

Without limiting the foregoing, the Guarantor authorizes Lender, without notice or demand, and without affecting the Guarantor's liability hereunder, from time to time to (a) renew, extend, accelerate, compromise, settle, restructure, refinance, refund, or otherwise change the amount and time for payment of any of the Obligations, or otherwise change the terms of the Obligations or any part thereof, including, without limitation, amend, modify, supplement, waive, or consent to a departure from the terms and conditions of the Loan and the other Loan Documents; (b) take and hold security for the payment of this Guaranty or the Obligations or the obligations of other obligors in respect of the Obligations, and enforce any such security; (c) apply such security and direct the order or manner of sale thereof or sell, exchange, release, compromise, settle, waive or surrender any such security; and (d) take, hold, exchange, release, compromise, settle, amend, or waive, or consent to the departure from any of the terms of, any guaranty or other agreement relating to the obligations of any other obligor in respect to the Obligations. Lender shall have no obligation to perfect, secure, protect, or insure any collateral, and the Guarantor's liability hereunder shall not be affected by the non-perfection, invalidity, or unenforceability of any agreement, instrument, or document securing or purporting to secure the Loan or the other Loan Documents.

5.      Guarantor hereby unconditionally and irrevocably: (a) waives and relinquishes any right of subrogation or other right of reimbursement from the Borrower or the Borrower's estate, and any other right to payment from the Borrower or the Borrower's estate, arising out of or on account of any sums paid or agreed to be paid by Guarantor under this Guaranty, whether



any such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; (b) agrees that if at any time all or any part of any payment previously applied by Lender to any of the Obligations must be returned by Lender for any reason, whether upon the claim of a preference, fraudulent transfer, or other claim of a debtor-in-possession, trustee in bankruptcy, or other representative of creditors of Borrower, or otherwise, and whether by court order, administrative order, or non-judicial settlement, this Guaranty shall continue in effect or shall be reinstated, as the case may be, and Guarantor shall remain liable for the full amount returned as if such amount had never been received by Lender, notwithstanding any termination of this Guaranty or cancellation of any promissory note or other instrument or agreement evidencing or securing any of the Obligations; (c) agrees that the liability of the Guarantor under this Guaranty shall not be affected or impaired by, and this Guaranty shall remain fully enforceable against Guarantor for the full amount of the Obligations less only payments thereon actually received and retained by Lender irrespective of and without reduction on account of: (i) any defenses which Borrower may have or assert with respect to any of the Obligations, including, but without limitation, filing of a petition in bankruptcy, discharge in bankruptcy, confirmation of a plan of reorganization (whether Lender voted for or against such plan), composition with creditors (whether or not including Lender), failure of consideration, breach of warranty, statute of frauds, statute of limitations, accord and satisfaction, waiver, estoppel, release, usury, or fraud or misrepresentation; or (ii) dissolution or insolvency of Borrower.

6. The Guarantor unconditionally and irrevocably waives any right to require Lender to (a) proceed against Borrower or any other obligor in respect to the Obligations; (b) proceed against or exhaust any security held directly or indirectly on account of the Obligations; (c) pursue any other remedy of Lender whatsoever; (d) give the Guarantor prior or subsequent notice of the disposition of any security; or (e) give the Guarantor notice of any information concerning Borrower's business, operations, or condition (financial or otherwise) known to Lender. The Guarantor unconditionally waives any defense arising by reason of any disability or other legal or equitable defense of Borrower by reason of the cessation from any cause whatsoever of the liability of Borrower other than final payment in full in cash of the Obligations. The Guarantor waives all diligence, presentments, protests, notices of protest, notices of dishonor, notices of non-payment, acceptance and notices of acceptance of this Guaranty.

7. Any debt of Borrower now or hereafter held by or owed to the Guarantor is hereby absolutely and totally subordinated in right of payment and in all other respects to the Obligations and all other obligations of the Borrower to Lender in any way relating to the Loan or the other Loan Documents, and in the event an event of default under the Loan or the other Loan Documents shall have occurred, and there is a default in the debt of Borrower to the Guarantor, if Lender so requests, such debt shall be collected, enforced and received by the Guarantor as trustee for Lender and shall be paid over to Lender on account of the Obligations and any such other obligations.

8. Upon the occurrence of any Event of Default, as defined in the Loan, Deed to Secure Debt or any other Loan Document, in the payment or performance of the Loan or any of the other Loan Documents, the Lender is hereby authorized at any time and from time to time to set-off and apply all deposits (general or special, time or demand, provisional or final) at any time held and other obligations at any time owing by the Lender to or for the credit or the

4

*[Urgent Care 247, LLC – Guaranty Agreement]*



account of the Guarantor against any and all of the obligations of the Guarantor now or hereafter existing under this Guaranty, irrespective of whether or not, the Lender shall have made any demand under this Guaranty and although such obligations may be contingent and unmatured. The rights of the Lender under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Lender may have.

9.      The Guarantor will keep at all times full, true and accurate books and records of account of the financial affairs of the Guarantor sufficient to reflect accurately and correctly the results of all income and expense activities and to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles (or another method approved by Lender). The Guarantor will deliver to the Lender, upon such times as may be requested by the Lender, and in no event more than three (3) months after the end of every calendar year from date hereof, whether or not requested by the Lender, financial statements reflecting the foregoing information, including, but not limited to, balance sheets, profit-and-loss statements and all schedules and exhibits thereto as are customarily required by generally accepted accounting principles or as may be requested by Lender. Unless otherwise consented or agreed to by Lender in writing with respect to any particular year, such statements and information shall be prepared by a certified public accountant approved by the Lender in advance of delivery of such statements and information. The Guarantor further covenants and agrees to furnish to Lender, within 10 days after the date of any request by Lender, such other information and documents (financial or otherwise, including without limitation income tax returns) concerning or relating to the Guarantor or any collateral securing this Guaranty as the Lender may request at any time or from time to time.

10.     As security for the payment and performance of all Guarantor's obligations under this Guaranty, Guarantor hereby transfers and grants to the Lender a first priority security interest in all of Guarantor's presently-owned and hereafter-acquired personal and fixture property, wherever located, including, without limitation, all Accounts, Goods, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, Documents, Deposit Accounts, Commercial Tort Claims, Letters-of-Credit Rights, General Intangibles including Payment Intangibles, Patents, Software Trademarks, Trade Names, Customer Lists, Supporting Obligations, all proceeds and products of the foregoing, including without limitation, insurance proceeds, lock box contents and proceeds from the accounts of the Makers' account debtors (the "Collateral"). In the event of any breach by Guarantor under this Guaranty or any other obligation of Guarantor to the Lender, the Lender shall have all rights with respect to the aforesaid Collateral as a security party under the applicable UCC laws as hereinafter provided.

11.     The Guarantor assumes full responsibility for keeping fully informed of the financial condition of the Borrower and all other circumstances affecting the Borrower's ability to perform its obligations to the Lender, and agrees that the Lender will have no duty to report to Guarantor any information which the Lender receives about the Borrower's financial condition or any circumstances bearing on Borrower's ability to perform.

12.     No amendment or wavier of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom, shall in any event be effective unless the same is signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose given. No failure on the part of Lender to exercise, and no delay in



exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any provided by law or at equity.

13.    Any provision of this Guaranty which may be prohibited by law or otherwise held invalid shall be ineffective only to the extent of such prohibition or invalidity and shall not invalidate or otherwise affect the remaining provisions of this Guaranty.

14.    The Lender may, without notice to or consent from the Guarantor, assign or otherwise transfer, or grant a participation in, the Loan or the other Loan Documents, the Obligations, or any interest therein, or the collateral, in whole or in part, without affecting in any manner whatsoever the Guarantor's liability hereunder. Any assignee or other transferee, or participant in, any of the Loan or the other Loan Documents or the Obligations shall thereupon become vested with all rights in respect thereof granted to Lender herein to the same extent as if such assignee or transferee was the original guaranteed party hereto, and all Obligations shall be and remain Obligations for purposes of this Guaranty. This Guaranty shall be binding upon the Guarantor and Guarantor's heirs, executors, personal representatives, successors and assigns and inure to the benefit of Lender and its respective heirs, executors, personal representatives, successors, assigns and other transferees; provided, however, that the Guarantor shall not assign or transfer any of Guarantor's rights or obligations hereunder without the express written consent of Lender.

15.    Guarantor agrees that this Guaranty, the Loan, and the other Loan Documents, and the rights and obligations of the parties hereunder and thereunder shall be governed by and be construed in accordance with the laws of the State of Georgia, unless otherwise provided therein or except where required to be governed by the laws of another jurisdiction to be enforceable. Guarantor acknowledges that the negotiation of the provisions of this Guaranty, the Loan and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give, nor shall Guarantor, Borrower or any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Guaranty or said Loan Documents to become effective and valid and binding obligations of the Borrower, the Guarantor or any other obligor. Guarantor acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Guarantor acknowledges further that the negotiation, execution, and delivery of this Guaranty, the Loan and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Guarantor hereby submits himself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with this Guaranty, the Loan or any of the Loan Documents, agrees that venue for any such action shall be in the state or federal courts in Georgia, and waives any and all rights under the laws of the United States or any state to object to jurisdiction or venue within the state or federal courts in Georgia. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's

6

*[Urgent Care 247, LLC – Guaranty Agreement]*



properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a wavier by Lender of any of the foregoing.

16.    Guarantor hereby waives all rights of exemption under the constitution and laws of the United States and all states therein, including, but not limited to, the State of Georgia. Guarantor agrees to pay all cost of collection, including a reasonable attorney's fee, if the services of an attorney are utilized whether or not suit is filed. In that connection, Guarantor agrees that if, and as often as, this Guaranty Agreement is given to an attorney for collection or to defend or enforce any of Lender's rights hereunder, Guarantor will pay to Lender its reasonable attorney's fees, which shall be defined as 15% of the Obligations, together with all court costs and other expenses paid or incurred by Lender. Provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

17.    The undersigned hereby waives the right to require the holder of the obligations guaranteed to take any action against the principal as provided for in O.C.G.A. § 10-7-24. At the option of the Bank, this may be treated as a guaranty or as a suretyship, with the right to proceed against the guarantor without first proceeding against the Borrower.

18.    TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY, THE LOAN OR THE LOAN DOCUMENTS OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR BORROWER AND GUARANTOR WITH RESPECT TO THE LOAN DOCUMENTS OR IN CONNECTION WITH THIS GUARANTY OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS GUARANTY OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. GUARANTOR AGREES THAT LENDER MAY FILE A COPY OF THIS GUARANTY WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED-FOR AGREEMENT OF GUARANTOR IRREVOCABLY TO WAIVE GUARANTOR'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN GUARANTOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

*[Urgent Care 247, LLC – Guaranty Agreement]*



**IN WITNESS WHEREOF**, the Guarantor has executed this Guaranty effective as of the date first written above.

IN THE PRESENCE OF:

URGENT CARE 247, LLC

_____
Witness No. 1

By: Dr. Jerry Williams
Its: Manager

_____
Witness No. 2

STATE OF Georgia    )
                    )    ACKNOWLEDGEMENT
COUNTY OF Towns     )

I, as Notary Public for the State of Georgia        , hereby certify Dr. Jerry Williams, in his capacity as Manager of Urgent Care 247, LLC, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this 18 day of September, 2024.

_____
Notary Public for State of Georgia
My Commission Expires: 7-20-2026

8

*[Urgent Care 247, LLC – Guaranty Agreement]*

## GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (hereinafter referred to for convenience as the "Guaranty") is entered as of the 17th day of September, 2024, by **Dr. Jerry Williams** (hereinafter referred to for convenience as the "Guarantor"), in favor of **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (the "Lender").

### A.  RECITALS

WHEREAS, **RIVERDAWG, LLC, a Georgia limited liability company** (the "Borrower"), has obtained a loan from Lender in the amount of **Seven Hundred Thousand and 00/100 Dollars ($700,000.00)**;

WHEREAS, in connection with the making and closing of the Loan, and in order to evidence and secure the Loan, the Borrower will execute a Promissory Note (hereinafter referred to for convenience as the "Loan"), a Deed to Secure Debt, a Corporate Guaranty, and various other documents evidencing, securing, or otherwise relating to the Loan (for convenience, the Loan and any other documents are referred to for convenience as the "Loan Documents"); and

WHEREAS, Lender is willing to make the Loan only if the Guarantor executes and delivers this Guaranty.

NOW, THEREFORE, in consideration of the premises and to induce Lender to extend the credit referred to above, the Guarantor hereby agrees as follows:

### B.  REPRESENTATIONS AND WARRANTIES

The Guarantor hereby represents and warrants that:

1.    The execution, delivery and performance of this Guaranty, and the agreements, documents, and instruments to be given by the Guarantor as security for the Loan and any other documents or instruments executed and delivered by the Guarantor pursuant hereto or thereto, or in connection herewith or therewith (collectively, the "Guarantor Documents"), are within the Guarantor's powers, have been duly authorized, do not violate any law, rule, or regulation, and will not conflict with, result in a breach of, or constitute a default under, any contractual obligations of the Guarantor;

2.   There is no judgment, decree, or order of any court or other governmental authority binding on the Guarantor which would be contravened by the execution, delivery, performance or enforcement of the Guarantor Documents; and

3.   Each of the Guarantor Documents is a legal, valid, and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its respective terms.

4.   That the Guarantor understands that Lender would not make the Loan to Borrower without Guarantor entering into this Guaranty, and there is substantial consideration flowing to



Guarantor if the Loan is made equivalent to the potential burden to Guarantor of the obligations assumed hereunder.

The Guarantor agrees that for so long as this Guaranty remains in effect, each of the above representations and warranties and each other representation or warranty of the Guarantor contained herein or in the other Guarantor Documents shall be deemed to be continuing.

## C. GUARANTY

1.      The Guarantor hereby unconditionally, absolutely, and irrevocably guarantees full payment and performance of, and promises to pay to Lender, or to order, without demand, in lawful money of the United States, when due (whether at stated maturity, by acceleration or otherwise), any and all indebtedness, liabilities, obligations and covenants of Borrower to Lender (whether any such indebtedness, liability, obligation or covenant now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such indebtedness, liabilities, obligations and covenants being hereinafter called, collectively, the "Obligations"), arising out of or relating to the Loan, Deed to Secure Debt or any of the other Loan Documents, including any and all renewals, re-financings, extensions, amendments, modifications, and consolidations thereof, and any and all costs, attorneys' fees and expenses which may be suffered by Lender by reason of Borrower's default under the Loan and Loan Documents. The word "Obligations" is used in its most comprehensive sense and includes all principal, interest, and other amounts payable under the Loan or any of the other Loan Documents and all obligations for fees, indemnities, costs, and expenses under the Loan, the Deed to Secure Debt, or any of the other Loan Documents.

3.      Guarantor acknowledges and agrees that the indebtedness as of the Effective Date which this Guaranty unconditionally guarantees is in the principal amount of SEVEN HUNDRED THOUSAND AND 00/100 DOLLARS ($700,000.00), which is subject to change in accordance with the terms and conditions of the Loan Documents.

2.      The Guarantor's obligations hereunder are those of a primary obligor, and not merely as a surety or guarantor of collection, and are independent of the Obligations. If there is more than one Guarantor herein, each Guarantor's obligations hereunder are joint and several. In addition, Guarantor agrees that the Guarantor's obligations hereunder are joint and several with the obligations of any and all other obligors (which for purposes of this Guaranty includes, without limitation, other guarantors pursuant to separate agreements or instruments) in respect of the Obligations. A separate action or actions may be brought against the Guarantor (or any one Guarantor herein) whether an action is brought against Borrower, another Guarantor herein, or any other obligor in respect of the Obligations or whether Borrower, another Guarantor herein, or any other obligor in respect of the Obligations be joined in any such action or actions; and the Guarantor waives the benefit of any statute of limitations affecting his or her liability hereunder or the enforcement hereof.

3.      The obligations of the Guarantor under this Guaranty are continuing, absolute, and unconditional, and the Guarantor guarantees that the Obligations will be paid in full when due (whether at stated maturity, by acceleration or otherwise) in accordance with the terms of the

2

*[Dr. Jerry Williams – Guaranty Agreement]*



Loan, the Deed to Secure Debt, and the other Loan Documents regardless of any law, regulation, or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto or any other circumstance which might otherwise constitute a defense available to, or a legal or equitable discharge of, a borrower or guarantor.

4.    This Guaranty is irrevocable with respect to all Obligations which arise out of or relate to the Loan, Deed to Secure Debt or any of the other Loan Documents. All of the liabilities of the Guarantor under this Guaranty shall remain in full force and effect until all Obligations (including any amendments, modifications, extensions, renewals, restructurings, re-financings, and re-fundings of any thereof) shall have been finally paid in full in cash.

This Guaranty shall in all respects continue in full force and effect or shall be reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Obligations is rescinded or must otherwise be restored or returned for any reason, including without limitation, because of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower or any other obligor in respect to the Obligations (including without limitation, the Guarantor) or upon or as a result of the appointment of a custodian, receiver, trustee or other officer with similar power with respect to Borrower or any such other obligor or any material part of his or its assets, or otherwise, all as though such payment had not been made. If an event permitting the acceleration of the Obligations shall at any time have occurred and be continuing and such acceleration shall at such time be prevented by reason of the pendency against Borrower of a case or proceeding under any bankruptcy or insolvency law, the Guarantor agrees that, for purposes of this Guaranty and his obligations hereunder, the Obligations shall be deemed to have been accelerated, and the Guarantor shall forthwith pay such Obligations, and the other obligations hereunder, without any further notice or demand.

Without limiting the foregoing, the Guarantor authorizes Lender, without notice or demand, and without affecting the Guarantor's liability hereunder, from time to time to (a) renew, extend, accelerate, compromise, settle, restructure, refinance, refund, or otherwise change the amount and time for payment of any of the Obligations, or otherwise change the terms of the Obligations or any part thereof, including, without limitation, amend, modify, supplement, waive, or consent to a departure from the terms and conditions of the Loan and the other Loan Documents; (b) take and hold security for the payment of this Guaranty or the Obligations or the obligations of other obligors in respect of the Obligations, and enforce any such security; (c) apply such security and direct the order or manner of sale thereof or sell, exchange, release, compromise, settle, waive or surrender any such security; and (d) take, hold, exchange, release, compromise, settle, amend, or waive, or consent to the departure from any of the terms of, any guaranty or other agreement relating to the obligations of any other obligor in respect to the Obligations. Lender shall have no obligation to perfect, secure, protect, or insure any collateral, and the Guarantor's liability hereunder shall not be affected by the non-perfection, invalidity, or unenforceability of any agreement, instrument, or document securing or purporting to secure the Loan or the other Loan Documents.

5.    Guarantor hereby unconditionally and irrevocably: (a) waives and relinquishes any right of subrogation or other right of reimbursement from the Borrower or the Borrower's estate, and any other right to payment from the Borrower or the Borrower's estate, arising out of or on account of any sums paid or agreed to be paid by Guarantor under this Guaranty, whether

3

*[Dr. Jerry Williams – Guaranty Agreement]*



any such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; (b) agrees that if at any time all or any part of any payment previously applied by Lender to any of the Obligations must be returned by Lender for any reason, whether upon the claim of a preference, fraudulent transfer, or other claim of a debtor-in-possession, trustee in bankruptcy, or other representative of creditors of Borrower, or otherwise, and whether by court order, administrative order, or non-judicial settlement, this Guaranty shall continue in effect or shall be reinstated, as the case may be, and Guarantor shall remain liable for the full amount returned as if such amount had never been received by Lender, notwithstanding any termination of this Guaranty or cancellation of any promissory note or other instrument or agreement evidencing or securing any of the Obligations; (c) agrees that the liability of the Guarantor under this Guaranty shall not be affected or impaired by, and this Guaranty shall remain fully enforceable against Guarantor for the full amount of the Obligations less only payments thereon actually received and retained by Lender irrespective of and without reduction on account of: (i) any defenses which Borrower may have or assert with respect to any of the Obligations, including, but without limitation, filing of a petition in bankruptcy, discharge in bankruptcy, confirmation of a plan of reorganization (whether Lender voted for or against such plan), composition with creditors (whether or not including Lender), failure of consideration, breach of warranty, statute of frauds, statute of limitations, accord and satisfaction, waiver, estoppel, release, usury, or fraud or misrepresentation; or (ii) dissolution or insolvency of Borrower.

6.      The Guarantor unconditionally and irrevocably waives any right to require Lender to (a) proceed against Borrower or any other obligor in respect to the Obligations; (b) proceed against or exhaust any security held directly or indirectly on account of the Obligations; (c) pursue any other remedy of Lender whatsoever; (d) give the Guarantor prior or subsequent notice of the disposition of any security; or (e) give the Guarantor notice of any information concerning Borrower's business, operations, or condition (financial or otherwise) known to Lender. The Guarantor unconditionally waives any defense arising by reason of any disability or other legal or equitable defense of Borrower by reason of the cessation from any cause whatsoever of the liability of Borrower other than final payment in full in cash of the Obligations. The Guarantor waives all diligence, presentments, protests, notices of protest, notices of dishonor, notices of non-payment, acceptance and notices of acceptance of this Guaranty.

7.      Any debt of Borrower now or hereafter held by or owed to the Guarantor is hereby absolutely and totally subordinated in right of payment and in all other respects to the Obligations and all other obligations of the Borrower to Lender in any way relating to the Loan or the other Loan Documents, and in the event an event of default under the Loan or the other Loan Documents shall have occurred, and there is a default in the debt of Borrower to the Guarantor, if Lender so requests, such debt shall be collected, enforced and received by the Guarantor as trustee for Lender and shall be paid over to Lender on account of the Obligations and any such other obligations.

8.      Upon the occurrence of any Event of Default, as defined in the Loan, Deed to Secure Debt or any other Loan Document, in the payment or performance of the Loan or any of the other Loan Documents, the Lender is hereby authorized at any time and from time to time to set-off and apply all deposits (general or special, time or demand, provisional or final) at any time held and other obligations at any time owing by the Lender to or for the credit or the

4

*[Dr. Jerry Williams – Guaranty Agreement]*



account of the Guarantor against any and all of the obligations of the Guarantor now or hereafter existing under this Guaranty, irrespective of whether or not, the Lender shall have made any demand under this Guaranty and although such obligations may be contingent and unmatured. The rights of the Lender under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Lender may have.

9.      The Guarantor will keep at all times full, true and accurate books and records of account of the financial affairs of the Guarantor sufficient to reflect accurately and correctly the results of all income and expense activities and to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles (or another method approved by Lender). The Guarantor will deliver to the Lender, upon such times as may be requested by the Lender, and in no event more than three (3) months after the end of every calendar year from date hereof, whether or not requested by the Lender, financial statements reflecting the foregoing information, including, but not limited to, balance sheets, profit-and-loss statements and all schedules and exhibits thereto as are customarily required by generally accepted accounting principles or as may be requested by Lender. Unless otherwise consented or agreed to by Lender in writing with respect to any particular year, such statements and information shall be prepared by a certified public accountant approved by the Lender in advance of delivery of such statements and information. The Guarantor further covenants and agrees to furnish to Lender, within 10 days after the date of any request by Lender, such other information and documents (financial or otherwise, including without limitation income tax returns) concerning or relating to the Guarantor or any collateral securing this Guaranty as the Lender may request at any time or from time to time.

10.      As security for the payment and performance of all Guarantor's obligations under this Guaranty, Guarantor hereby transfers and grants to the Lender a first priority security interest in all of Guarantor's presently-owned and hereafter-acquired personal and fixture property, wherever located, including, without limitation, all Accounts, Goods, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, Documents, Deposit Accounts, Commercial Tort Claims, Letters-of-Credit Rights, General Intangibles including Payment Intangibles, Patents, Software Trademarks, Trade Names, Customer Lists, Supporting Obligations, all proceeds and products of the foregoing, including without limitation, insurance proceeds, lock box contents and proceeds from the accounts of the Makers' account debtors (the "Collateral"). In the event of any breach by Guarantor under this Guaranty or any other obligation of Guarantor to the Lender, the Lender shall have all rights with respect to the aforesaid Collateral as a security party under the applicable UCC laws as hereinafter provided.

11.      The Guarantor assumes full responsibility for keeping fully informed of the financial condition of the Borrower and all other circumstances affecting the Borrower's ability to perform its obligations to the Lender, and agrees that the Lender will have no duty to report to Guarantor any information which the Lender receives about the Borrower's financial condition or any circumstances bearing on Borrower's ability to perform.

12.      No amendment or wavier of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom, shall in any event be effective unless the same is signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose given. No failure on the part of Lender to exercise, and no delay in



exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any provided by law or at equity.

13. Any provision of this Guaranty which may be prohibited by law or otherwise held invalid shall be ineffective only to the extent of such prohibition or invalidity and shall not invalidate or otherwise affect the remaining provisions of this Guaranty.

14. The Lender may, without notice to or consent from the Guarantor, assign or otherwise transfer, or grant a participation in, the Loan or the other Loan Documents, the Obligations, or any interest therein, or the collateral, in whole or in part, without affecting in any manner whatsoever the Guarantor's liability hereunder. Any assignee or other transferee, or participant in, any of the Loan or the other Loan Documents or the Obligations shall thereupon become vested with all rights in respect thereof granted to Lender herein to the same extent as if such assignee or transferee was the original guaranteed party hereto, and all Obligations shall be and remain Obligations for purposes of this Guaranty. This Guaranty shall be binding upon the Guarantor and Guarantor's heirs, executors, personal representatives, successors and assigns and inure to the benefit of Lender and its respective heirs, executors, personal representatives, successors, assigns and other transferees; provided, however, that the Guarantor shall not assign or transfer any of Guarantor's rights or obligations hereunder without the express written consent of Lender.

15. Guarantor agrees that this Guaranty, the Loan, and the other Loan Documents, and the rights and obligations of the parties hereunder and thereunder shall be governed by and be construed in accordance with the laws of the State of Georgia, unless otherwise provided therein or except where required to be governed by the laws of another jurisdiction to be enforceable. Guarantor acknowledges that the negotiation of the provisions of this Guaranty, the Loan and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give, nor shall Guarantor, Borrower or any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Guaranty or said Loan Documents to become effective and valid and binding obligations of the Borrower, the Guarantor or any other obligor. Guarantor acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Guarantor acknowledges further that the negotiation, execution, and delivery of this Guaranty, the Loan and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Guarantor hereby submits himself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with this Guaranty, the Loan or any of the Loan Documents, agrees that venue for any such action shall be in the state or federal courts in Georgia, and waives any and all rights under the laws of the United States or any state to object to jurisdiction or venue within the state or federal courts in Georgia. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's

6

*[Dr. Jerry Williams – Guaranty Agreement]*



properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a wavier by Lender of any of the foregoing.

16. Guarantor hereby waives all rights of exemption under the constitution and laws of the United States and all states therein, including, but not limited to, the State of Georgia. Guarantor agrees to pay all cost of collection, including a reasonable attorney's fee, if the services of an attorney are utilized whether or not suit is filed. In that connection, Guarantor agrees that if, and as often as, this Guaranty Agreement is given to an attorney for collection or to defend or enforce any of Lender's rights hereunder, Guarantor will pay to Lender its reasonable attorney's fees, which shall be defined as 15% of the Obligations, together with all court costs and other expenses paid or incurred by Lender. Provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

17. The undersigned hereby waives the right to require the holder of the obligations guaranteed to take any action against the principal as provided for in O.C.G.A. § 10-7-24. At the option of the Bank, this may be treated as a guaranty or as a suretyship, with the right to proceed against the guarantor without first proceeding against the Borrower.

18. TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY, THE LOAN OR THE LOAN DOCUMENTS OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR BORROWER AND GUARANTOR WITH RESPECT TO THE LOAN DOCUMENTS OR IN CONNECTION WITH THIS GUARANTY OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS GUARANTY OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. GUARANTOR AGREES THAT LENDER MAY FILE A COPY OF THIS GUARANTY WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED-FOR AGREEMENT OF GUARANTOR IRREVOCABLY TO WAIVE GUARANTOR'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN GUARANTOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

*[Dr. Jerry Williams – Guaranty Agreement]*

**IN WITNESS WHEREOF,** the Guarantor has executed this Guaranty effective as of the date first written above.

IN THE PRESENCE OF:                                    **DR. JERRY WILLIAMS**

_____                        _____
Witness No. 1                                          By: Dr. Jerry Williams, Individually

_____
Witness No. 2


STATE OF _Georgia_          )
                           )                           ACKNOWLEDGEMENT
COUNTY OF _Towns_           )

I, as Notary Public for the State of _Georgia_, hereby certify Dr. Jerry Williams, in his individual capacity, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this 18 day of September, 2024.

_____
Notary Public for State of _Georgia_
My Commission Expires: _7·30·2026_


8

_[Dr. Jerry Williams – Guaranty Agreement]_

# EXHIBIT D

FIRST LIBERTY CAPITAL PARTNERS, LLC
PO Box 2567
Newnan, GA 30264

## LOAN CLOSING STATEMENT

**DATE OF TRANSACTION:** December 9, 2024

**BORROWER:** RIVERDAWG, LLC, a Georgia limited liability company

**LENDER:** FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company

---

### SCHEDULE OF LOAN ADVANCES

| | |
|---|---|
| **TOTAL LOAN AMOUNT** | **$355,000.00** |

### DISBURSEMENTS

| | |
|---|---|
| Loan Fee to First Liberty Capital Partners, LLC | $17,750.00 |
| Six Month Interest Reserve to First Liberty Capital Partners, LLC | $28,400.00 |
| Partial Month's Interest (December) | $3,471.16 |
| Legal and Recording Fees | $2,500.00 |
| Document Fees | $355.00 |
| Previously Advanced | $50,000.00 |
| **DISBURSEMENTS** | **$102,476.16** |
| **BALANCE AVAILABLE BORROWER** | **$252,523.84** |

SIGNATURE PAGE FOLLOWS:

"BORROWER"

No Free, LLC

By:_____

Jerry K. Williams, Jr., M.D.
Managing Member

"LENDER"

First Liberty Capital Partners LLC

By:_____

Brant Frost IV, its Manager

FIRST LIBERTY CAPITAL PARTNERS, LLC
PO Box 2567
Newnan, GA 30264

## LOAN CLOSING STATEMENT

**DATE OF TRANSACTION:  December 9, 2024**

**BORROWER: RIVERDAWG, LLC, a Georgia limited liability company**

**LENDER:    FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company**

---

## SCHEDULE OF LOAN ADVANCES

| | |
|---|---|
| **TOTAL LOAN AMOUNT** | **$355,000.00** |

### DISBURSEMENTS

| | |
|---|---|
| Loan Fee to First Liberty Capital Partners, LLC | $17,750.00 |
| Six Month Interest Reserve to First Liberty Capital Partners, LLC | $28,400.00 |
| Partial Month's Interest (December) | $3,471.16 |
| Legal and Recording Fees | $2,500.00 |
| Document Fees | $355.00 |
| Previously Advanced | $50,000.00 |
| **DISBURSEMENTS** | **$102,476.16** |
| **BALANCE AVAILABLE BORROWER** | **$252,523.84** |

**SIGNATURE PAGE FOLLOWS:**

"BORROWER"

RIVERDAWG, LLC, a Georgia limited liability company

By:_____(Seal)
    Dr. Jerry Willaims

"LENDER"

FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company

By:_____(Seal)
    Brant Frost IV, Manager

## PROMISSORY NOTE

**$355,000.00**                                                    **December 9, 2024**

      **RIVERDAWG, LLC, a Georgia limited liability company ("Borrower")** whose address is 1004 Memorial Lane, Suite 200, Savannah, GA 31410 and **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (hereinafter, together with any subsequent holder hereof, sometimes called "**Lender**" or "**Holder**"), whose address is P. O. Box 2567, Newnan, GA 30264, agree as follows:

      A.     Borrower has requested that Lender make a loan in the original principal amount of **Three Hundred Fifty Five Thousand Dollars ($355,000.00)** (the "**Loan**"), and Lender hereby agrees to make the Loan to Borrower upon the terms and conditions contained herein.

      B.     The principal amount of the Loan shall be allocated by Lender to an account established for Borrower, and Loan proceeds shall be disbursed from time to time on terms and conditions as established by Lender as to timing, amount and other conditions of disbursements.

      **THEREFORE, FOR VALUE RECEIVED**, Borrower hereby promises to pay to the order of Lender or Holder, the principal sum of **Three Hundred Fifty Five Thousand Dollars ($355,000.00)** together with interest from the date hereof until paid in full, on the unpaid principal balance from time to time outstanding at the rate hereinafter set out, payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. Said principal and interest shall accrue and be payable as follows:

      1.     **Interest**.     Interest shall accrue at the rate of sixteen percent (16%) per annum computed on the basis of a 30 day month and 360 day year. Interest shall be computed on the entire principal amount of the Loan from the date of the Loan, notwithstanding that a portion of the Loan proceeds may be held by Lender for future disbursement to or on behalf of Borrower.

      2.     **Payments**.

      a.     <u>Monthly Payments</u>.     Borrower shall make monthly payments of interest only on the outstanding principal balance with the first payment due at closing in the amount of $3,471.16. Thereafter, Borrower shall make monthly payments in the amount of $4,733.33 commencing on January 1, 2025, and continuing thereafter on the 1st day of each successive month until December 9, 2025 (the "**Maturity Date**"), at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges due hereunder shall be due and payable for all purposes in full in a single **BALLOON PAYMENT**. All such payments shall be made at the office of Lender by federal wire transfer or electronic funds transfer, or such other place and to such other person as the Lender or any subsequent holder hereof may from time to time designate in writing.

      b.     <u>Minimum Interest</u>. Borrower may prepay this Note at any time, provided however, that Borrower agrees to pay a minimum of six month's interest, as calculated above, plus outstanding principal and any other unpaid charges hereunder, if prepaid prior to the seventh month, which shall be deposited as an Interest Reserve at closing and deducted from Loan proceeds. During and after the seventh month, prepayment shall require payment of outstanding principal plus accrued interest and any other unpaid charges due hereunder.

c.     <u>Interest Reserve.</u>  A six month evergreen interest reserve in the amount of $28,400.00 (the "**Evergreen Reserve**") and shall be held by Lender as additional security for Borrower's obligations under the Note.  The Evergreen Reserve shall not be used by Lender except in case of an Event of Default.  Any unused portion of the Reserve Accounts established hereunder shall be applied to the amount due upon repayment of this Note.

d.     <u>Loan Extension.</u>  Borrower shall have the right to extend the Maturity Date of the Loan for six months upon notice to Lender prior to maturity and payment to Lender of an extension fee of 2.5% of the Loan principal amount.

**3.**     **<u>Late Charge/Post Default Interest</u>**.  Borrower further agrees to pay a "late charge" of five percent (5%) of any amount due hereunder (but not in excess of the maximum amount allowed by any applicable law, rule or regulation) if paid more than three (3) days after the due date thereof, to cover the extra expense involved in handling delinquent payments.  These provisions shall not be deemed to excuse a late payment or be deemed a waiver of any other rights Lender may have including the right to declare the entire unpaid principal and interest immediately due and payable.  Notwithstanding any provision to the contrary herein, from and after the maturity of this Note (whether by acceleration or otherwise) or an Event of Default, interest on principal (but not on unpaid interest) shall be computed at the rate of 24.0% (the "**Default Rate**").

**4.**     **<u>Loan Documents and Collateral</u>**.  Borrower represents, warrants, covenants and agrees that this Note is and shall at all times be secured and supported by documents as required by Lender which include (i) security agreements from Borrower conveying security interest in Unit 32 and Unit 44 of The Overlook at Baxter Condominium (ii) guaranty agreements of Dr. Jerry Williams, and Urgent Care 247, LLC(iii) other agreements, documents  and instruments executed by or on behalf of the Borrower in connection herewith (the "Loan Documents").

**5.**     **<u>Loan Oversight</u>**.  Borrower agrees that the principal purpose of the Loan is to purchase and expand an existing Urology Clinic.   Borrower shall provide Lender with monthly financials and such information as Lender may request from time to time regarding application of loan proceeds and performance under the Loan documents.

**6.**     **<u>Cross-Default and Cross-Collateralization.</u>**

(a)     Lender has made or may make other loans to Borrower (as used herein the term "Borrower" shall include any and all entities related to Borrower by common ownership and/or control) evidenced by various Notes, and Deeds to Secure Debt (Deed to Secure Debt as used herein to include Mortgages, Security Agreements and Pledges of stock, member interest in limited liability company or other assets).  Any event of default as defined in any Deed to Secure Debt from Borrower to Lender given to secure any loan from Lender to Borrower or any breach of terms, provisions, conditions or covenants contained in the Note or Notes, Deed to Secure Debt or Deeds to Secure Debt, or any other loan documents executed in connection with any other loan or loans from Lender or Borrower shall be an event of default under the terms, provisions, conditions, and covenants of any and all other loans from the Lender to Borrower.  Further, an event of default hereunder shall also constitute an event of default under any and all Deeds to Secure Debt, Notes, and any other loan document executed in connection with any other loan from Lender to Borrower.

(b)     Lender has made or may make other loans to Borrower evidenced by various Notes and Deeds to Secure Debt. The real property and any other property described in said other Deeds to Secure Debt is and shall be security for each and every other Note, executed by Borrower in favor of Lender, or any advance made thereunder, or any renewal or extension thereof; further, the real property described herein is

2

and shall be further security for each and every Note executed by the Borrower in favor of the Lender. This paragraph shall apply notwithstanding the fact that the outstanding balance of any one or more of said loans exceeds the original face amount of the Note or Notes evidencing said loans.

(c)    Nothing contained in the within paragraphs, shall in any way impair the rights of the Lender granted in any Deed to Secure Debt. Further, each and every Note and Deed to Secure Debt executed in connection with any loan made from Lender to Borrower is and shall remain a separate obligation of Borrower, and each and every Note and Deed to Secure Debt is and shall be separately enforceable according to its terms until all outstanding indebtedness owing from Borrower to Lender has been paid in full; further, Lender may, at its election, institute separate or collective proceedings with respect to each Note and Deed to Secure Debt simultaneously or in such order and at such times as Lender may elect. The pendency of any proceeding with respect to any Note or Deed to Secure Debt shall not be grounds for abatement of or hindering, delaying or preventing any proceeding in respect to any other Note or Deed to Secure Debt. Default under each Note and Deed to Secure Debt shall constitute a separate cause of action.

7.    **Events of Default**. The principal sum evidenced by this Note, together with all accrued but unpaid interest thereon and all other agreed charges owing by Borrower hereunder, shall become immediately due and payable at the option of Lender upon the occurrence of any "Event of Default", as used and defined in any Loan Document, each of which shall constitute an "Event of Default" hereunder, *provided however*, that Borrower shall have five (5) days following notice of a monetary default in which to cure, and thirty (3) days following notice of a non-monetary in which to cure. Not in limitation of the foregoing but in addition thereto, the following shall constitute events of default under this Note:   failure of Borrower (Borrower and each other person primarily or secondarily liable to Lender for the indebtedness evidenced by this Note hereinafter collectively referred to as "Obligors") to make any payment of principal or interest or any other amount under this Note when due or failure of Borrower to perform or observe any promise or agreement contained in this Note; the death of (if an individual), death of a general partner (if a partnership), or dissolution of (if a partnership or corporation), insolvency of, general assignment for the benefit of creditors by, any Obligor; the commencement of a voluntary proceeding under any law relating to bankruptcy, insolvency, reorganization, arrangement, composition or readjustment of debt, dissolution, liquidation or debtor relief law or statute of any jurisdiction, whether now or hereafter in effect, including without limitation the filing of a petition under any chapter of the federal bankruptcy code by or against, or acquiescence in writing to same by, or failure to timely and diligently controvert any such involuntary proceeding by, any Obligor; the filing of a proceeding for the appointment of a receiver, custodian, trustee, liquidator or similar official for Obligor or Obligor's property or consenting to the appointment of same; the failure of an involuntary petition for relief under the Federal Bankruptcy Code, as amended, to be dismissed within thirty (30) days after the commencement thereof or in which an order for relief is entered; the making by any Obligor of a conveyance fraudulent as to creditors under any state or federal law; entry of any judgment against, or issuance of a levy or writ of execution, attachment or garnishment against any of the property of, any Obligor; the inability of any Obligor to pay debts as they become due or admit in writing to such effect; the transfer by any Obligor of all or substantially all of his, her or its assets outside the ordinary course of business, or the waste, loss or dissipation of a substantial part of such person's assets; if any Obligor is a partnership, the withdrawal or removal of any general partner of such partnership; if any Obligor is a corporation, the transfer, directly or indirectly (including through any voting trust, irrevocable proxy, or the like), of the ownership or power to vote more than thirty percent (30%) of the voting stock of such corporation; the suspension of the operation of any Obligor's present business; the occurrence of any default or event authorizing acceleration as provided under any promissory note or other evidence of debt, loan agreement, security agreement, pledge agreement, assignment, mortgage, deed to secure debt, deed of trust, lease agreement or other agreement or contract between any Obligor and Lender or any third party; any statement, representation or warranty of any Obligor made orally or in writing in any document

3

evidencing, securing or otherwise relating to the indebtedness evidenced by this Note or in any other writing or statement at any time furnished or made by any Obligor to Lender is false or misleading in a material respect as of the date furnished or made; revocation or termination of any guaranty executed in favor of Lender guaranteeing the indebtedness evidenced by this Note; the financial responsibility of any Obligor becomes impaired at any time in the sole opinion of Lender; or, the determination by Lender that it otherwise deems itself to be insecure.

8.      **Remedies.** If this Note is payable on demand, all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall be due and payable in full upon demand by Lender, whether or not any event of default has occurred and whether or not Lender reasonably deems itself to be insecure. If any event of default under this Note should occur, all unpaid amounts of any or all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall, at the option of Lender and without notice or demand, become immediately due and payable and Lender shall have and be entitled to exercise, from time to time, all the rights and remedies available to it as provided elsewhere in this Note, in any other agreement or contract between Borrower and Lender and under applicable law. All of Lender's rights and remedies shall be cumulative, and any failure of Lender to exercise any such right or remedy shall not be construed as a waiver of the right to exercise the same or any other right or remedy at any time and from time to time thereafter.

9.      **Notices.**   Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Note shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or three (3) days after being deposited in the United States mail, postage prepaid, certified with return receipt requested, if mailed to the addresses set forth in the beginning of this Note or at such other address within the continental United States for either party as such party may designate by notice to the other given in accordance with the provisions of this paragraph; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice has been received shall also constitute receipt.

10.     **Acceleration.** Time is of the essence in the performance of all obligations under this Note. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at its option and as often as it may desire, may declare all liabilities, obligations and indebtedness due Lender, including without limitation this Note to be immediately due and payable without demand, notice or presentment, and may exercise any other remedy available to Lender hereunder, at law or in equity.

11.     **Costs of Collection.**   Borrower agrees that if, and as often as, this Note is given to an attorney for collection or to defend or enforce any of Lender's arising from or relating to this Note, Borrower will pay to Lender attorney's fees in the amount of 15% of the principal balance due, together with all court costs and other expenses paid or incurred by Lender; provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

12.     **Maximum Legal Rate**   Borrower and Lender agree that no payment of interest or other consideration made or agreed to be made by Borrower to Lender pursuant to this Note shall, at any time, be in excess of the maximum rate of interest permissible by law. In the event such payments of interest or other consideration provided for in this Note shall result in an effective rate of interest which, for any period of time, is in excess of the limit of the usury or any other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without

4

further agreement or notice between or by any party hereto, be applied to principal immediately upon receipt of such monies by Lender hereof with the same force and effect as though the payer had specifically designated such and Lender had agreed to accept such extra payments as a principal payment, without premium. This provision shall control every other obligation of the Borrower and Lender under this Note.

13. **Miscellaneous.**

(a)     With respect to any and all obligations, to the extent permitted by applicable laws Borrower waives the following: (1) all rights or exemption of property from levy or sale under execution or other process for the collection of debts under the constitution or laws of the United States or any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold Borrower on any obligation; (3) all statutory provisions and requirements for the benefit of the Borrower now or hereafter in force (to the extent that same may be waived); (4) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Lender and Borrower shall be adverse parties. Borrower agrees to pay all filing fees and taxes and all costs of collecting or securing or attempting to collect or secure any obligations, including but not limited to attorney's fees.

(b)     The obligations and liabilities of Borrower under this Note are continuing, absolute, and unconditional, and shall remain in full force and effect until all amounts due hereunder have been paid in full and all obligations of Borrower have been discharged without regard to and without being released, discharged, impaired, modified or in any way affected by, the occurrence from time to time of any event, circumstance or condition, including without limitation any one or more of the following, whether or not with notice to or consent of Borrower: (1) any assignment or transfer this Note or of any interest hereunder; (2) any consent, extension, indulgence or other action or inaction (including without limitation any lack of diligence or failure to mitigate damages) under, or in respect of, this Note or other agreement, or any exercise or non-exercise of any right, remedy, power or privilege under, or in respect of, this Note or agreement; or (5) the failure, omission, delay or lack of diligence on the part of the Holder or any assignee or successor thereto, to enforce, assert or exercise any right, power, privilege or remedy conferred upon the Lender by this Note or other agreement.

(c)     The Lender, may, but shall not be required to, apply to the payment of the debt evidenced hereby, on or after the maturity of said debt, whether by acceleration or otherwise, any money or credit held by the Lender on deposit, in trust or otherwise, for the account of the Borrower or any of them.

(d)     Lender shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid, unless in writing and signed by the Holder. All rights and remedies of the Lender under the terms of this Note and under any statutes or rules of law shall be cumulative and may be exercised successively or concurrently. Borrower agrees that the Lender shall be entitled to all the rights of a holder in due course of negotiable instruments. Any provision of this Note which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof.

(e)     The liabilities and obligations of each person or entity who or which is a Borrower are joint and several.

(f)     Borrower warrants and agrees that the proceeds of this Note will be used for business purposes (other than agricultural purposes) only, and not for personal, family or household purposes.

5

(g)     Borrower and Lender intend and believe that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions.  However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of Borrower and Lender that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender hereof under the remainder of this Note shall continue in full force and effect.

14.     **Governing Law**.  This Note shall be governed by and construed in accordance with the laws of the State of Georgia.  Borrower acknowledges that the negotiation of the provisions of this Note and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give Borrower, nor shall any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Note or said Loan Documents to become effective and valid and binding obligations of the Borrower. Borrower acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan.  Borrower acknowledges further that the negotiation, execution, and delivery of this Note and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business.  Borrower hereby submits itself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with the Loan or any of the Loan Documents. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction.  Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a waiver by Lender of any of the foregoing.

15.     **Waiver of Jury Trial.**  TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER  HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION WITH THIS NOTE OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION  HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF EITHER PARTY'S RIGHTS AND REMEDIES THEREUNDER,  IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.   BORROWER AGREES THAT LENDER MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT OF BORROWER TO IRREVOCABLY WAIVE BORROWER'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN BORROWER AND LENDER SHALL INSTEAD

BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

16.   **Venue**. Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Note or any agreements or transactions contemplated hereby may be brought in the courts of the State of Georgia or of the United States of America for the Northern District of Georgia and hereby expressly submits to the personal jurisdiction and venue of such courts for the purposes thereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum. Borrower hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the address of Borrower last provided to Holder in connection with the Loan, such service to become effective ten (10) days after such mailing.

**IN WITNESS WHEREOF,** Borrower has caused this Note to be executed, sealed, and delivered as of the date first set forth above.

**BORROWER**

**River Dawg, LLC, a Georgia limited liability company**

By: _____(Seal)
Name: Dr. Jerry Williams
Title: Manager

This Note is accepted this 9th day of December, 2024 by Lender in Newnan, Georgia.

**LENDER**

**First Liberty Capital Partners, LLC, a Georgia liability company**

By:_____(Seal)
Name: Brant Frost IV
Title: Manager

7

# GUARANTY AGREEMENT

**THIS GUARANTY AGREEMENT** (hereinafter referred to for convenience as the "Guaranty") is entered as of the 9th day of December, 2024, by **Urgent Care 247, LLC** (hereinafter referred to for convenience as the "Guarantor"), in favor of **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (the "Lender").

## A.  RECITALS

**WHEREAS, RIVERDAWG, LLC, a Georgia limited liability company** (the "Borrower"), has obtained a loan from Lender in the amount of **$355,000.00** (the "Loan");

**WHEREAS,** in connection with the making and closing of the Loan, and in order to evidence and secure the Loan, the Borrower will execute a Promissory Note (hereinafter referred to for convenience as the "Note"), a Security Deed, a Corporate Guaranty, and various other documents evidencing, securing, or otherwise relating to the Loan (for convenience, the Note, the Security Agreement, and any other documents are referred to for convenience as the "Loan Documents"); and

**WHEREAS,** Lender is willing to make the Loan only if the Guarantor executes and delivers this Guaranty.

**NOW, THEREFORE,** in consideration of the premises and to induce Lender to extend the credit referred to above, the Guarantor hereby agrees as follows:

## B.  REPRESENTATIONS AND WARRANTIES

The Guarantor hereby represents and warrants that:

1.    The execution, delivery and performance of this Guaranty, and the agreements, documents, and instruments to be given by the Guarantor as security for the Loan and any other documents or instruments executed and delivered by the Guarantor pursuant hereto or thereto, or in connection herewith or therewith (collectively, the "Guarantor Documents"), are within the Guarantor's powers, have been duly authorized, do not violate any law, rule, or regulation, and will not conflict with, result in a breach of, or constitute a default under, any contractual obligations of the Guarantor;

2.    There is no judgment, decree, or order of any court or other governmental authority binding on the Guarantor which would be contravened by the execution, delivery, performance or enforcement of the Guarantor Documents; and

3.    Each of the Guarantor Documents is a legal, valid, and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its respective terms.

4.    That he understands that Lender would not make the Loan to Borrower without Guarantor entering into this Guaranty, and there is substantial consideration flowing to

Guarantor if the Loan is made equivalent to the potential burden to Guarantor of the obligations assumed hereunder.

The Guarantor agrees that for so long as this Guaranty remains in effect, each of the above representations and warranties and each other representation or warranty of the Guarantor contained herein or in the other Guarantor Documents shall be deemed to be continuing.

## C. GUARANTY

1.      The Guarantor hereby unconditionally, absolutely, and irrevocably guarantees full payment and performance of, and promises to pay to Lender, or to order, without demand, in lawful money of the United States, when due (whether at stated maturity, by acceleration or otherwise), any and all indebtedness, liabilities, obligations and covenants of Borrower to Lender (whether any such indebtedness, liability, obligation or covenant now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such indebtedness, liabilities, obligations and covenants being hereinafter called, collectively, the "Obligations"), arising out of or relating to the Loan, the Note, the Security Agreement, the Pledge and Security Agreement, or any of the other Loan Documents and any and all renewals, re-financings, extensions, amendments, modifications, and consolidations thereof. The word "Obligations" is used in its most comprehensive sense and includes all principal, interest, and other amounts payable under the Note, the Security Agreement, or any of the other Loan Documents and all obligations for fees, indemnities, costs, and expenses under the Note, the Mortgage, or any of the other Loan Documents.

2.      The Guarantor's obligations hereunder are those of a primary obligor, and not merely as a surety or guarantor of collection, and are independent of the Obligations. If there is more than one Guarantor herein, each Guarantor's obligations hereunder are joint and several. In addition, Guarantor agrees that the Guarantor's obligations hereunder are joint and several with the obligations of any and all other obligors (which for purposes of this Agreement includes, without limitation, other guarantors pursuant to separate agreements or instruments) in respect of the Obligations. A separate action or actions may be brought against the Guarantor (or any one Guarantor herein) whether an action is brought against Borrower, another Guarantor herein, or any other obligor in respect of the Obligations or whether Borrower, another Guarantor herein, or any other obligor in respect of the Obligations be joined in any such action or actions; and the Guarantor waives the benefit of any statute of limitations affecting his or her liability hereunder or the enforcement hereof.

3.      The obligations of the Guarantor under this Guaranty are continuing, absolute, and unconditional, and the Guarantor guarantees that the Obligations will be paid in full when due (whether at stated maturity, by acceleration or otherwise) in accordance with the terms of the Note, the Mortgage, and the other Loan Documents regardless of any law, regulation, or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto or any other circumstance which might otherwise constitute a defense available to, or a legal or equitable discharge of, a borrower or guarantor.

2

4.      This Guaranty is irrevocable with respect to all Obligations which arise out of or relate to the Loan, the Note, the Security Agreement, the Pledge and Security Agreement or any of the other Loan Documents.  All of the liabilities of the Guarantor under this Guaranty shall remain in full force and effect until all Obligations (including any amendments, modifications, extensions, renewals, restructurings, re-financings, and re-fundings of any thereof) shall have been finally paid in full in cash.

This Guaranty shall in all respects continue in full force and effect or shall be reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Obligations is rescinded or must otherwise be restored or returned for any reason, including without limitation, because of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower or any other obligor in respect to the Obligations (including without limitation, the Guarantor) or upon or as a result of the appointment of a custodian, receiver, trustee or other officer with similar power with respect to Borrower or any such other obligor or any material part of his or its assets, or otherwise, all as though such payment had not been made.  If an event permitting the acceleration of the Obligations shall at any time have occurred and be continuing and such acceleration shall at such time be prevented by reason of the pendency against Borrower of a case or proceeding under any bankruptcy or insolvency law, the Guarantor agrees that, for purposes of this Guaranty and  his obligations hereunder, the Obligations shall be deemed to have been accelerated, and the Guarantor shall forthwith pay such Obligations, and the other obligations hereunder, without any further notice or demand.

Without limiting the foregoing, the Guarantor authorizes Lender, without notice or demand, and without affecting the Guarantor's liability hereunder, from time to time to (a) renew, extend, accelerate, compromise, settle, restructure, refinance, refund, or otherwise change the amount and time for payment of any of the Obligations, or otherwise change the terms of the Obligations or any part thereof, including, without limitation, amend, modify, supplement, waive, or consent to a departure from the terms and conditions of the Note and the other Loan Documents; (b) take and hold security for the payment of this Guaranty or the Obligations or the obligations of other obligors in respect of the Obligations, and enforce any such security; (c) apply such security and direct the order or manner of sale thereof or sell, exchange, release, compromise, settle, waive or surrender any such security; and (d) take, hold, exchange, release, compromise, settle, amend, or waive, or consent to the departure from any of the terms of, any guaranty or other agreement relating to the obligations of any other obligor in respect to the Obligations.  Lender shall have no obligation to perfect, secure, protect, or insure any collateral, and the Guarantor's liability hereunder shall not be affected by the non-perfection, invalidity, or unenforceability of any agreement, instrument, or document securing or purporting to secure the Note or the other Loan Documents.

5.      Guarantor hereby unconditionally and  irrevocably: (a) waives and relinquishes any right of subrogation or other right of reimbursement from the Borrower or the Borrower's estate, and any other right to payment from the Borrower or the Borrower's estate, arising out of or on account of any sums paid or agreed to be paid by Guarantor under this Guaranty, whether any such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; (b) agrees that if at any time all or any part of any payment previously applied by Lender to any of the Obligations must be returned by Lender for any reason, whether upon the claim of a preference, fraudulent transfer, or other claim

3

of a debtor-in-possession, trustee in bankruptcy, or other representative of creditors of Borrower, or otherwise, and whether by court order, administrative order, or non-judicial settlement, this Guaranty shall continue in effect or shall be reinstated, as the case may be, and Guarantor shall remain liable for the full amount returned as if such amount had never been received by Lender, notwithstanding any termination of this Guaranty or cancellation of any promissory note or other instrument or agreement evidencing or securing any of the Obligations; (c) agrees that the liability of the Guarantor under this Guaranty shall not be affected or impaired by, and this Guaranty shall remain fully enforceable against Guarantor for the full amount of the Obligations less only payments thereon actually received and retained by Lender irrespective of and without reduction on account of: (i) any defenses which Borrower may have or assert with respect to any of the Obligations, including, but without limitation, filing of a petition in bankruptcy, discharge in bankruptcy, confirmation of a plan of reorganization (whether Lender voted for or against such plan), composition with creditors (whether or not including Lender), failure of consideration, breach of warranty, statute of frauds, statute of limitations, accord and satisfaction, waiver, estoppel, release, usury, or fraud or misrepresentation; or (ii) dissolution or insolvency of Borrower.

6.      The Guarantor unconditionally and irrevocably waives any right to require Lender to (a) proceed against Borrower or any other obligor in respect to the Obligations; (b) proceed against or exhaust any security held directly or indirectly on account of the Obligations; (c) pursue any other remedy of Lender whatsoever; (d) give the Guarantor prior or subsequent notice of the disposition of any security; or (e) give the Guarantor notice of any information concerning Borrower's business, operations, or condition (financial or otherwise) known to Lender. The Guarantor unconditionally waives any defense arising by reason of any disability or other legal or equitable defense of Borrower by reason of the cessation from any cause whatsoever of the liability of Borrower other than final payment in full in cash of the Obligations. The Guarantor waives all diligence, presentments, protests, notices of protest, notices of dishonor, notices of non-payment, acceptance and notices of acceptance of this Guaranty.

7.      Any debt of Borrower now or hereafter held by or owed to the Guarantor is hereby absolutely and totally subordinated in right of payment and in all other respects to the Obligations and all other obligations of the Borrower to Lender in any way relating to the Note or the other Loan Documents, and in the event an event of default under the Note or the other Loan Documents shall have occurred, and there is a default in the debt of Borrower to the Guarantor, if Lender so requests, such debt shall be collected, enforced and received by the Guarantor as trustee for Lender and shall be paid over to Lender on account of the Obligations and any such other obligations.

8.      Upon the occurrence of any Event of Default, as defined in the Note, Security Agreement or any other Loan Document, in the payment or performance of the Note or any of the other Loan Documents, the Lender is hereby authorized at any time and from time to time to set-off and apply all deposits (general or special, time or demand, provisional or final) at any time held and other obligations at any time owing by the Lender to or for the credit or the account of the Guarantor against any and all of the obligations of the Guarantor now or hereafter existing under this Guaranty, irrespective of whether or not, the Lender shall have made any demand under this Guaranty and although such obligations may be contingent and unmatured.

4

The rights of the Lender under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Lender may have.

9.     The Guarantor will keep at all times full, true and accurate books and records of account of the financial affairs of the Guarantor sufficient to reflect accurately and correctly the results of all income and expense activities and to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles (or another method approved by Lender). The Guarantor will deliver to the Lender, upon such times as may be requested by the Lender, and in no event more than three (3) months after the end of every calendar year from date hereof, whether or not requested by the Lender, financial statements reflecting the foregoing information, including, but not limited to, balance sheets, profit-and-loss statements and all schedules and exhibits thereto as are customarily required by generally accepted accounting principles or as may be requested by Lender. Unless otherwise consented or agreed to by Lender in writing with respect to any particular year, such statements and information shall be prepared by a certified public accountant approved by the Lender in advance of delivery of such statements and information. The Guarantor further covenants and agrees to furnish to Lender, within 10 days after the date of any request by Lender, such other information and documents (financial or otherwise, including without limitation income tax returns) concerning or relating to the Guarantor or any collateral securing this Guaranty as the Lender may request at any time or from time to time.

10.     The Guarantor assumes full responsibility for keeping fully informed of the financial condition of the Borrower and all other circumstances affecting the Borrower's ability to perform its obligations to the Lender, and agrees that the Lender will have no duty to report to Guarantor any information which the Lender receives about the Borrower's financial condition or any circumstances bearing on Borrower's ability to perform.

11.     No amendment or wavier of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom, shall in any event be effective unless the same is signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose given. No failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any provided by law or at equity.

12.     Any provision of this Guaranty which may be prohibited by law or otherwise held invalid shall be ineffective only to the extent of such prohibition or invalidity and shall not invalidate or otherwise affect the remaining provisions of this Guaranty.

13.     The Lender may, without notice to or consent from the Guarantor, assign or otherwise transfer, or grant a participation in, the Note or the other Loan Documents, the Obligations, or any interest therein, or the collateral, in whole or in part, without affecting in any manner whatsoever the Guarantor's liability hereunder. Any assignee or other transferee, or participant in, any of the Note or the other Loan Documents or the Obligations shall thereupon become vested with all rights in respect thereof granted to Lender herein to the same extent as if such assignee or transferee was the original guaranteed party hereto, and all Obligations shall be

5

and remain Obligations for purposes of this Guaranty. This Guaranty shall be binding upon the Guarantor and Guarantor's heirs, executors, personal representatives, successors and assigns and inure to the benefit of Lender and its respective heirs, executors, personal representatives, successors, assigns and other transferees; provided, however, that the Guarantor shall not assign or transfer any of Guarantor's rights or obligations hereunder without the express written consent of Lender.

14.     Guarantor agrees that this Guaranty, the Note, and the other Loan Documents, and the rights and obligations of the parties hereunder and thereunder shall be governed by and be construed in accordance with the laws of the State of Georgia, unless otherwise provided therein or except where required to be governed by the laws of another jurisdiction to be enforceable. Guarantor acknowledges that the negotiation of the provisions of this Guaranty, the Note and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give, nor shall Guarantor, Borrower or any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Guaranty or said Loan Documents to become effective and valid and binding obligations of the Borrower, the Guarantor or any other obligor. Guarantor acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Guarantor acknowledges further that the negotiation, execution, and delivery of this Guaranty, the Note and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Guarantor hereby submits himself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with this Guaranty, the Loan or any of the Loan Documents, agrees that venue for any such action shall be in the state or federal courts in Georgia, and waives any and all rights under the laws of the United States or any state to object to jurisdiction or venue within the state or federal courts in Georgia. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a wavier by Lender of any of the foregoing.

15.     Guarantor hereby waives all rights of exemption under the constitution and laws of the United States and all states therein, including, but not limited to, the State of Georgia. Guarantor agrees to pay all cost of collection, including a reasonable attorney's fee, if the services of an attorney are utilized whether or not suit is filed. In that connection, Guarantor agrees that if, and as often as, this Guaranty Agreement is given to an attorney for collection or to defend or enforce any of Lender's rights hereunder, Guarantor will pay to Lender its reasonable attorney's fees, which shall be defined as 15% of the Obligations, together with all court costs and other expenses paid or incurred by Lender. Provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

16.     The undersigned hereby waives the right to require the holder of the obligations guaranteed to take any action against the principal as provided for in O.C.G.A. § 10-7-24. At the

option of the Bank, this may be treated as a guaranty or as a suretyship, with the right to proceed against the guarantor without first proceeding against the Borrower.

17.    **TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY, THE LOAN OR THE LOAN DOCUMENTS OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR BORROWER AND GUARANTOR WITH RESPECT TO THE LOAN DOCUMENTS OR IN CONNECTION WITH THIS GUARANTY OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS GUARANTY OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. GUARANTOR AGREES THAT LENDER MAY FILE A COPY OF THIS GUARANTY WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED-FOR AGREEMENT OF GUARANTOR IRREVOCABLY TO WAIVE GUARANTOR'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN GUARANTOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.**

**IN WITNESS WHEREOF**, the Guarantor has executed this Guaranty effective as of the date first written above.

**Urgent Care 247, LLC**

_____(Seal)
**Dr. Jerry Williams, Manager**

Signed, sealed and delivered in my presence by Dr. Jerry Williams, personally known to me, or who has produced official identification, this 9th day of December, 2024.


_____

Notary Public


(Notary Seal)

## GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (hereinafter referred to for convenience as the "Guaranty") is entered as of the 9th day of December, 2024, by **Dr. Jerry Williams** (hereinafter referred to for convenience as the "Guarantor"), in favor of **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (the "Lender").

### A.   RECITALS

WHEREAS, **RIVERDAWG, LLC, a Georgia limited liability company** (the "Borrower"), has obtained a loan from Lender in the amount of **$355,000.00** (the "Loan");

WHEREAS, in connection with the making and closing of the Loan, and in order to evidence and secure the Loan, the Borrower will execute a Promissory Note (hereinafter referred to for convenience as the "Note"), a Security Deed, a Corporate Guaranty, and various other documents evidencing, securing, or otherwise relating to the Loan (for convenience, the Note, the Security Agreement, and any other documents are referred to for convenience as the "Loan Documents"); and

WHEREAS, Lender is willing to make the Loan only if the Guarantor executes and delivers this Guaranty.

NOW, THEREFORE, in consideration of the premises and to induce Lender to extend the credit referred to above, the Guarantor hereby agrees as follows:

### B.   REPRESENTATIONS AND WARRANTIES

The Guarantor hereby represents and warrants that:

1.    The execution, delivery and performance of this Guaranty, and the agreements, documents, and instruments to be given by the Guarantor as security for the Loan and any other documents or instruments executed and delivered by the Guarantor pursuant hereto or thereto, or in connection herewith or therewith (collectively, the "Guarantor Documents"), are within the Guarantor's powers, have been duly authorized, do not violate any law, rule, or regulation, and will not conflict with, result in a breach of, or constitute a default under, any contractual obligations of the Guarantor;

2.    There is no judgment, decree, or order of any court or other governmental authority binding on the Guarantor which would be contravened by the execution, delivery, performance or enforcement of the Guarantor Documents; and

3.    Each of the Guarantor Documents is a legal, valid, and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its respective terms.

4.    That he understands that Lender would not make the Loan to Borrower without Guarantor entering into this Guaranty, and there is substantial consideration flowing to

Guarantor if the Loan is made equivalent to the potential burden to Guarantor of the obligations assumed hereunder.

The Guarantor agrees that for so long as this Guaranty remains in effect, each of the above representations and warranties and each other representation or warranty of the Guarantor contained herein or in the other Guarantor Documents shall be deemed to be continuing.

## C.  GUARANTY

1.     The Guarantor hereby unconditionally, absolutely, and irrevocably guarantees full payment and performance of, and promises to pay to Lender, or to order, without demand, in lawful money of the United States, when due (whether at stated maturity, by acceleration or otherwise), any and all indebtedness, liabilities, obligations and covenants of Borrower to Lender (whether any such indebtedness, liability, obligation or covenant now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such indebtedness, liabilities, obligations and covenants being hereinafter called, collectively, the "Obligations"),  arising out of or relating to the Loan, the Note, the Security Agreement, the Pledge and Security Agreement, or any of the other Loan Documents and any and all renewals, re-financings, extensions, amendments, modifications, and consolidations thereof.  The word "Obligations" is used in its most comprehensive sense and includes all principal, interest, and other amounts payable under the Note, the Security Agreement, or any of the other Loan Documents and all obligations for fees, indemnities, costs, and expenses under the Note, the Mortgage, or any of the other Loan Documents.

2.     The Guarantor's obligations hereunder are those of a primary obligor, and not merely as a surety or guarantor of collection, and are independent of the Obligations.  If there is more than one Guarantor herein, each Guarantor's obligations hereunder are joint and several.  In addition, Guarantor agrees that the Guarantor's obligations hereunder are joint and several with the obligations of any and all other obligors (which for purposes of this Agreement includes, without limitation, other guarantors pursuant to separate agreements or instruments) in respect of the Obligations.  A separate action or actions may be brought against the Guarantor (or any one Guarantor herein) whether an action is brought against Borrower, another Guarantor herein, or any other obligor in respect of the Obligations or whether Borrower, another Guarantor herein, or any other obligor in respect of the Obligations be joined in any such action or actions; and the Guarantor waives the benefit of any statute of limitations affecting his or her liability hereunder or the enforcement hereof.

3.     The obligations of the Guarantor under this Guaranty are continuing, absolute, and unconditional, and the Guarantor guarantees that the Obligations will be paid in full when due (whether at stated maturity, by acceleration or otherwise) in accordance with the terms of the Note, the Mortgage,  and the other  Loan Documents regardless of any law, regulation, or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto or any other circumstance which might otherwise constitute a defense available to, or a legal or equitable discharge of, a borrower or guarantor.

4.      This Guaranty is irrevocable with respect to all Obligations which arise out of or relate to the Loan, the Note, the Security Agreement, the Pledge and Security Agreement or any of the other Loan Documents.  All of the liabilities of the Guarantor under this Guaranty shall remain in full force and effect until all Obligations (including any amendments, modifications, extensions, renewals, restructurings, re-financings, and re-fundings of any thereof) shall have been finally paid in full in cash.

This Guaranty shall in all respects continue in full force and effect or shall be reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Obligations is rescinded or must otherwise be restored or returned for any reason, including without limitation, because of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower or any other obligor in respect to the Obligations (including without limitation, the Guarantor) or upon or as a result of the appointment of a custodian, receiver, trustee or other officer with similar power with respect to Borrower or any such other obligor or any material part of his or its assets, or otherwise, all as though such payment had not been made.  If an event permitting the acceleration of the Obligations shall at any time have occurred and be continuing and such acceleration shall at such time be prevented by reason of the pendency against Borrower of a case or proceeding under any bankruptcy or insolvency law, the Guarantor agrees that, for purposes of this Guaranty and  his obligations hereunder, the Obligations shall be deemed to have been accelerated, and the Guarantor shall forthwith pay such Obligations, and the other obligations hereunder, without any further notice or demand.

Without limiting the foregoing, the Guarantor authorizes Lender, without notice or demand, and without affecting the Guarantor's liability hereunder, from time to time to (a) renew, extend, accelerate, compromise, settle, restructure, refinance, refund, or otherwise change the amount and time for payment of any of the Obligations, or otherwise change the terms of the Obligations or any part thereof, including, without limitation, amend, modify, supplement, waive, or consent to a departure from the terms and conditions of the Note and the other Loan Documents; (b) take and hold security for the payment of this Guaranty or the Obligations or the obligations of other obligors in respect of the Obligations, and enforce any such security; (c) apply such security and direct the order or manner of sale thereof or sell, exchange, release, compromise, settle, waive or surrender any such security; and (d) take, hold, exchange, release, compromise, settle, amend, or waive, or consent to the departure from any of the terms of, any guaranty or other agreement relating to the obligations of any other obligor in respect to the Obligations.  Lender shall have no obligation to perfect, secure, protect, or insure any collateral, and the Guarantor's liability hereunder shall not be affected by the non-perfection, invalidity, or unenforceability of any agreement, instrument, or document securing or purporting to secure the Note or the other Loan Documents.

5.      Guarantor hereby unconditionally and  irrevocably: (a) waives and relinquishes any right of subrogation or other right of reimbursement from the Borrower or the Borrower's estate, and any other right to payment from the Borrower or the Borrower's estate, arising out of or on account of any sums paid or agreed to be paid by Guarantor under this Guaranty, whether any such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; (b) agrees that if at any time all or any part of any payment previously applied by Lender to any of the Obligations must be returned by Lender for any reason, whether upon the claim of a preference, fraudulent transfer, or other claim

of a debtor-in-possession, trustee in bankruptcy, or other representative of creditors of Borrower, or otherwise, and whether by court order, administrative order, or non-judicial settlement, this Guaranty shall continue in effect or shall be reinstated, as the case may be, and Guarantor shall remain liable for the full amount returned as if such amount had never been received by Lender, notwithstanding any termination of this Guaranty or cancellation of any promissory note or other instrument or agreement evidencing or securing any of the Obligations; (c) agrees that the liability of the Guarantor under this Guaranty shall not be affected or impaired by, and this Guaranty shall remain fully enforceable against Guarantor for the full amount of the Obligations less only payments thereon actually received and retained by Lender irrespective of and without reduction on account of: (i) any defenses which Borrower may have or assert with respect to any of the Obligations, including, but without limitation, filing of a petition in bankruptcy, discharge in bankruptcy, confirmation of a plan of reorganization (whether Lender voted for or against such plan), composition with creditors (whether or not including Lender), failure of consideration, breach of warranty, statute of frauds, statute of limitations, accord and satisfaction, waiver, estoppel, release, usury, or fraud or misrepresentation; or (ii) dissolution or insolvency of Borrower.

6.      The Guarantor unconditionally and irrevocably waives any right to require Lender to (a) proceed against Borrower or any other obligor in respect to the Obligations; (b) proceed against or exhaust any security held directly or indirectly on account of the Obligations; (c) pursue any other remedy of Lender whatsoever; (d) give the Guarantor prior or subsequent notice of the disposition of any security; or (e) give the Guarantor notice of any information concerning Borrower's business, operations, or condition (financial or otherwise) known to Lender. The Guarantor unconditionally waives any defense arising by reason of any disability or other legal or equitable defense of Borrower by reason of the cessation from any cause whatsoever of the liability of Borrower other than final payment in full in cash of the Obligations. The Guarantor waives all diligence, presentments, protests, notices of protest, notices of dishonor, notices of non-payment, acceptance and notices of acceptance of this Guaranty.

7.      Any debt of Borrower now or hereafter held by or owed to the Guarantor is hereby absolutely and totally subordinated in right of payment and in all other respects to the Obligations and all other obligations of the Borrower to Lender in any way relating to the Note or the other Loan Documents, and in the event an event of default under the Note or the other Loan Documents shall have occurred, and there is a default in the debt of Borrower to the Guarantor, if Lender so requests, such debt shall be collected, enforced and received by the Guarantor as trustee for Lender and shall be paid over to Lender on account of the Obligations and any such other obligations.

8.      Upon the occurrence of any Event of Default, as defined in the Note, Security Agreement or any other Loan Document, in the payment or performance of the Note or any of the other Loan Documents, the Lender is hereby authorized at any time and from time to time to set-off and apply all deposits (general or special, time or demand, provisional or final) at any time held and other obligations at any time owing by the Lender to or for the credit or the account of the Guarantor against any and all of the obligations of the Guarantor now or hereafter existing under this Guaranty, irrespective of whether or not, the Lender shall have made any demand under this Guaranty and although such obligations may be contingent and unmatured.

4

The rights of the Lender under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Lender may have.

9.      The Guarantor will keep at all times full, true and accurate books and records of account of the financial affairs of the Guarantor sufficient to reflect accurately and correctly the results of all income and expense activities and to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles (or another method approved by Lender). The Guarantor will deliver to the Lender, upon such times as may be requested by the Lender, and in no event more than three (3) months after the end of every calendar year from date hereof, whether or not requested by the Lender, financial statements reflecting the foregoing information, including, but not limited to, balance sheets, profit-and-loss statements and all schedules and exhibits thereto as are customarily required by generally accepted accounting principles or as may be requested by Lender. Unless otherwise consented or agreed to by Lender in writing with respect to any particular year, such statements and information shall be prepared by a certified public accountant approved by the Lender in advance of delivery of such statements and information. The Guarantor further covenants and agrees to furnish to Lender, within 10 days after the date of any request by Lender, such other information and documents (financial or otherwise, including without limitation income tax returns) concerning or relating to the Guarantor or any collateral securing this Guaranty as the Lender may request at any time or from time to time.

10.     The Guarantor assumes full responsibility for keeping fully informed of the financial condition of the Borrower and all other circumstances affecting the Borrower's ability to perform its obligations to the Lender, and agrees that the Lender will have no duty to report to Guarantor any information which the Lender receives about the Borrower's financial condition or any circumstances bearing on Borrower's ability to perform.

11.     No amendment or wavier of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom, shall in any event be effective unless the same is signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose given. No failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any provided by law or at equity.

12.     Any provision of this Guaranty which may be prohibited by law or otherwise held invalid shall be ineffective only to the extent of such prohibition or invalidity and shall not invalidate or otherwise affect the remaining provisions of this Guaranty.

13.     The Lender may, without notice to or consent from the Guarantor, assign or otherwise transfer, or grant a participation in, the Note or the other Loan Documents, the Obligations, or any interest therein, or the collateral, in whole or in part, without affecting in any manner whatsoever the Guarantor's liability hereunder. Any assignee or other transferee, or participant in, any of the Note or the other Loan Documents or the Obligations shall thereupon become vested with all rights in respect thereof granted to Lender herein to the same extent as if such assignee or transferee was the original guaranteed party hereto, and all Obligations shall be

5

and remain Obligations for purposes of this Guaranty. This Guaranty shall be binding upon the Guarantor and Guarantor's heirs, executors, personal representatives, successors and assigns and inure to the benefit of Lender and its respective heirs, executors, personal representatives, successors, assigns and other transferees; provided, however, that the Guarantor shall not assign or transfer any of Guarantor's rights or obligations hereunder without the express written consent of Lender.

14.     Guarantor agrees that this Guaranty, the Note, and the other Loan Documents, and the rights and obligations of the parties hereunder and thereunder shall be governed by and be construed in accordance with the laws of the State of Georgia, unless otherwise provided therein or except where required to be governed by the laws of another jurisdiction to be enforceable. Guarantor acknowledges that the negotiation of the provisions of this Guaranty, the Note and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give, nor shall Guarantor, Borrower or any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Guaranty or said Loan Documents to become effective and valid and binding obligations of the Borrower, the Guarantor or any other obligor. Guarantor acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Guarantor acknowledges further that the negotiation, execution, and delivery of this Guaranty, the Note and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Guarantor hereby submits himself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with this Guaranty, the Loan or any of the Loan Documents, agrees that venue for any such action shall be in the state or federal courts in Georgia, and waives any and all rights under the laws of the United States or any state to object to jurisdiction or venue within the state or federal courts in Georgia. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a wavier by Lender of any of the foregoing.

15.     Guarantor hereby waives all rights of exemption under the constitution and laws of the United States and all states therein, including, but not limited to, the State of Georgia. Guarantor agrees to pay all cost of collection, including a reasonable attorney's fee, if the services of an attorney are utilized whether or not suit is filed. In that connection, Guarantor agrees that if, and as often as, this Guaranty Agreement is given to an attorney for collection or to defend or enforce any of Lender's rights hereunder, Guarantor will pay to Lender its reasonable attorney's fees, which shall be defined as 15% of the Obligations, together with all court costs and other expenses paid or incurred by Lender. Provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

16.     The undersigned hereby waives the right to require the holder of the obligations guaranteed to take any action against the principal as provided for in O.C.G.A. § 10-7-24. At the

6

option of the Bank, this may be treated as a guaranty or as a suretyship, with the right to proceed against the guarantor without first proceeding against the Borrower.

17.    **TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY, THE LOAN OR THE LOAN DOCUMENTS OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR BORROWER AND GUARANTOR WITH RESPECT TO THE LOAN DOCUMENTS OR IN CONNECTION WITH THIS GUARANTY OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS GUARANTY OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. GUARANTOR AGREES THAT LENDER MAY FILE A COPY OF THIS GUARANTY WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED-FOR AGREEMENT OF GUARANTOR IRREVOCABLY TO WAIVE GUARANTOR'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN GUARANTOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.**

**IN WITNESS WHEREOF**, the Guarantor has executed this Guaranty effective as of the date first written above.

**Dr. Jerry Williams**

_____(Seal)
**Dr. Jerry Williams**

Signed, sealed and delivered in my presence by Dr. Jerry Williams, personally known to me, or who has produced official identification, this 9th day of December, 2024.

_____
Notary Public

(Notary Seal)

7

# EXHIBIT E

FIRST LIBERTY CAPITAL PARTNERS, LLC
PO Box 2567
Newnan, GA 30264

## LOAN CLOSING STATEMENT

DATE OF TRANSACTION:  December 19, 2024

BORROWER: No Free, LLC, a Georgia limited liability company

LENDER:     FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company

---

### SCHEDULE OF LOAN ADVANCES

| | |
|---|---|
| **TOTAL LOAN AMOUNT** | **$3,500,000.00** |

### DISBURSEMENTS

| | |
|---|---|
| Loan Fee to First Liberty Capital Partners, LLC | $175,000.00 |
| Six Month Interest Reserve to First Liberty Capital Partners, LLC | $280,000.00 |
| Construction Interest Reserve | $560,000.00 |
| Partial Month's Interest (December) | $18,666.00 |
| Legal Fees | $25,000.00 |
| Title Insurance, closing costs | $25,000.00 |
| Document Fees | $3,500.00 |
| Contingency | $265,000.00 |
| **DISBURSEMENTS** | **$1,352,166.00** |
| **BALANCE AVAILABLE BORROWER** | **$2,147,834.00** |

**SIGNATURE PAGE FOLLOWS:**

"BORROWER"

RIVERDAWG, LLC, a Georgia limited liability company

By:_____(Seal)
          Dr. Jerry Willaims


"LENDER"

FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company

By:_____(Seal)
          Brant Frost IV, Manager



**FIRST LIBERTY**
BUILDING & LOAN

December 19, 2024

To:    Jerry K. Williams Jr. MD

From:  Brant Frost, IV / President
       First Liberty Building & Loan

Re:    Preliminary Approval/ Bridge loan

Dear Dr. Williams,

We are pleased to advise you that the loan request to finance the construction of a home in Highlands, NC has received preliminary loan approval. The terms are as follows:

| | |
|---|---|
| Amount | $3,500,000 |
| Purpose | To construct home |
| Rate | 15% |
| Collateral | 1st lien on 1000 acres known as Arnolds Point Bryan County, GA<br>1st lien on lot in Highlands Country Club Highlands, NC |
| Term | 12 months interest monthly |
| Payments | $46,667 /mo. 12 months |
| Interest Reserve | 6-month evergreen interest reserve |
| Debt Service Reserve | 12-month debt service reserve |
| Fees | 5% Loan fee to First Liberty |
| Borrower | Entity TBD |
| Guarantors | Jerry K. Williams Jr. MD, 100% personally, along with the corporate guarantees or any related guarantees as may be required by the lender. |

14 Greenville Street l Newnan, Georgia 30263 l (770) 253-4300

page 2
Jerry K. Williams Jr MD

Prepayment             6-month interest earned

Stipulations           Subject to 1st Lien 1000 acres Warnell Dr, Bryan County, GA
                       PB C / PG 361 Arnolds Point Parcels 3A and 3B
                       Subject to 1st lien on lot to be purchased in Highlands Country Club
                       Highlands, NC
                       Subject to 6-month interest reserve
                       Subject to 12-month debt service reserve
                       Subject to First Liberty handling a permanent loan exit option.
                       Subject to standard title & loan closing criteria

The borrower will not pay any interest on the est $1.5M in undrawn funds.

We will begin the packaging process upon receiving the signed acceptance of this term sheet along with the Good Faith Deposit of 1% of the loan request, or $35,000. *Disregard*

The GFD will be credited to the loan fee for First Liberty Building & loan and is refundable if we are not able to deliver a full approval, minus any actual 3rd party expenses.

The GFD is non-refundable if you withdraw the request, use another lender, make material misrepresentations, or if for any other reason on your end it does not close.

While we cannot make any guarantees, we are targeting the closing 12/19/2024.

Thank you for giving us the opportunity to serve you. We look forward to a smooth and successful loan transaction.

Best regards,

Brant Frost, IV / President

page 3

Jerry K. Williams Jr. MD

<u>Sources and Uses</u>

<u>*Sources*</u>
$3.50M new bridge loan
$3.50M total sources

<u>*Uses*</u>
$1.00M draw given to borrower at closing
$1.25M draws available to borrower once AP title ins policy is issued
$ 480K debt service reserve
$ 265K contingency – misc. borrower's builder/dev costs
$ 175K 5% loan fee to FLBL
$ 280K 6 mo evergreen interest reserve
$  25K Legal
$  25K title ins, 2nd appraisal, closing costs, misc.
$3.50M total uses

Approved –   Jerry K. Williams Jr  MD          12/20/24
                                              Date

14 Greenville Street I Newnan, Georgia 30263 I (770) 253-4300

PROMISSORY NOTE

**$3,500,000.00**                                                December 19, 2024

**No Free, LLC, a Georgia limited liability company ("Borrower")** whose address is 1004 Memorial Lane, Suite 200, Savannah, GA 31410 and **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (hereinafter, together with any subsequent holder hereof, sometimes called "Lender" or "Holder"), whose address is P. O. Box 2567, Newnan, GA 30264, agree as follows:

A. Borrower has requested that Lender make a loan in the original principal amount of **Three Million Five Hundred Thousand Dollars ($3,500,000.00)** (the "Loan"), and Lender hereby agrees to make the Loan to Borrower upon the terms and conditions contained herein.

B. The principal amount of the Loan shall be allocated by Lender to an account established for Borrower, and Loan proceeds shall be disbursed from time to time on terms and conditions as established by Lender as to timing, amount and other conditions of disbursements.

**THEREFORE, FOR VALUE RECEIVED,** Borrower hereby promises to pay to the order of Lender or Holder, the principal sum of **Three Million Five Hundred Thousand Dollars ($3,500,000.00)** together with interest from the date hereof until paid in full, on the unpaid principal balance from time to time outstanding at the rate hereinafter set out, payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. Said principal and interest shall accrue and be payable as follows:

1. **Interest.** Interest shall accrue at the rate of fifteen percent (15%) per annum computed on the basis of a 30 day month and 360 day year. Interest shall be computed on the entire principal amount of the Loan from the date of the Loan, notwithstanding that a portion of the Loan proceeds may be held by Lender for future disbursement to or on behalf of Borrower.

2. **Payments.**

a.     **Monthly Payments.** Borrower shall make monthly payments of interest only on the outstanding principal balance with the first payment due at closing in the amount of $18,666.00. Thereafter, Borrower shall make monthly payments in the amount of $46,666.67 commencing on February 1, 2025, and continuing thereafter on the 1st day of each successive month until December 19, 2025 (the "**Maturity Date**"), at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges due hereunder shall be due and payable for all purposes in full in a single **BALLOON PAYMENT.** All such payments shall be made at the office of Lender by federal wire transfer or electronic funds transfer, or such other place and to such other person as the Lender or any subsequent holder hereof may from time to time designate in writing.

b.     **Minimum Interest.** Borrower may prepay this Note at any time, provided however, that Borrower agrees to pay a minimum of six month's interest, as calculated above, plus outstanding principal and any other unpaid charges hereunder, if prepaid prior to the seventh month, which shall be deposited as an Interest Reserve at closing and deducted from Loan proceeds. During and after the seventh month, prepayment shall require payment of outstanding principal plus accrued interest and any other unpaid charges due hereunder.

c.   Interest Reserve. A six month evergreen interest reserve in the amount of $280,000.00 (the "**Evergreen Reserve**") and shall be held by Lender as additional security for Borrower's obligations under the Note. The Evergreen Reserve shall not be used by Lender except in case of an Event of Default. Any unused portion of the Reserve Accounts established hereunder shall be applied to the amount due upon repayment of this Note.

d.   Loan Extension. Borrower shall have the right to extend the Maturity Date of the Loan for six months upon notice to Lender prior to maturity and payment to Lender of an extension fee of 2.5% of the Loan principal amount.

3.   **Late Charge/Post Default Interest**. Borrower further agrees to pay a "late charge" of five percent (5%) of any amount due hereunder (but not in excess of the maximum amount allowed by any applicable law, rule or regulation) if paid more than three (3) days after the due date thereof, to cover the extra expense involved in handling delinquent payments. These provisions shall not be deemed to excuse a late payment or be deemed a waiver of any other rights Lender may have including the right to declare the entire unpaid principal and interest immediately due and payable. Notwithstanding any provision to the contrary herein, from and after the maturity of this Note (whether by acceleration or otherwise) or an Event of Default, interest on principal (but not on unpaid interest) shall be computed at the rate of 24.0% (the "**Default Rate**").

4.   **Loan Documents and Collateral**. Borrower represents, warrants, covenants and agrees that this Note is and shall at all times be secured and supported by documents as required by Lender which include (i) security agreements from Borrower conveying security interests in Arnold's Point, coastal tidal marshland in Bryan County, GA and in Lot 7 Highlands Country Club in NC (ii) guaranty agreements of Dr. Jerry Williams, and Urgent Care 247, LLC(iii) other agreements, documents and instruments executed by or on behalf of the Borrower in connection herewith (the "Loan Documents").

5.   **Loan Oversight**. Borrower agrees that the principal purpose of the Loan is to build a Spec home in Highlands, NC. Borrower shall provide Lender with financials and such information as Lender may request from time to time regarding application of loan proceeds and performance under the Loan documents.

6.   **Cross-Default and Cross-Collateralization**.

(a)   Lender has made or may make other loans to Borrower (as used herein the term "Borrower" shall include any and all entities related to Borrower by common ownership and/or control) evidenced by various Notes, and Deeds to Secure Debt (Deed to Secure Debt as used herein to include Mortgages, Security Agreements and Pledges of stock, member interest in limited liability company or other assets). Any event of default as defined in any Deed to Secure Debt from Borrower to Lender given to secure any loan from Lender to Borrower or any breach of terms, provisions, conditions or covenants contained in the

2

Note or Notes, Deed to Secure Debt or Deeds to Secure Debt, or any other loan documents executed in connection with any other loan or loans from Lender or Borrower shall be an event of default under the terms, provisions, conditions, and covenants of any and all other loans from the Lender to Borrower. Further, an event of default hereunder shall also constitute an event of default under any and all Deeds to Secure Debt, Notes, and any other loan document executed in connection with any other loan from Lender to Borrower.

(b)    Lender has made or may make other loans to Borrower evidenced by various Notes and Deeds to Secure Debt. The real property and any other property described in said other Deeds to Secure Debt is and shall be security for each and every other Note, executed by Borrower in favor of Lender, or any advance made thereunder, or any renewal or extension thereof; further, the real property described herein is and shall be further security for each and every Note executed by the Borrower in favor of the Lender. This paragraph shall apply notwithstanding the fact that the outstanding balance of any one or more of said loans exceeds the original face amount of the Note or Notes evidencing said loans.

(c)    Nothing contained in the within paragraphs, shall in any way impair the rights of the Lender granted in any Deed to Secure Debt. Further, each and every Note and Deed to Secure Debt executed in connection with any loan made from Lender to Borrower is and shall remain a separate obligation of Borrower, and each and every Note and Deed to Secure Debt is and shall be separately enforceable according to its terms until all outstanding indebtedness owing from Borrower to Lender has been paid in full; further, Lender may, at its election, institute separate or collective proceedings with respect to each Note and Deed to Secure Debt simultaneously or in such order and at such times as Lender may elect. The pendency of any proceeding with respect to any Note or Deed to Secure Debt shall not be grounds for abatement of or hindering, delaying or preventing any proceeding in respect to any other Note or Deed to Secure Debt. Default under each Note and Deed to Secure Debt shall constitute a separate cause of action.

7. **Events of Default**. The principal sum evidenced by this Note, together with all accrued but unpaid interest thereon and all other agreed charges owing by Borrower hereunder, shall become immediately due and payable at the option of Lender upon the occurrence of any "Event of Default", as used and defined in any Loan Document, each of which shall constitute an "Event of Default" hereunder, **provided however**, that Borrower shall have five (5) days following notice of a monetary default in which to cure, and thirty (3) days following notice of a non-monetary in which to cure. Not in limitation of the foregoing but in addition thereto, the following shall constitute events of default under this Note: failure of Borrower (Borrower and each other person primarily or secondarily liable to Lender for the indebtedness evidenced by this Note hereinafter collectively referred to as "Obligors") to make any payment of principal or interest or any other amount under this Note when due or failure of Borrower to perform or observe any promise or agreement contained in this Note; the death of (if an individual), death of a general partner (if a partnership), or dissolution of (if a partnership or corporation), insolvency of, general assignment for the benefit of creditors by, any Obligor; the commencement of a voluntary proceeding under any law relating to bankruptcy, insolvency, reorganization, arrangement, composition or readjustment of debt, dissolution, liquidation or debtor relief law or statute of any jurisdiction, whether now or hereafter in effect, including

3

without limitation the filing of a petition under any chapter of the federal bankruptcy code by or against, or acquiescence in writing to same by, or failure to timely and diligently controvert any such involuntary proceeding by, any Obligor; the filing of a proceeding for the appointment of a receiver, custodian, trustee, liquidator or similar official for Obligor or Obligor's property or consenting to the appointment of same; the failure of an involuntary petition for relief under the Federal Bankruptcy Code, as amended, to be dismissed within thirty (30) days after the commencement thereof or in which an order for relief is entered; the making by any Obligor of a conveyance fraudulent as to creditors under any state or federal law; entry of any judgment against, or issuance of a levy or writ of execution, attachment or garnishment against any of the property of, any Obligor; the inability of any Obligor to pay debts as they become due or admit in writing to such effect; the transfer by any Obligor of all or substantially all of his, her or its assets outside the ordinary course of business, or the waste, loss or dissipation of a substantial part of such person's assets; if any Obligor is a partnership, the withdrawal or removal of any general partner of such partnership; if any Obligor is a corporation, the transfer, directly or indirectly (including through any voting trust, irrevocable proxy, or the like), of the ownership or power to vote more than thirty percent (30%) of the voting stock of such corporation; the suspension of the operation of any Obligor's present business; the occurrence of any default or event authorizing acceleration as provided under any promissory note or other evidence of debt, loan agreement, security agreement, pledge agreement, assignment, mortgage, deed to secure debt, deed of trust, lease agreement or other agreement or contract between any Obligor and Lender or any third party; any statement, representation or warranty of any Obligor made orally or in writing in any document evidencing, securing or otherwise relating to the indebtedness evidenced by this Note or in any other writing or statement at any time furnished or made by any Obligor to Lender is false or misleading in a material respect as of the date furnished or made; revocation or termination of any guaranty executed in favor of Lender guaranteeing the indebtedness evidenced by this Note; the financial responsibility of any Obligor becomes impaired at any time in the sole opinion of Lender; or, the determination by Lender that it otherwise deems itself to be insecure.

8.    **Remedies.** If this Note is payable on demand, all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall be due and payable in full upon demand by Lender, whether or not any event of default has occurred and whether or not Lender reasonably deems itself to be insecure. If any event of default under this Note should occur, all unpaid amounts of any or all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall, at the option of Lender and without notice or demand, become immediately due and payable and Lender shall have and be entitled to exercise, from time to time, all the rights and remedies available to it as provided elsewhere in this Note, in any other agreement or contract between Borrower and Lender and under applicable law. All of Lender's rights and remedies shall be cumulative, and any failure of Lender to exercise any such right or remedy shall not be construed as a waiver of the right to exercise the same or any other right or remedy at any time and from time to time thereafter.

9.    **Notices.** Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Note shall be in writing, signed by or on behalf of the party giving the

4

same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or three (3) days after being deposited in the United States mail, postage prepaid, certified with return receipt requested, if mailed to the addresses set forth in the beginning of this Note or at such other address within the continental United States for either party as such party may designate by notice to the other given in accordance with the provisions of this paragraph; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice has been received shall also constitute receipt.

10.     **Acceleration**. Time is of the essence in the performance of all obligations under this Note. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at its option and as often as it may desire, may declare all liabilities, obligations and indebtedness due Lender, including without limitation this Note to be immediately due and payable without demand, notice or presentment, and may exercise any other remedy available to Lender hereunder, at law or in equity.

11.     **Costs of Collection**. Borrower agrees that if, and as often as, this Note is given to an attorney for collection or to defend or enforce any of Lender's arising from or relating to this Note, Borrower will pay to Lender attorney's fees in the amount of 15% of the principal balance due, together with all court costs and other expenses paid or incurred by Lender; provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

12.     **Maximum Legal Rate** Borrower and Lender agree that no payment of interest or other consideration made or agreed to be made by Borrower to Lender pursuant to this Note shall, at any time, be in excess of the maximum rate of interest permissible by law. In the event such payments of interest or other consideration provided for in this Note shall result in an effective rate of interest which, for any period of time, is in excess of the limit of the usury or any other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied to principal immediately upon receipt of such monies by Lender hereof with the same force and effect as though the payer had specifically designated such and Lender had agreed to accept such extra payments as a principal payment, without premium. This provision shall control every other obligation of the Borrower and Lender under this Note.

13.     **Miscellaneous.**

(a)     With respect to any and all obligations, to the extent permitted by applicable laws Borrower waives the following: (1) all rights or exemption of property from levy or sale under execution or other process for the collection of debts under the constitution or laws of the United States or any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold Borrower on any obligation; (3) all statutory provisions and requirements for the benefit of the Borrower now or hereafter in force (to the extent that same may be waived); (4) the right to interpose any set-off or counterclaim of any nature or description in any litigation

5

in which the Lender and Borrower shall be adverse parties. Borrower agrees to pay all filing fees and taxes and all costs of collecting or securing or attempting to collect or secure any obligations, including but not limited to attorney's fees.

(b)    The obligations and liabilities of Borrower under this Note are continuing, absolute, and unconditional, and shall remain in full force and effect until all amounts due hereunder have been paid in full and all obligations of Borrower have been discharged without regard to and without being released, discharged, impaired, modified or in any way affected by, the occurrence from time to time of any event, circumstance or condition, including without limitation any one or more of the following, whether or not with notice to or consent of Borrower: (1) any assignment or transfer this Note or of any interest hereunder; (2) any consent, extension, indulgence or other action or inaction (including without limitation any lack of diligence or failure to mitigate damages) under, or in respect of, this Note or other agreement, or any exercise or non-exercise of any right, remedy, power or privilege under, or in respect of, this Note or agreement; or (5) the failure, omission, delay or lack of diligence on the part of the Holder or any assignee or successor thereto, to enforce, assert or exercise any right, power, privilege or remedy conferred upon the Lender by this Note or other agreement.

(c)    The Lender, may, but shall not be required to, apply to the payment of the debt evidenced hereby, on or after the maturity of said debt, whether by acceleration or otherwise, any money or credit held by the Lender on deposit, in trust or otherwise, for the account of the Borrower or any of them.

(d)    Lender shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid, unless in writing and signed by the Holder. All rights and remedies of the Lender under the terms of this Note and under any statutes or rules of law shall be cumulative and may be exercised successively or concurrently. Borrower agrees that the Lender shall be entitled to all the rights of a holder in due course of negotiable instruments. Any provision of this Note which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof.

(e)    The liabilities and obligations of each person or entity who or which is a Borrower are joint and several.

(f)    Borrower warrants and agrees that the proceeds of this Note will be used for business purposes (other than agricultural purposes) only, and not for personal, family or household purposes.

(g)    Borrower and Lender intend and believe that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be

6

illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of Borrower and Lender that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender hereof under the remainder of this Note shall continue in full force and effect.

14.    **Governing Law.** This Note shall be governed by and construed in accordance with the laws of the State of Georgia. Borrower acknowledges that the negotiation of the provisions of this Note and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give Borrower, nor shall any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Note or said Loan Documents to become effective and valid and binding obligations of the Borrower. Borrower acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Borrower acknowledges further that the negotiation, execution, and delivery of this Note and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Borrower hereby submits itself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with the Loan or any of the Loan Documents. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a waiver by Lender of any of the foregoing.

15.    **Waiver of Jury Trial.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION WITH THIS NOTE OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF EITHER PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR

7

OTHERWISE. BORROWER AGREES THAT LENDER MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT OF BORROWER TO IRREVOCABLY WAIVE BORROWER'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN BORROWER AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

16. Venue. Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Note or any agreements or transactions contemplated hereby may be brought in the courts of the State of Georgia or of the United States of America for the Northern District of Georgia and hereby expressly submits to the personal jurisdiction and venue of such courts for the purposes thereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum. Borrower hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the address of Borrower last provided to Holder in connection with the Loan, such service to become effective ten (10) days after such mailing.

IN WITNESS WHEREOF, Borrower has caused this Note to be executed, sealed, and delivered as of the date first set forth above.

BORROWER

No Free, LLC, a Georgia limited liability company

By: _____

Name: Dr. Jerry Williams

Title: Manager

This Note is accepted this 19th day of December, 2024 by Lender in Newnan, Georgia.

8

**LENDER**

ame: Brant Frost IV
**First Liberty Capital Partners, LLC, a
Georgia liability company**

Name: Brant Frost I
Title: Manager

## GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (hereinafter referred to for convenience as the "Guaranty") is entered as of the 19th day of December, 2024, by **Urgent Care 247, LLC** (hereinafter referred to for convenience as the "Guarantor"), in favor of **FIRST LIBERTY CAPITAL PARTNERS, LLC,** a Georgia limited liability company (the "Lender").

### A. RECITALS

WHEREAS, No Free, LLC, a Georgia limited liability company (the "Borrower"), has obtained a loan from Lender in the amount of $3,500,000.00 (the "Loan");

WHEREAS, in connection with the making and closing of the Loan, and in order to evidence and secure the Loan, the Borrower will execute a Promissory Note (hereinafter referred to for convenience as the "Note"), a Security Deed, a Corporate Guaranty, and various other documents evidencing, securing, or otherwise relating to the Loan (for convenience, the Note, the Security Agreement, and any other documents are referred to for convenience as the "Loan Documents"); and

WHEREAS, Lender is willing to make the Loan only if the Guarantor executes and delivers this Guaranty.

NOW, THEREFORE, in consideration of the premises and to induce Lender to extend the credit referred to above, the Guarantor hereby agrees as follows:

### B. REPRESENTATIONS AND WARRANTIES

The Guarantor hereby represents and warrants that:

1. The execution, delivery and performance of this Guaranty, and the agreements, documents, and instruments to be given by the Guarantor as security for the Loan and any other documents or instruments executed and delivered by the Guarantor pursuant hereto or thereto, or in connection herewith or therewith (collectively, the "Guarantor Documents"), are within the Guarantor's powers, have been duly authorized, do not violate any law, rule, or regulation, and will not conflict with, result in a breach of, or constitute a default under, any contractual obligations of the Guarantor;

2. There is no judgment, decree, or order of any court or other governmental authority binding on the Guarantor which would be contravened by the execution, delivery, performance or enforcement of the Guarantor Documents; and

3. Each of the Guarantor Documents is a legal, valid, and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its respective terms.

4. That he understands that Lender would not make the Loan to Borrower without Guarantor entering into this Guaranty, and there is substantial consideration flowing to

Guarantor if the Loan is made equivalent to the potential burden to Guarantor of the obligations assumed hereunder.

The Guarantor agrees that for so long as this Guaranty remains in effect, each of the above representations and warranties and each other representation or warranty of the Guarantor contained herein or in the other Guarantor Documents shall be deemed to be continuing.

## C. GUARANTY

1.    The Guarantor hereby unconditionally, absolutely, and irrevocably guarantees full payment and performance of, and promises to pay to Lender, or to order, without demand, in lawful money of the United States, when due (whether at stated maturity, by acceleration or otherwise), any and all indebtedness, liabilities, obligations and covenants of Borrower to Lender (whether any such indebtedness, liability, obligation or covenant now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such indebtedness, liabilities, obligations and covenants being hereinafter called, collectively, the "Obligations"), arising out of or relating to the Loan, the Note, the Security Agreement, the Pledge and Security Agreement, or any of the other Loan Documents and any and all renewals, re-financings, extensions, amendments, modifications, and consolidations thereof. The word "Obligations" is used in its most comprehensive sense and includes all principal, interest, and other amounts payable under the Note, the Security Agreement, or any of the other Loan Documents and all obligations for fees, indemnities, costs, and expenses under the Note, the Mortgage, or any of the other Loan Documents.

2.    The Guarantor's obligations hereunder are those of a primary obligor, and not merely as a surety or guarantor of collection, and are independent of the Obligations. If there is more than one Guarantor herein, each Guarantor's obligations hereunder are joint and several. In addition, Guarantor agrees that the Guarantor's obligations hereunder are joint and several with the obligations of any and all other obligors (which for purposes of this Agreement includes, without limitation, other guarantors pursuant to separate agreements or instruments) in respect of the Obligations. A separate action or actions may be brought against the Guarantor (or any one Guarantor herein) whether an action is brought against Borrower, another Guarantor herein, or any other obligor in respect of the Obligations or whether Borrower, another Guarantor herein, or any other obligor in respect of the Obligations be joined in any such action or actions; and the Guarantor waives the benefit of any statute of limitations affecting his or her liability hereunder or the enforcement hereof.

3.    The obligations of the Guarantor under this Guaranty are continuing, absolute, and unconditional, and the Guarantor guarantees that the Obligations will be paid in full when due (whether at stated maturity, by acceleration or otherwise) in accordance with the terms of the Note, the Mortgage, and the other Loan Documents regardless of any law, regulation, or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto or any other circumstance which might otherwise constitute a defense available to, or a legal or equitable discharge of, a borrower or guarantor.

2

4.      This Guaranty is irrevocable with respect to all Obligations which arise out of or relate to the Loan, the Note, the Security Agreement, the Pledge and Security Agreement or any of the other Loan Documents. All of the liabilities of the Guarantor under this Guaranty shall remain in full force and effect until all Obligations (including any amendments, modifications, extensions, renewals, restructurings, re-financings, and re-fundings of any thereof) shall have been finally paid in full in cash.

This Guaranty shall in all respects continue in full force and effect or shall be reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Obligations is rescinded or must otherwise be restored or returned for any reason, including without limitation, because of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower or any other obligor in respect to the Obligations (including without limitation, the Guarantor) or upon or as a result of the appointment of a custodian, receiver, trustee or other officer with similar power with respect to Borrower or any such other obligor or any material part of his or its assets, or otherwise, all as though such payment had not been made. If an event permitting the acceleration of the Obligations shall at any time have occurred and be continuing and such acceleration shall at such time be prevented by reason of the pendency against Borrower of a case or proceeding under any bankruptcy or insolvency law, the Guarantor agrees that, for purposes of this Guaranty and his obligations hereunder, the Obligations shall be deemed to have been accelerated, and the Guarantor shall forthwith pay such Obligations, and the other obligations hereunder, without any further notice or demand.

Without limiting the foregoing, the Guarantor authorizes Lender, without notice or demand, and without affecting the Guarantor's liability hereunder, from time to time to (a) renew, extend, accelerate, compromise, settle, restructure, refinance, refund, or otherwise change the amount and time for payment of any of the Obligations, or otherwise change the terms of the Obligations or any part thereof, including, without limitation, amend, modify, supplement, waive, or consent to a departure from the terms and conditions of the Note and the other Loan Documents; (b) take and hold security for the payment of this Guaranty or the Obligations or the obligations of other obligors in respect of the Obligations, and enforce any such security; (c) apply such security and direct the order or manner of sale thereof or sell, exchange, release, compromise, settle, waive or surrender any such security; and (d) take, hold, exchange, release, compromise, settle, amend, or waive, or consent to the departure from any of the terms of, any guaranty or other agreement relating to the obligations of any other obligor in respect to the Obligations. Lender shall have no obligation to perfect, secure, protect, or insure any collateral, and the Guarantor's liability hereunder shall not be affected by the non-perfection, invalidity, or unenforceability of any agreement, instrument, or document securing or purporting to secure the Note or the other Loan Documents.

5.      Guarantor hereby unconditionally and irrevocably: (a) waives and relinquishes any right of subrogation or other right of reimbursement from the Borrower or the Borrower's estate, and any other right to payment from the Borrower or the Borrower's estate, arising out of or on account of any sums paid or agreed to be paid by Guarantor under this Guaranty, whether any such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; (b) agrees that if at any time all or any part of any payment previously applied by Lender to any of the Obligations must be returned by Lender for any reason, whether upon the claim of a preference, fraudulent transfer, or other claim

3

of a debtor-in-possession, trustee in bankruptcy, or other representative of creditors of Borrower, or otherwise, and whether by court order, administrative order, or non-judicial settlement, this Guaranty shall continue in effect or shall be reinstated, as the case may be, and Guarantor shall remain liable for the full amount returned as if such amount had never been received by Lender, notwithstanding any termination of this Guaranty or cancellation of any promissory note or other instrument or agreement evidencing or securing any of the Obligations; (c) agrees that the liability of the Guarantor under this Guaranty shall not be affected or impaired by, and this Guaranty shall remain fully enforceable against Guarantor for the full amount of the Obligations less only payments thereon actually received and retained by Lender irrespective of and without reduction on account of: (i) any defenses which Borrower may have or assert with respect to any of the Obligations, including, but without limitation, filing of a petition in bankruptcy, discharge in bankruptcy, confirmation of a plan of reorganization (whether Lender voted for or against such plan), composition with creditors (whether or not including Lender), failure of consideration, breach of warranty, statute of frauds, statute of limitations, accord and satisfaction, waiver, estoppel, release, usury, or fraud or misrepresentation; or (ii) dissolution or insolvency of Borrower.

6.    The Guarantor unconditionally and irrevocably waives any right to require Lender to (a) proceed against Borrower or any other obligor in respect to the Obligations; (b) proceed against or exhaust any security held directly or indirectly on account of the Obligations; (c) pursue any other remedy of Lender whatsoever; (d) give the Guarantor prior or subsequent notice of the disposition of any security; or (e) give the Guarantor notice of any information concerning Borrower's business, operations, or condition (financial or otherwise) known to Lender. The Guarantor unconditionally waives any defense arising by reason of any disability or other legal or equitable defense of Borrower by reason of the cessation from any cause whatsoever of the liability of Borrower other than final payment in full in cash of the Obligations. The Guarantor waives all diligence, presentments, protests, notices of protest, notices of dishonor, notices of non-payment, acceptance and notices of acceptance of this Guaranty.

7.    Any debt of Borrower now or hereafter held by or owed to the Guarantor is hereby absolutely and totally subordinated in right of payment and in all other respects to the Obligations and all other obligations of the Borrower to Lender in any way relating to the Note or the other Loan Documents, and in the event an event of default under the Note or the other Loan Documents shall have occurred, and there is a default in the debt of Borrower to the Guarantor, if Lender so requests, such debt shall be collected, enforced and received by the Guarantor as trustee for Lender and shall be paid over to Lender on account of the Obligations and any such other obligations.

8.    Upon the occurrence of any Event of Default, as defined in the Note, Security Agreement or any other Loan Document, in the payment or performance of the Note or any of the other Loan Documents, the Lender is hereby authorized at any time and from time to time to set-off and apply all deposits (general or special, time or demand, provisional or final) at any time held and other obligations at any time owing by the Lender to or for the credit or the account of the Guarantor against any and all of the obligations of the Guarantor now or hereafter existing under this Guaranty, irrespective of whether or not, the Lender shall have made any demand under this Guaranty and although such obligations may be contingent and unmatured.

4

The rights of the Lender under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Lender may have.

9.    The Guarantor will keep at all times full, true and accurate books and records of account of the financial affairs of the Guarantor sufficient to reflect accurately and correctly the results of all income and expense activities and to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles (or another method approved by Lender). The Guarantor will deliver to the Lender, upon such times as may be requested by the Lender, and in no event more than three (3) months after the end of every calendar year from date hereof, whether or not requested by the Lender, financial statements reflecting the foregoing information, including, but not limited to, balance sheets, profit-and-loss statements and all schedules and exhibits thereto as are customarily required by generally accepted accounting principles or as may be requested by Lender. Unless otherwise consented or agreed to by Lender in writing with respect to any particular year, such statements and information shall be prepared by a certified public accountant approved by the Lender in advance of delivery of such statements and information. The Guarantor further covenants and agrees to furnish to Lender, within 10 days after the date of any request by Lender, such other information and documents (financial or otherwise, including without limitation income tax returns) concerning or relating to the Guarantor or any collateral securing this Guaranty as the Lender may request at any time or from time to time.

10.    The Guarantor assumes full responsibility for keeping fully informed of the financial condition of the Borrower and all other circumstances affecting the Borrower's ability to perform its obligations to the Lender, and agrees that the Lender will have no duty to report to Guarantor any information which the Lender receives about the Borrower's financial condition or any circumstances bearing on Borrower's ability to perform.

11.    No amendment or wavier of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom, shall in any event be effective unless the same is signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose given. No failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any provided by law or at equity.

12.    Any provision of this Guaranty which may be prohibited by law or otherwise held invalid shall be ineffective only to the extent of such prohibition or invalidity and shall not invalidate or otherwise affect the remaining provisions of this Guaranty.

13.    The Lender may, without notice to or consent from the Guarantor, assign or otherwise transfer, or grant a participation in, the Note or the other Loan Documents, the Obligations, or any interest therein, or the collateral, in whole or in part, without affecting in any manner whatsoever the Guarantor's liability hereunder. Any assignee or other transferee, or participant in, any of the Note or the other Loan Documents or the Obligations shall thereupon become vested with all rights in respect thereof granted to Lender herein to the same extent as if such assignee or transferee was the original guaranteed party hereto, and all Obligations shall be

and remain Obligations for purposes of this Guaranty. This Guaranty shall be binding upon the Guarantor and Guarantor's heirs, executors, personal representatives, successors and assigns and inure to the benefit of Lender and its respective heirs, executors, personal representatives, successors, assigns and other transferees; provided, however, that the Guarantor shall not assign or transfer any of Guarantor's rights or obligations hereunder without the express written consent of Lender.

14.     Guarantor agrees that this Guaranty, the Note, and the other Loan Documents, and the rights and obligations of the parties hereunder and thereunder shall be governed by and be construed in accordance with the laws of the State of Georgia, unless otherwise provided therein or except where required to be governed by the laws of another jurisdiction to be enforceable. Guarantor acknowledges that the negotiation of the provisions of this Guaranty, the Note and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give, nor shall Guarantor, Borrower or any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Guaranty or said Loan Documents to become effective and valid and binding obligations of the Borrower, the Guarantor or any other obligor. Guarantor acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Guarantor acknowledges further that the negotiation, execution, and delivery of this Guaranty, the Note and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Guarantor hereby submits himself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with this Guaranty, the Loan or any of the Loan Documents, agrees that venue for any such action shall be in the state or federal courts in Georgia, and waives any and all rights under the laws of the United States or any state to object to jurisdiction or venue within the state or federal courts in Georgia. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a wavier by Lender of any of the foregoing.

15.     Guarantor hereby waives all rights of exemption under the constitution and laws of the United States and all states therein, including, but not limited to, the State of Georgia. Guarantor agrees to pay all cost of collection, including a reasonable attorney's fee, if the services of an attorney are utilized whether or not suit is filed. In that connection, Guarantor agrees that if, and as often as, this Guaranty Agreement is given to an attorney for collection or to defend or enforce any of Lender's rights hereunder, Guarantor will pay to Lender its reasonable attorney's fees, which shall be defined as 15% of the Obligations, together with all court costs and other expenses paid or incurred by Lender. Provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

16.     The undersigned hereby waives the right to require the holder of the obligations guaranteed to take any action against the principal as provided for in O.C.G.A. § 10-7-24. At the

6

option of the Bank, this may be treated as a guaranty or as a suretyship, with the right to proceed against the guarantor without first proceeding against the Borrower.

17. TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY, THE LOAN OR THE LOAN DOCUMENTS OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR BORROWER AND GUARANTOR WITH RESPECT TO THE LOAN DOCUMENTS OR IN CONNECTION WITH THIS GUARANTY OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS GUARANTY OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. GUARANTOR AGREES THAT LENDER MAY FILE A COPY OF THIS GUARANTY WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED-FOR AGREEMENT OF GUARANTOR IRREVOCABLY TO WAIVE GUARANTOR'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN GUARANTOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty effective as of the date first written above.

Urgent Care 247, LLC

_____(Seal)
Dr. Jerry Williams, Manager

Signed, sealed and delivered in my presence by Dr. Jerry Williams, personally known to me, or who has produced official identification, this 19th day of December, 2024.

_____
Notary Public

(Notary Seal)

7

<u>GUARANTY AGREEMENT</u>

**THIS GUARANTY AGREEMENT** (hereinafter referred to for convenience as the "Guaranty") is entered as of the 19th day of December, 2024, by Dr. Jerry Williams (hereinafter referred to for convenience as the "Guarantor"), in favor of **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (the "Lender").

## A.  RECITALS

**WHEREAS**, No Free, LLC, a Georgia limited liability company (the "Borrower"), has obtained a loan from Lender in the amount of **$3,500,000.00** (the "Loan");

**WHEREAS**, in connection with the making and closing of the Loan, and in order to evidence and secure the Loan, the Borrower will execute a Promissory Note (hereinafter referred to for convenience as the "Note"), a Security Deed, a Corporate Guaranty, and various other documents evidencing, securing, or otherwise relating to the Loan (for convenience, the Note, the Security Agreement, and any other documents are referred to for convenience as the "Loan Documents"); and

**WHEREAS**, Lender is willing to make the Loan only if the Guarantor executes and delivers this Guaranty.

**NOW, THEREFORE**, in consideration of the premises and to induce Lender to extend the credit referred to above, the Guarantor hereby agrees as follows:

## B.  REPRESENTATIONS AND WARRANTIES

The Guarantor hereby represents and warrants that:

1.    The execution, delivery and performance of this Guaranty, and the agreements, documents, and instruments to be given by the Guarantor as security for the Loan and any other documents or instruments executed and delivered by the Guarantor pursuant hereto or thereto, or in connection herewith or therewith (collectively, the "Guarantor Documents"), are within the Guarantor's powers, have been duly authorized, do not violate any law, rule, or regulation, and will not conflict with, result in a breach of, or constitute a default under, any contractual obligations of the Guarantor;

2.    There is no judgment, decree, or order of any court or other governmental authority binding on the Guarantor which would be contravened by the execution, delivery, performance or enforcement of the Guarantor Documents; and

3.    Each of the Guarantor Documents is a legal, valid, and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its respective terms.

4.    That he understands that Lender would not make the Loan to Borrower without Guarantor entering into this Guaranty, and there is substantial consideration flowing to

Guarantor if the Loan is made equivalent to the potential burden to Guarantor of the obligations assumed hereunder.

The Guarantor agrees that for so long as this Guaranty remains in effect, each of the above representations and warranties and each other representation or warranty of the Guarantor contained herein or in the other Guarantor Documents shall be deemed to be continuing.

## C.  GUARANTY

1.    The Guarantor hereby unconditionally, absolutely, and irrevocably guarantees full payment and performance of, and promises to pay to Lender, or to order, without demand, in lawful money of the United States, when due (whether at stated maturity, by acceleration or otherwise), any and all indebtedness, liabilities, obligations and covenants of Borrower to Lender (whether any such indebtedness, liability, obligation or covenant now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such indebtedness, liabilities, obligations and covenants being hereinafter called, collectively, the "Obligations"), arising out of or relating to the Loan, the Note, the Security Agreement, the Pledge and Security Agreement, or any of the other Loan Documents and any and all renewals, re-financings, extensions, amendments, modifications, and consolidations thereof. The word "Obligations" is used in its most comprehensive sense and includes all principal, interest, and other amounts payable under the Note, the Security Agreement, or any of the other Loan Documents and all obligations for fees, indemnities, costs, and expenses under the Note, the Mortgage, or any of the other Loan Documents.

2.    The Guarantor's obligations hereunder are those of a primary obligor, and not merely as a surety or guarantor of collection, and are independent of the Obligations. If there is more than one Guarantor herein, each Guarantor's obligations hereunder are joint and several. In addition, Guarantor agrees that the Guarantor's obligations hereunder are joint and several with the obligations of any and all other obligors (which for purposes of this Agreement includes, without limitation, other guarantors pursuant to separate agreements or instruments) in respect of the Obligations. A separate action or actions may be brought against the Guarantor (or any one Guarantor herein) whether an action is brought against Borrower, another Guarantor herein, or any other obligor in respect of the Obligations or whether Borrower, another Guarantor herein, or any other obligor in respect of the Obligations be joined in any such action or actions; and the Guarantor waives the benefit of any statute of limitations affecting his or her liability hereunder or the enforcement hereof.

3.    The obligations of the Guarantor under this Guaranty are continuing, absolute, and unconditional, and the Guarantor guarantees that the Obligations will be paid in full when due (whether at stated maturity, by acceleration or otherwise) in accordance with the terms of the Note, the Mortgage, and the other Loan Documents regardless of any law, regulation, or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto or any other circumstance which might otherwise constitute a defense available to, or a legal or equitable discharge of, a borrower or guarantor.

2

4.      This Guaranty is irrevocable with respect to all Obligations which arise out of or relate to the Loan, the Note, the Security Agreement, the Pledge and Security Agreement or any of the other Loan Documents.  All of the liabilities of the Guarantor under this Guaranty shall remain in full force and effect until all Obligations (including any amendments, modifications, extensions, renewals, restructurings, re-financings, and re-fundings of any thereof) shall have been finally paid in full in cash.

This Guaranty shall in all respects continue in full force and effect or shall be reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Obligations is rescinded or must otherwise be restored or returned for any reason, including without limitation, because of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower or any other obligor in respect to the Obligations (including without limitation, the Guarantor) or upon or as a result of the appointment of a custodian, receiver, trustee or other officer with similar power with respect to Borrower or any such other obligor or any material part of his or its assets, or otherwise, all as though such payment had not been made. If an event permitting the acceleration of the Obligations shall at any time have occurred and be continuing and such acceleration shall at such time be prevented by reason of the pendency against Borrower of a case or proceeding under any bankruptcy or insolvency law, the Guarantor agrees that, for purposes of this Guaranty and  his obligations hereunder, the Obligations shall be deemed to have been accelerated, and the Guarantor shall forthwith pay such Obligations, and the other obligations hereunder, without any further notice or demand.

Without limiting the foregoing, the Guarantor authorizes Lender, without notice or demand, and without affecting the Guarantor's liability hereunder, from time to time to (a) renew, extend, accelerate, compromise, settle, restructure, refinance, refund, or otherwise change the amount and time for payment of any of the Obligations, or otherwise change the terms of the Obligations or any part thereof, including, without limitation, amend, modify, supplement, waive, or consent to a departure from the terms and conditions of the Note and the other Loan Documents; (b) take and hold security for the payment of this Guaranty or the Obligations or the obligations of other obligors in respect of the Obligations, and enforce any such security; (c) apply such security and direct the order or manner of sale thereof or sell, exchange, release, compromise, settle, waive or surrender any such security; and (d) take, hold, exchange, release, compromise, settle, amend, or waive, or consent to the departure from any of the terms of, any guaranty or other agreement relating to the obligations of any other obligor in respect to the Obligations.  Lender shall have no obligation to perfect, secure, protect, or insure any collateral, and the Guarantor's liability hereunder shall not be affected by the non-perfection, invalidity, or unenforceability of any agreement, instrument, or document securing or purporting to secure the Note or the other Loan Documents.

5.      Guarantor hereby unconditionally and  irrevocably: (a) waives and relinquishes any right of subrogation or other right of reimbursement from the Borrower or the Borrower's estate, and any other right to payment from the Borrower or the Borrower's estate, arising out of or on account of any sums paid or agreed to be paid by Guarantor under this Guaranty, whether any such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; (b) agrees that if at any time all or any part of any payment previously applied by Lender to any of the Obligations must be returned by Lender for any reason, whether upon the claim of a preference, fraudulent transfer, or other claim

3

of a debtor-in-possession, trustee in bankruptcy, or other representative of creditors of Borrower, or otherwise, and whether by court order, administrative order, or non-judicial settlement, this Guaranty shall continue in effect or shall be reinstated, as the case may be, and Guarantor shall remain liable for the full amount returned as if such amount had never been received by Lender, notwithstanding any termination of this Guaranty or cancellation of any promissory note or other instrument or agreement evidencing or securing any of the Obligations; (c) agrees that the liability of the Guarantor under this Guaranty shall not be affected or impaired by, and this Guaranty shall remain fully enforceable against Guarantor for the full amount of the Obligations less only payments thereon actually received and retained by Lender irrespective of and without reduction on account of: (i) any defenses which Borrower may have or assert with respect to any of the Obligations, including, but without limitation, filing of a petition in bankruptcy, discharge in bankruptcy, confirmation of a plan of reorganization (whether Lender voted for or against such plan), composition with creditors (whether or not including Lender), failure of consideration, breach of warranty, statute of frauds, statute of limitations, accord and satisfaction, waiver, estoppel, release, usury, or fraud or misrepresentation; or (ii) dissolution or insolvency of Borrower.

6.    The Guarantor unconditionally and irrevocably waives any right to require Lender to (a) proceed against Borrower or any other obligor in respect to the Obligations; (b) proceed against or exhaust any security held directly or indirectly on account of the Obligations; (c) pursue any other remedy of Lender whatsoever; (d) give the Guarantor prior or subsequent notice of the disposition of any security; or (e) give the Guarantor notice of any information concerning Borrower's business, operations, or condition (financial or otherwise) known to Lender. The Guarantor unconditionally waives any defense arising by reason of any disability or other legal or equitable defense of Borrower by reason of the cessation from any cause whatsoever of the liability of Borrower other than final payment in full in cash of the Obligations. The Guarantor waives all diligence, presentments, protests, notices of protest, notices of dishonor, notices of non-payment, acceptance and notices of acceptance of this Guaranty.

7.    Any debt of Borrower now or hereafter held by or owed to the Guarantor is hereby absolutely and totally subordinated in right of payment and in all other respects to the Obligations and all other obligations of the Borrower to Lender in any way relating to the Note or the other Loan Documents, and in the event an event of default under the Note or the other Loan Documents shall have occurred, and there is a default in the debt of Borrower to the Guarantor, if Lender so requests, such debt shall be collected, enforced and received by the Guarantor as trustee for Lender and shall be paid over to Lender on account of the Obligations and any such other obligations.

8.    Upon the occurrence of any Event of Default, as defined in the Note, Security Agreement or any other Loan Document, in the payment or performance of the Note or any of the other Loan Documents, the Lender is hereby authorized at any time and from time to time to set-off and apply all deposits (general or special, time or demand, provisional or final) at any time held and other obligations at any time owing by the Lender to or for the credit or the account of the Guarantor against any and all of the obligations of the Guarantor now or hereafter existing under this Guaranty, irrespective of whether or not, the Lender shall have made any demand under this Guaranty and although such obligations may be contingent and unmatured.

4

The rights of the Lender under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Lender may have.

9. The Guarantor will keep at all times full, true and accurate books and records of account of the financial affairs of the Guarantor sufficient to reflect accurately and correctly the results of all income and expense activities and to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles (or another method approved by Lender). The Guarantor will deliver to the Lender, upon such times as may be requested by the Lender, and in no event more than three (3) months after the end of every calendar year from date hereof, whether or not requested by the Lender, financial statements reflecting the foregoing information, including, but not limited to, balance sheets, profit-and-loss statements and all schedules and exhibits thereto as are customarily required by generally accepted accounting principles or as may be requested by Lender. Unless otherwise consented or agreed to by Lender in writing with respect to any particular year, such statements and information shall be prepared by a certified public accountant approved by the Lender in advance of delivery of such statements and information. The Guarantor further covenants and agrees to furnish to Lender, within 10 days after the date of any request by Lender, such other information and documents (financial or otherwise, including without limitation income tax returns) concerning or relating to the Guarantor or any collateral securing this Guaranty as the Lender may request at any time or from time to time.

10. The Guarantor assumes full responsibility for keeping fully informed of the financial condition of the Borrower and all other circumstances affecting the Borrower's ability to perform its obligations to the Lender, and agrees that the Lender will have no duty to report to Guarantor any information which the Lender receives about the Borrower's financial condition or any circumstances bearing on Borrower's ability to perform.

11. No amendment or wavier of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom, shall in any event be effective unless the same is signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose given. No failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any provided by law or at equity.

12. Any provision of this Guaranty which may be prohibited by law or otherwise held invalid shall be ineffective only to the extent of such prohibition or invalidity and shall not invalidate or otherwise affect the remaining provisions of this Guaranty.

13. The Lender may, without notice to or consent from the Guarantor, assign or otherwise transfer, or grant a participation in, the Note or the other Loan Documents, the Obligations, or any interest therein, or the collateral, in whole or in part, without affecting in any manner whatsoever the Guarantor's liability hereunder. Any assignee or other transferee, or participant in, any of the Note or the other Loan Documents or the Obligations shall thereupon become vested with all rights in respect thereof granted to Lender herein to the same extent as if such assignee or transferee was the original guaranteed party hereto, and all Obligations shall be

5

and remain Obligations for purposes of this Guaranty. This Guaranty shall be binding upon the Guarantor and Guarantor's heirs, executors, personal representatives, successors and assigns and inure to the benefit of Lender and its respective heirs, executors, personal representatives, successors, assigns and other transferees; provided, however, that the Guarantor shall not assign or transfer any of Guarantor's rights or obligations hereunder without the express written consent of Lender.

14.    Guarantor agrees that this Guaranty, the Note, and the other Loan Documents, and the rights and obligations of the parties hereunder and thereunder shall be governed by and be construed in accordance with the laws of the State of Georgia, unless otherwise provided therein or except where required to be governed by the laws of another jurisdiction to be enforceable. Guarantor acknowledges that the negotiation of the provisions of this Guaranty, the Note and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give, nor shall Guarantor, Borrower or any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Guaranty or said Loan Documents to become effective and valid and binding obligations of the Borrower, the Guarantor or any other obligor. Guarantor acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Guarantor acknowledges further that the negotiation, execution, and delivery of this Guaranty, the Note and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Guarantor hereby submits himself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with this Guaranty, the Loan or any of the Loan Documents, agrees that venue for any such action shall be in the state or federal courts in Georgia, and waives any and all rights under the laws of the United States or any state to object to jurisdiction or venue within the state or federal courts in Georgia. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a waiver by Lender of any of the foregoing.

15.    Guarantor hereby waives all rights of exemption under the constitution and laws of the United States and all states therein, including, but not limited to, the State of Georgia. Guarantor agrees to pay all cost of collection, including a reasonable attorney's fee, if the services of an attorney are utilized whether or not suit is filed. In that connection, Guarantor agrees that if, and as often as, this Guaranty Agreement is given to an attorney for collection or to defend or enforce any of Lender's rights hereunder, Guarantor will pay to Lender its reasonable attorney's fees, which shall be defined as 15% of the Obligations, together with all court costs and other expenses paid or incurred by Lender. Provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

16.    The undersigned hereby waives the right to require the holder of the obligations guaranteed to take any action against the principal as provided for in O.C.G.A. § 10-7-24. At the

6

option of the Bank, this may be treated as a guaranty or as a suretyship, with the right to proceed against the guarantor without first proceeding against the Borrower.

17. TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY, THE LOAN OR THE LOAN DOCUMENTS OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR BORROWER AND GUARANTOR WITH RESPECT TO THE LOAN DOCUMENTS OR IN CONNECTION WITH THIS GUARANTY OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS GUARANTY OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. GUARANTOR AGREES THAT LENDER MAY FILE A COPY OF THIS GUARANTY WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED-FOR AGREEMENT OF GUARANTOR IRREVOCABLY TO WAIVE GUARANTOR'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN GUARANTOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty effective as of the date first written above.

Dr. Jerry Williams

_____(Seal)
Dr. Jerry Williams

Signed, sealed and delivered in my presence by Dr. Jerry Williams, personally known to me, or who has produced official identification, this 19th day of December, 2024.

_____
Notary Public

(Notary Seal)

7